1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**LOWENSTEIN SANDLER LLP**
MICHAEL J. MCGAUGHEY (198617)
390 Lytton Avenue
Palo Alto, CA 94301
Telephone: 415-288-4545
Fax: 415-288-4534
mmcgaughey@lowenstein.com

Counsel for Plaintiffs Special Situations
    Fund III QP, L.P. and Special Situations
    Cayman Fund, L.P.

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SPECIAL SITUATIONS FUND III QP, L.P., AND SPECIAL SITUATIONS CAYMAN FUND, L.P, Individually and On Behalf of All Others Similarly Situated,<br><br>                    Plaintiffs,<br><br>vs.<br><br>MARRONE BIO INNOVATIONS, INC., PAMELA G. MARRONE, JAMES B. BOYD, DONALD J. GLIDEWELL, HECTOR ABSI, ELIN MILLER, RANJEET BHATIA, PAMELA CONTAG, TIM FOGARTY, LAWRENCE HOUGH, JOSEPH HUDSON, LES LYMAN, RICHARD ROMINGER and SHAUGN STANLEY,<br><br>                    Defendants. | Case No.:<br><br><br>CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS<br><br>**JURY TRIAL DEMANDED** |

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

33452986.1                                    -1-

## I.    INTRODUCTION

1.    Plaintiffs Special Situations Fund III QP, L.P. and Special Situations Cayman Fund, L.P., ("Plaintiffs"), by their undersigned attorneys, allege as follows upon personal knowledge as to their own acts, and upon information and belief as to all other matters, based on the investigation conducted by and through Plaintiffs' counsel, which included, among other things, a review of Defendants' public documents, filings made with the United States Securities and Exchange Commission ("SEC"), conference calls and announcements issued by Marrone Bio Innovations, Inc. ("MBII" or the "Company") (f/k/a Marrone Organics Innovations Inc.), wire and press releases published by and regarding the Company and other information readily obtainable in the public domain.

## II.    NATURE OF THE CLASS ACTION

2.    This is a federal securities class action brought on behalf of two classes:

(a) all persons who purchased MBII securities directly in the Company's secondary offering (the "Secondary Offering") pursuant to MBII's Form S-1 Registration Statement, dated May 16, 2014 and its Prospectus dated June 5, 2014 (together, the "Registration Statement").   This class asserts claims only for violations of Sections 11 and 15 of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. §§ 77k and 77o (the "Section 11 Class"); and

(b) all persons who purchased or otherwise acquired MBII securities on the open market between March 7, 2014 and September 2, 2014, inclusive (the "Section 10(b) Class Period"). This class of investors asserts claims only for violations of Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder by the Securities and Exchange Commission ("SEC"),

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

17 C.F.R. § 240.10b-5, as well as Section 20(a) of the Exchange Act (the "Section 10(b) Class").

3.      The Section 11 Class does not assert any claims sounding in fraud, whether under Section 10(b) of the Exchange Act or otherwise.  Any person who did not acquire their MBII shares directly in the Secondary Offering and pursuant to the Registration Statement is not included in the Section 11 Class.  The Section 10(b) Class does not assert any claims under Section 11 of the Securities Act.

4.      MBII purports to provide effective, sustainable pest management solutions that are safe for people and protective of the environment. It claims to be a leading provider of bio-based pest management and plant health products for the agriculture, turf and ornamental and water treatment markets. The Company is incorporated in the state of Delaware and maintains its principle executive offices in Davis California. MBII trades on the NASDAQ exchange under the ticker symbol "MBII". The Company's securities began publicly trading on August 2, 2013.

5.      In its Registration Statement, MBII represented that the Company's financial statements were reliable and in compliance with generally accepted accounting principles.

6.      On September 3, 2014, the Company announced that the audit committee of its board of directors had "commenced an internal investigation after management learned of documents calling into question the recognition of revenue" of an $870,000 transaction that had occurred in the fourth quarter of 2013. MBII simultaneously announced that the Audit Committee concluded that the Company's previously reported financial statements for the fiscal year ended December 31, 2013, the unaudited interim financial statements for the quarter ended March 31, 2014 and the unaudited interim financial for the quarter ended June 30, 2014, should no longer be relied upon as being in compliance with generally accepted accounting principles.

7.      On the release of the news, the Company's share price fell $2.50 from a close of $5.65 on September 2, 2014, to close at $3.15 on September 3, 2014.

---

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

8.      The price continued to fall in the days following the announcement, reaching an intraday low of $2.80 on September *5,* 2014, closing that day at just $2.87. Thus, in less than three days, MBII's securities depreciated by approximately 50% and the Company's securities reached its heaviest volume in its history on September 3, 2014, with 2,549,800 shares reportedly traded.

### III.      JURISDICTION AND VENUE

9.      The claims asserted in the First and Second Causes of Action arise under Sections 11 and 15 of the Securities Act.

10.     The claims asserted in the Third and Fourth Causes of Action arise under Sections 10(b) and 20(a) of the Exchange Act.

11.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and 1337 and Section 27 of the Exchange Act, 15 U.S.C. §78aa.

12.     Venue is proper in this District pursuant to Section 27 of the Exchange Act and 28 U.S.C. §1391(b), as many of the acts and practices complained of herein occurred in substantial part in this District and the Company is headquartered in this District.

13.     In connection with the acts alleged herein, Defendants, directly or indirectly used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

### IV.      PARTIES

14.     Plaintiff Special Situations Fund III QP, L.P., as set forth in the accompanying certification incorporated by reference herein, purchased MBII securities (i) in the Secondary Offering and (ii) during the Section 10(b) Class Period, and has been damaged thereby.

15.     Plaintiff Special Situations Cayman Fund, L.P., as set forth in the accompanying certification incorporated by reference herein, purchased MBII securities (i) in the Secondary Offering and (ii) during the Section 10(b) Class Period, and has been damaged thereby.

---

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

16.     Defendant MBII is a Delaware corporation with its headquarters located at 2121 Second Street, Suite A-107, Davis, California 95618.

17.     Defendant Pamela G. Marrone ("Marrone") is the Company's Chief Executive Officer ("CEO"). Marrone signed the Registration Statement.  Marrone also signed Sarbanes-Oxley ("SOX") certifications attesting that MBII's financial statements were accurate and that its systems of internal controls were adequate.

18.     Defendant James B. Boyd ("Boyd") is the Company's CFO.  He has served as MBII's CFO since February 25, 2014.  Boyd signed the Registration Statement.  Boyd also signed SOX certifications attesting that MBII's financial statements were accurate and that its systems of internal controls were adequate.

19.     Defendant Donald J. Glidewell ("Glidewell") served as the Company's CFO until his resignation effective March 25, 2014.  On November 7, 2013, the Company announced that Glidewell would so resign pursuant to a transition agreement between Glidewell and Company.  On March 28, 2014, the Company announced that Glidewell had resigned.  Glidewell signed SOX certifications attesting that MBII's financial statements were accurate and that its systems of internal controls were adequate.

20.     Defendant Hector Absi ("Absi") was at all relevant times Chief Operating Officer ("COO").  Absi served as MBII's COO since January 2014.  Absi is identified in the Registration Statement as one of MBII's executive officers and key employees.

21.     Defendant Elin Miller ("Miller") is chairperson of the Board and signed the Registration Statement.

22.     Defendant Ranjeet Bhatia ("Bhatia") is a member of the Board and signed the Registration Statement.

23.     Defendant Pamela Contag ("Contag") is a member of the Board and signed the Registration Statement.

24.     Defendant Tim Fogarty ("Fogarty") is a member of the Board and signed the Registration Statement.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

25.     Defendant Lawrence Hough ("Hough") is a member of the Board and signed the Registration Statement.

26.     Defendant Joseph Hudson ("Hudson") is a member of the Board and signed the Registration Statement.

27.     Defendant Les Lyman ("Lyman") is a member of the Board and signed the Registration Statement.

28.     Defendant Richard Rominger ("Rominger") is a member of the Board and signed the Registration Statement.

29.     Defendant Shaugn Stanley ("Stanley") is a member of the Board and signed the Registration Statement.

30.     Defendants Marrone, Boyd, Glidewell and Absi are referred to as the "Individual Defendants."

31.     Defendants Miller, Bhatia, Contag, Fogarty, Hough, Hudson, Lyman, Rominger, and Stanley are referred to as the "Director Defendants" and are named as defendants solely by the Section 11 Class and solely for violations of the Securities Act.  All of the Director Defendants, along with Marrone and Boyd, signed the Registration Statement.

## FIRST CAUSE OF ACTION

### (Against MBII, Marrone, Boyd and the Director Defendants)
### Violations of Section 11 of the Securities Act

32.     Defendants' liability under this cause of action is predicated solely on the participation of each Defendant in signing the Registration Statement, which contained untrue statements and omissions of material fact. This cause of action does not sound in fraud.  Any allegations of fraud or fraudulent conduct and/or motive are specifically excluded from this cause of action. For purposes of asserting this claim under the Securities Act, Plaintiffs do not allege that Defendants acted with *scienter* or fraudulent intent.

33.     This cause of action is asserted for violations of Section 11 of the Securities Act, 15 U.S.C. § 77k, on behalf of all members of the Section 11 Class who purchased the Company's securities in the Secondary Offering.

A.     **Class Allegations By The Section 11 Class**

34.     Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(3) on behalf of all persons who purchased MBII securities directly in the Company's Secondary Offering pursuant to the Registration Statement.  This class asserts claims only for violations of Sections 11 and 15 of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. §§ 77k and 77o.  The Section 11 Class does not assert any claims sounding in fraud, whether under Section 10(b) of the Exchange Act or otherwise.  Any person who did not acquire their MBII shares directly in the Secondary Offering and pursuant to the Registration Statement is not included in the Section 11 Class.

35.     Excluded from the Section 11 Class are any persons who did not purchase MBII securities directly in the Secondary Offering.  Also excluded from the Section 11 Class are Defendants, the officers and directors of the Company, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

36.     The members of the Section 11 Class are so numerous that joinder of all members is impracticable.  While the exact number of Section 11 Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiffs believe that there are hundreds or thousands of members in the proposed Section 11 Class.  Record owners and other members of the Section 11 Class may be identified from records maintained by MBII or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

37.     Plaintiffs' claims are typical of the claims of the members of the Section 11 Class, as all members of the Section 11 Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

38.     Plaintiffs will fairly and adequately protect the interests of the members of the Section 11 Class and have retained counsel competent and experienced in class and securities litigation.

39.     Common questions of law and fact exist as to all members of the Section 11 Class and predominate over any questions solely affecting individual members of the Section 11 Class.  Among the questions of law and fact common to the Section 11 Class are:

        (a)     whether the federal securities laws were violated by Defendants' acts as alleged herein;

        (b)     whether statements made by Defendants to the investing public in the Registration Statement misrepresented material facts about the business, operations and management of MBII, including its financial statements; and

        (c)     the proper measure of damages under Section 11.

40.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Section 11 Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Section 11 Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

**B.     Substantive Allegations Under the Securities Act**

41.     On May 16, 2014, MBII filed the Registration Statement with the SEC, representing that the Company intended to undertake a follow-on stock offering. Following amendments made to the Registration Statement in response to comments received from the SEC, the Registration Statement was declared effective by the SEC on June 5, 2014. Thereafter, on June 6, 2014, the Company offered and sold 4.575 million shares of common stock at an offering price of $9.50 per share.  Total proceeds generated from the offering were approximately $43.5 million.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

42.     The Registration Statement contained materially untrue statements when made.  Among other materially untrue statements, the Registration Statement represented that MBII's financial statements were reliable and in compliance with generally accepted accounting principles.  These statements were untrue as the Company itself later admitted when it informed the public on September 3, 2014 that the financial statements could no longer be relied upon, as further detailed below.

C.     **Defendants Admit The Falsity of the Registration Statement**

43.     On September 3, 2014, the Company announced that the Audit Committee had begun an investigation into the accounting practices of the Company, dating back until at least the fourth quarter of 2013. It stated, in an 8-K filed with the SEC, that:

> Item 4.02. Non-Reliance on Previously Issued Financial Statements or a Related Audit Report or Completed Interim Review.
>
> On September 3, 2014, we issued a press release announcing that our board's Audit Committee has commenced an internal investigation after learning of documents calling into question the recognition of revenue in the fourth quarter of 2013 for an $870,000 transaction. On September 2, 2014 the Audit Committee concluded, after consultation with management, that our previously reported financial statements as of December 31, 2013 and for the fiscal year ended December 31, 2013 included in the Company's Annual Report on Form 10-K for the year ended December 31, 2013, the related report of the independent auditors on those 2013 financial statements dated March *25,* 2014, and the unaudited interim financial statements included in the Company's Quarterly Reports on Forms 10-Q for the quarters ended March 31, 2014 and June 30, 2014, should no longer be relied upon.
>
> The Audit Committee of the Board of Directors of the Company and Company management have discussed the foregoing matters with the Company's independent registered public accounting firm, Ernst & Young LLP.

44.     The Company further stated, in a press release entitled "Marrone Bio Innovations Announces Audit Committee Investigation" and attached to the 8-K filed with the SEC on September 3, 2014, that:

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Marrone Bio Innovations, Inc. (MBI)[NASDAQ: MBII] today announced that, at the recommendation of management, the Audit Committee of its Board of Directors has commenced an internal investigation after management learned of documents calling into question the recognition of revenue in the fourth quarter of 2013 for an $870,000 transaction. The Audit Committee has retained independent legal advisers to assist it in this investigation.

In addition, the Audit Committee has determined that the company's financial statements for the fiscal year ended December 31, 2013, the unaudited interim financial statements for the three month period ended March 31, 2014 and the three- and six- month periods ended June 30, 2014, should no longer be relied upon as being in compliance with generally accepted accounting principles.

45.     On September 3, 2014, as the market began to absorb the disclosures made in the SEC filing and press release issued that morning, MBII's stock price plummeted. The stock closed at $5.65 on September 2, 2014, the last day of trading prior to the release of the revelations contained in the press release.  MBII stock closed on September 3, 2014, at $3.15, trading at its highest volume in history. By September 5, 2014, the stock was trading as low as $2.80 per share, reflecting a loss of nearly fifty percent of the Company's value.

D.     **First Cause of Action**

46.     The Registration Statement contained untrue statements of material fact and omitted other facts necessary to make the statements not untrue, and failed to disclose material facts as described above. MBII was the Registrant, while Marrone, Boyd and the Director Defendants were responsible for the contents and dissemination of the Registration Statement, and each of them signed the Registration Statement.  As such, said Defendants issued, caused to be issued, and participated in the issuance of the Registration Statement and are subject to liability for violations of Section 11 of the Securities Act.

47.     MBII is strictly liable to members of the Section 11 Class, who purchased shares pursuant to the Registration Statement, which contained misstatements and omissions. Marrone, Boyd and the Director Defendants are also liable to members of the Section 11 Class.   None of the Director Defendants made a reasonable investigation or possessed

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

reasonable grounds to believe that the statements contained in the Registration Statement were true and without omissions of any material facts and were not misleading.

48.     By reason of the conduct alleged herein, MBII, Marrone, Boyd and the Director Defendants each violated Section 11 of the Securities Act.

49.     Plaintiffs and other members of the Section 11 Class have sustained damages. The value of MBII's common stock sold in the Secondary Offering has declined substantially subsequent to, and in response to, Defendants' violations of the Securities Act.  By reason of the foregoing, Defendants are liable to Plaintiffs and the other members of the Section 11 Class for violating Section 11 of the Securities Act.

50.     Plaintiffs have brought the present action promptly after the untrue statements contained in the Registration Statement were discovered or reasonably could have been discovered and within one year from the time that Plaintiffs discovered or reasonably could have discovered the facts upon which this complaint is based to the time that Plaintiffs filed this complaint.  Likewise, less than three years have elapsed from the time that the securities upon which this cause of action is brought were offered to the public and the time that Plaintiffs filed this complaint.

**SECOND CAUSE OF ACTION**

**(Against Marrone, Boyd, Absi and the Director Defendants)**
**<u>Violations of Section 15 of the Securities Act</u>**

51.     This cause of action is asserted against Marrone, Boyd, Absi and the Director Defendants for violations of Section 15 of the Securities Act, 15 U.S.C. § 77o, on behalf of Plaintiffs and the other members of the Section 11 Class.

52.     By reason of the wrongful conduct described herein, MBII committed a primary violation of Section 11 of the Securities Act.

53.     At all relevant times, Marrone, Boyd, Absi and the Director Defendants were controlling persons of the Company within the meaning of Section 15 of the Securities Act. Each of Marrone, Boyd, Absi and the Director Defendants served as an executive officer

and/or director of MBII prior to and at the time of the Secondary Offering.  At all relevant times, each of Marrone, Boyd, Absi and the Director Defendants participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the conduct of MBII's business affairs. As officers and/or directors of a publicly owned company, Marrone, Boyd, Absi and the Director Defendants had a duty to disseminate accurate and truthful information about MBII's securities and with respect to the Company's internal controls. By reason of the aforementioned conduct, Marrone, Boyd, Absi and the Director Defendants are liable under Section 15 of the Securities Act, jointly and severally with, and to the same extent as, the Company to Plaintiffs and the other members of the Section 11 Class.

54.     Each of Marrone, Boyd, Absi and the Director Defendants was a culpable participant in the violations of Section 11 of the Securities Act alleged in the preceding cause of action based on his or her having signed or authorized the signing of the Registration Statement and having otherwise participated in the process which allowed the Secondary Offering to be successfully completed.

### THIRD CAUSE OF ACTION

**(Against MBII and the Individual Defendants)**
**Violations of Section 10(b) of the Exchange Act and SEC Rule 10b-5**

55.     This Cause of Action is asserted against MBII and the Individual Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and SEC Rule 10b-5 promulgated thereunder.

A.     **Class Allegations By The Section 10(B) Class**

56.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(3) on behalf of all persons who purchased or otherwise acquired MBII securities on the open market between March 7, 2014 and September 2, 2014, inclusive.  This class of investors asserts claims only for violations of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b) and 78t(a), and Rule l0b-5 promulgated thereunder, as well

1   as Section 20(a) of the Exchange Act.  The Section 10(b) Class does not assert any claims
2   under Section 11 of the Securities Act.

3          57.     Excluded from the Section 10(b) Class are Defendants, the officers and
4   directors of the Company, members of their immediate families and their legal
5   representatives, heirs, successors or assigns and any entity in which Defendants have or had a
6   controlling interest.

7          58.     The members of the Section 10(b) Class are so numerous that joinder of all
8   members is impracticable.  While the exact number of Section 10(b) Class members is
9   unknown to Plaintiffs at this time and can only be ascertained through appropriate discovery,
10   Plaintiffs believe that there are hundreds or thousands of members in the proposed Section
11   10(b) Class.  Record owners and other members of the Section 10(b) Class may be identified
12   from records maintained by MBII or its transfer agent and may be notified of the pendency of
13   this action by mail, using the form of notice similar to that customarily used in securities
14   class actions.

15          59.     Plaintiffs' claims are typical of the claims of the members of the Section 10(b)
16   Class, as all members of the Section 10(b) Class are similarly affected by Defendants'
17   wrongful conduct in violation of federal law that is complained of herein.

18          60.     Plaintiffs will fairly and adequately protect the interests of the members of the
19   Section 10(b) Class and have retained counsel competent and experienced in class and
20   securities litigation.

21          61.     Common questions of law and fact exist as to all members of the Section
22   10(b) Class and predominate over any questions solely affecting individual members of the
23   Section 10(b) Class.  Among the questions of law and fact common to the Section 10(b)
24   Class are:

25                       (a)     whether the federal securities laws were violated by Defendants' acts as
26                               alleged herein;

27

28

---

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

(b)      whether statements made by Defendants to the investing public misrepresented material facts about the business, operations and management of MBII, including its financial statements; and

(c)      to what extent the members of the Section 10(b) Class have sustained damages and the proper measure of those damages.

62.      A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Section 10(b) Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Section 10(b) Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## B.      Basis For Group Pleading

63.      Because of the Individual Defendants' positions within the Company, they had access to undisclosed information about MBII's business, operations, operational trends, financial statements, markets and present and future business prospects via access to internal corporate documents (including the Company's operating plans, budgets and forecasts and reports of actual operations and performance), conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.

64.      It is appropriate to treat the Individual Defendants as a group for pleading purposes and to presume that the false, misleading and incomplete information conveyed in the Company's public filings, press releases and other publications as alleged herein are the collective actions of the narrowly defined group of defendants identified above. Each of the Individual Defendants, by virtue of their high-level positions with the Company, directly participated in the management of the Company, were directly involved in the day-to-day operations of the Company at the highest levels and were privy to confidential proprietary information concerning the Company and its business, operations, growth, financial

statements, and financial condition, as alleged herein. The Individual Defendants collectively were involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein, were aware, or recklessly disregarded, that the false and misleading statements were being issued regarding the Company, and approved or ratified these statements, in violation of the federal securities laws.

65.     As officers and directors of a publicly-held company whose securities were, and are, registered with the SEC pursuant to the United States federal securities laws, the Individual Defendants each had a duty to disseminate prompt, accurate and truthful information with respect to the Company's financial condition and performance, growth, operations, financial statements, business, markets, management, earnings and present and future business prospects, and to correct any previously-issued statements that had become materially misleading or untrue, so that the market price of the Company's publicly-traded securities would be based upon truthful and accurate information. The Individual Defendants' misrepresentations and omissions during the Section 10(b) Class Period violated these specific requirements and obligations.

66.     The Individual Defendants, because of their positions of control and authority as officers and/or directors of the Company, were able to and did control the content of the various SEC filings, press releases and other public statements pertaining to the Company during the Class Period. Each of the Individual Defendants were provided with copies of the documents alleged herein to be misleading prior to or shortly after their issuance and/or had the ability and/or opportunity to prevent their issuance or cause them to be corrected. Accordingly, each of the Individual Defendants are responsible for the accuracy of the public reports and releases detailed herein and are therefore primarily liable for the representations contained in those materials.

67.     Each of the Individual Defendants are liable as a participant in a fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of MBII securities by disseminating materially false and misleading statements and/or concealing material adverse facts. The scheme: (i) deceived the investing public regarding MBII's

business, operations, management and the intrinsic value of its securities and (ii) caused Plaintiff and other shareholders to purchase MBII securities at artificially inflated prices.

### C.   Applicability Of Presumption Of Reliance: Fraud On The Market Doctrine

68.   At all relevant times, the market for MBII's securities was an efficient market for the following reasons, among others:

(a)   MBII's securities met the requirements for listing, and were listed and actively traded on the NASDAQ, a highly efficient market;

(b)   During the Section 10(b) Class Period, MBII's securities were actively traded, demonstrating a very strong presumption of an efficient market;

(c)   As a regulated issuer, MBII filed with the SEC periodic public reports during the Section 10(b) Class Period;

(d)   MBII regularly communicated with public investors via established market communication mechanisms;

(e)   MBII was followed by securities analysts employed by major brokerage firms who wrote reports that were distributed to the sales force and certain customers of brokerage firms during the Section 10(b) Class Period. These analysts included, but were not necessarily limited to: Robert W. Baird and Stifel.  Each of these reports was publicly available and entered the public marketplace; and

(f)   Unexpected material news about MBII was rapidly reflected in and incorporated into the Company's stock price during the Section 10(b) Class Period.

69.   As a result of the foregoing, the market for MBII's securities promptly digested current information regarding MBII from all publicly available sources and reflected such information in MBII's securities price. Under these circumstances, all purchasers of MBII's securities during the Section 10(b) Class Period suffered similar injury through their purchase of MBII's securities at artificially inflated prices, and a presumption of reliance applies.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

### D.   Substantive Allegations Under the Exchange Act

70.   Defendant Marrone is a provider of bio-based pest management and plant health products for the agriculture, turf and ornamental and water treatment markets. The Company represents that its "effective and environmentally responsible solutions help customers operate more sustainably while controlling pests, improving plant health, and increasing crop yields," and that it has "a proprietary discovery process, a rapid development platform, and a robust pipeline of pest management and plant health product candidates."

71.   The Company went public in an IPO in August, 2013.  In November 2013, following the IPO, MBII announced that then-CFO Glidewell, who had only joined Marrone in 2011, was retiring as soon as his replacement could be located, but that in no event would he stay more than five months.

72.   On February 25, 2014, the Company announced that the MBII Board of Directors had appointed defendant Boyd as its Vice President and Co-CFO effective February 26, 2014. Defendant Boyd would serve in that role jointly with defendant Glidewell until he departed, which the Company stated would be no later than March 31, 2014.

### E.   Defendants' Materially False And Misleading Class Period Statements

73.   On March 6, 2014, after the close of trading, Marrone issued a press release announcing its fourth quarter and fiscal 2013 financial results for the period ended December 31, 2013. In the release, the Company stated that "[r]evenues for the fourth quarter 2013 totaled $6 million, representing growth of 106%," and that "[r]evenue for the full year 2013 totaled $14.5 million, representing growth of 104%." The release further stated that Marrone had achieved a fourth quarter 2013 "[n]et loss of $10 million, compared to net loss of $17.1 million in the fourth quarter of 2012," and a net loss of $28.489 million for fiscal 2013 compared with a net loss of $38,794 for fiscal 2012.  As to MBII's "Business Outlook," the release stated in pertinent part that "[f]or the full year 2014 the Company expect[ed] net revenues to continue to at least double compared to the full year 2013."

74.   Later that evening, the Company conducted a conference call with investors during which it reiterated the financial results announced that day and provided other positive

1    commentary regarding the Company's business results and financial prospects. Defendants

2    Marrone and Glidewell participated in the call.

3            75.    On March 25, 2014, the Company filed with the SEC its annual financial report

4    on Form 10-K for the fiscal year ended December 31, 2013, signed by defendants Marrone and

5    Glidewell.  The Form 10-K contained the same fourth quarter and fiscal 2013 financial results

6    as described above for the same period, and also contained audited financial statements.  The

7    Company's Form 10-K also contained signed certifications pursuant to SOX by Defendants

8    Marrone and Glidewell that they personally designed and evaluated the effectiveness of the

9    Company's internal controls and that the financial information contained in the 2013 Form 10-

10   K was accurate.

11           76.    On March 28, 2014, the Company announced that defendant Glidewell had

12   resigned effective March 25, 2014.

13           77.    On May 13, 2014, Marrone issued a press release announcing its first quarter

14   2014 financial results for the period ended March 31, 2014. In the release, the Company stated

15   that "[r]evenues for the first quarter 2014 totaled $2.8 million, compared to $2.7 million for the

16   first quarter of 2013, in-line with the company's expectations against the headwinds of severe

17   weather in all of [its] growing regions," and that the Company had achieved a "[n]et loss of

18   $10.2 million, compared to net loss of $10.7 million in the first quarter of 2013." As to MBII's

19   "Business Outlook," the release stated in pertinent part that "[f]or the full year 2014 the

20   Company continue[d] to expect net revenues to at least double compared to the full year 2013."

21           78.    Later that evening, the Company conducted a conference call with investors in

22   which it reiterated the financial results announced that day and provided other positive

23   commentary regarding the Company's business results and financial prospects. Defendants

24   Marrone and Boyd participated in the call.

25           79.    On May 15, 2014, the Company filed with the SEC its quarterly financial report

26   on Form 10-Q for the period ended March 31, 2014, signed by defendant Boyd. The Form 10-

27   Q contained the same fourth quarter and fiscal 2013 financial results as contained in the release

28   for the same period detailed above.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

80.     On August 7, 2014, the Company issued a press release announcing its second quarter 2014 financial results for the period ended June 30, 2014. In the release, the Company stated that "[r]evenues for the second quarter totaled $3.6 million, compared to $4.5 million in the second quarter of 2013," that "[a]s in the first quarter of 2014, this comparison primarily reflects the ongoing impact of adverse weather across the Company's growing regions, partially offset by increased adoption rates for all of its products, including Venerate, which began shipments and sold out all available inventory in the second quarter," and that the "[n]et loss for the second quarter was $10.4 million compared to $10.2 million in first quarter 2014." The release also stated in pertinent part that, "[a]s a result of the impact of bad weather on the year and the late Tuesday resignation of its COO, the Company [was] unable to give annual guidance at [that] time, but [might] be able to provide annual guidance at a later date." The release also quoted defendant Boyd as stating in pertinent part that MBII "enjoy[ed] a strong balance sheet, reinforced by approximately $40 million in proceeds from [its] recent secondary offering," and that "go[ing] forward, [the Company would] deploy capital in a disciplined manner to accelerate growth" and was "well positioned financially as well as strategically and with regard to [its] operating capabilities."

81.     Later that evening, the Company conducted a conference call with investors in which it reiterated the financial results announced that day and provided other positive commentary regarding the Company's business results and financial prospects. Defendants Marrone and Boyd participated in the call.

82.     Also on August 7, 2014, the Company announced in a press release that Absi, the Company's COO, was resigning effective August 22, 2014.

83.     On the news that, among other things, Absi was resigning, the price of Marrone stock dropped significantly on August 8, 2014, falling more than $4 per share to close at $5.51 per share on unusually high trading volume of more than 1.3 million shares traded.  However, based on Defendants' false and misleading statements about the Company's past, present and future financial results, the price of MBII stock remained artificially inflated.

84.     On August 13, 2014, the Company filed with the SEC its quarterly financial report on Form 10-Q for the period ended June 30, 2014, signed by defendant Boyd. The Form 10-Q contained the same fiscal and fourth quarter 2013 financial results as contained in the release detailed above for the same period.

85.     The statements referenced above were each materially false and misleading when made because they failed to disclose and misrepresented the following adverse facts known by Defendants, or recklessly disregarded by them, during the Section 10(b) Class Period:

(a)     MBII had overstated its fourth quarter and fiscal 2013 revenues by $870,000 by improperly recognizing revenue in violation of Generally Accepted Accounting Principles ("GAAP"), which the financial reports and reports filed on Forms 10-K and 10-Q claimed to have been prepared in compliance with;

(b)     As a result, the Company's fourth quarter and fiscal 2013 net loss was materially understated; and

(c)     As a result, MBII was not on track to achieve the financial results it claimed to be on track to achieve during the Section 10(b) Class Period.

86.     On September 3, 2014, the Company issued a press release "announc[ing] that, at the recommendation of management, the Audit Committee of its Board of Directors ha[d] commenced an internal investigation after management learned of documents calling into question the recognition of revenue in the fourth quarter of 2013 for an $870,000 transaction," and that the "Audit Committee ha[d] retained independent legal advisers to assist it in this investigation."  The release also disclosed that "the Audit Committee ha[d] already determined that the company's financial statements for the fiscal year ended December 31, 2013, the unaudited interim financial statements for the three month period ended March 31, 2014 and the three- and six- month periods ended June 30, 2014, should no longer be relied upon as being in compliance with generally accepted accounting principles."

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

87.     On this news, the price of MBII stock plummeted, falling $2.50 per share to close at $3.15 per share on unusually high trading volume of more than 2.5 million shares traded.

F.     **No Safe Harbor**

88.     The statutory safe harbor under the Private Securities Litigation Reform Act of 1995, which applies to forward-looking statements under certain circumstances, does not apply to any of the allegedly false and misleading statements plead herein. The statements alleged herein to be false and misleading all relate to then-existing facts and conditions, and the safe harbor has no applicability.  The forward-looking statements were contradicted by existing, undisclosed material facts that were required to be disclosed so that the forward-looking statements would not be misleading.  To the extent that known trends should have been included in the Company's financial reports prepared in accordance with GAAP, they are excluded from the protection of the statutory safe harbor.

89.     In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not adequately identified as forward-looking statements when made, and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.  Moreover, to the extent that there were cautionary statements purporting to identify factors that could cause actual results to differ, such warnings were themselves misleading because they warned of "risks" that had actually already materialized.

90.     Alternatively, to the extent that the statutory safe harbor is intended to apply to any forward-looking statements pled herein, Defendants are liable for those false forward-looking statements because, at the time each of those forward-looking statements was made, the particular speaker had actual knowledge that the particular forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized and/or approved by an executive officer of MBII who knew that those statements were false, misleading or omitted necessary information when they were made.  MBII's safe-harbor

warnings accompanying its purportedly forward-looking statements issued during the Section 10(b) Class Period were thus ineffective to shield those statements from liability.

### G. **Additional Scienter Allegations**

91. As alleged herein, Defendants acted with scienter in that Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth herein, Defendants, by virtue of their receipt of information reflecting the true facts regarding MBII, their control over, and/or receipt of or modification of MBII's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning MBII, participated in the fraudulent scheme alleged herein.

### H. **Defendants' Misconduct Caused the Plaintiffs to Suffer Economic Loss (Loss Causation)**

92. During the Section 10(b) Class Period, as detailed herein, Defendants engaged in a scheme to deceive the market and a course of conduct that artificially inflated the Company's stock price, and operated as a fraud or deceit on acquirers of the Company's securities. As detailed above, when the truth about MBII's misconduct and its lack of operational and financial controls was revealed, the Company's securities declined precipitously as the prior artificial inflation no longer propped up its stock price. The decline in MBII's share price was a direct result of the nature and extent of Defendants' fraud finally being revealed to investors and the market. The timing and magnitude of the common stock price decline negates any inference that the loss suffered by Plaintiffs and other members of the Section 10(b) Class was caused by changed market conditions, macroeconomic or industry factors or Company-specific facts unrelated to the Defendants' fraudulent conduct. The

---

economic loss, *i.e.,* damages, suffered by Plaintiffs and other Section 10(b) Class members was a direct result of Defendants' fraudulent scheme to artificially inflate the Company's stock price and the subsequent significant decline in the value of the Company's share price when Defendants' prior misrepresentations and other fraudulent conduct was revealed.

93.     At all relevant times, Defendants' materially false and misleading statements or omissions alleged herein directly or proximately caused the damages suffered by the Plaintiffs and other Section 10(b) Class members. Those statements were materially false and misleading through their failure to disclose a true and accurate picture of MBII's business, operations and financial condition, as alleged herein. Throughout the Section 10(b) Class Period, Defendants publicly issued materially false and misleading statements and omitted material facts necessary to make Defendants' statements not false or misleading, causing MBII's securities to be artificially inflated. Plaintiffs and other Section 10(b) Class members purchased MBII's securities at those artificially inflated prices, causing them to suffer the damages complained of herein.

## I.     **Third Cause of Action**

94.     During the Section 10(b) Class Period, these Defendants, singly and in concert, directly engaged in a common plan, scheme and unlawful course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and course of business which operated as fraud and deceit upon Plaintiffs and the other members of the Section 10(b) Class, and failed to disclose material information in order to make the statements made, in light of the circumstances under which they were made, not misleading to Plaintiffs and the other members of the Section 10(b) Class. The purpose and effect of said scheme, plan and unlawful course of conduct was, among other things, to induce Plaintiffs and the other members of the Section 10(b) Class to purchase MBII's securities during the Section 10(b) Class Period at artificially inflated prices.

95.     As a result of the failure to disclose material facts, the information these Defendants disseminated to the investing public was materially false and misleading as set forth above, and the market price of MBII's securities was artificially inflated during the

1    Section 10(b) Class Period. In ignorance of the false and misleading nature of the statements

2    described above and the deceptive and manipulative devices and contrivances employed by

3    these Defendants, Plaintiffs and other members of the Section 10(b) Class relied, to their

4    detriment, on the integrity of the market price of MBII's securities in purchasing their shares.

5    Had Plaintiffs and the other members of the Section 10(b) Class known the truth, they would

6    not have purchased said shares or would not have purchased them at the inflated prices that

7    were paid.

8         96.    Plaintiffs and other members of the Section 10(b) Class have suffered

9    substantial damages as a result of the unlawful conduct alleged herein in an amount to be

10   proved at trial.

11        97.    By reason of the foregoing, Defendants directly violated Section 10(b) of the

12   Exchange Act and Rule 10b-5 promulgated thereunder in that they: (a) employed devices,

13   schemes and artifices to defraud; (b) failed to disclose material information; or (c) engaged in

14   acts, practices and a course of business which operated as a fraud and deceit upon Plaintiffs

15   and the other members of the Section 10(b) Class in connection with their purchases of MBII's

16   securities during the Section 10(b) Class Period.

17
18                              **FOURTH CAUSE OF ACTION**

19                              **(Against the Individual Defendants)**
20                   **Violations of Section 20(a) of the Exchange Act**

21        98.    By reason of the wrongful conduct described herein, MBII committed a

22   primary violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated

23   thereunder.

24        99.    The Individual Defendants, by virtue of their positions, stock ownership

25   and/or specific acts described above, were, at the time of the wrongs alleged herein,

26   controlling persons within the meaning of Section 20(a) of the Exchange Act.

27
28

---

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

100.    The Individual Defendants had the power and influence -- and exercised such power and influence -- as to cause MBII to engage in the unlawful conduct and practices complained of herein.

101.    By reason of the conduct alleged in the third cause of action of this Complaint, the Individual Defendants are jointly and severally liable to the same extent as the Company for the aforesaid unlawful conduct, and are liable to Plaintiffs and to the other members of the Section 10(b) Class for the substantial damages which they suffered in connection with their purchases of MBII's securities during the Section 10(b) Class Period.

## V.      **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on their own behalf and on behalf of the Section 11 Class and the Section 10(b) Class, pray for judgment as follows:

(a)    Determining this action to be a proper class action and certifying Plaintiffs as class representatives under Rule 23 of the Federal Rules of Civil Procedure;

(b)    Awarding compensatory damages in favor of Plaintiffs and the other members of the Section 11 Class and the Section 10(b) Class, respectively, against Defendants, jointly and severally, for the damages sustained as a result of the wrongdoings of Defendants, together with interest thereon;

(c)    Awarding Plaintiffs the fees and expenses incurred in this action, including reasonable allowance of fees for Plaintiffs' attorneys and experts;

(d)    Granting extraordinary equitable relief as permitted by law; and,

(e)    Granting such other and further relief as the Court may deem just and proper.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

1

## JURY TRIAL DEMANDED

2

Plaintiffs hereby demand a trial by jury.

3

4      DATED: November 3, 2014

/s/ Michael J. McGaughey

5      MICHAEL J. McGAUGHEY (198617)
**LOWENSTEIN SANDLER LLP**

6      390 Lytton Avenue
Palo Alto, CA 94301

7      Telephone: 415-288-4545
Fax: 415-288-4534

8      E-mail: mmcgaughey@lowenstein.com

9      *Counsel for Plaintiffs Special Situations Fund III*
*QP, L.P. and Special Situations Cayman Fund, L.P.*

10

11     *Pro hac vice* application forthcoming:
LAWRENCE M. ROLNICK

12     STEVEN M. HECHT
THOMAS E. REDBURN

13     **LOWENSTEIN SANDLER LLP**

14     1251 Avenue of the Americas
New York, NY 10020

15     Telephone: 646-414-6902
Fax: 973-597-2381

16     E-mail: shecht@lowenstein.com
tredburn@lowenstein.com

17

18

19

20

21

22

23

24

25

26

27

28

---

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS