UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOANN N. MARTINELLI, individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>  v.<br><br>MARRONE BIO INNOVATIONS, INC., et al.,<br><br>      Defendants. | No.  2:14-cv-02055 MCE-KJN<br><br>**ORDER** |
| PAUL SAUSMAN, individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>  v.<br><br>MARRONE BIO INNOVATIONS, INC., et al.,<br><br>      Defendants. | No.  2:14-cv-02072 MCE-KJN |
| SSUCHIA CHEN, individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>  v.<br><br>MARRONE BIO INNOVATIONS, INC., et al.,<br><br>      Defendants. | No.  2:14-cv-02105 MCE-KJN |

1

| | |
|---|---|
| KENT OLDHAM, individually and on behalf of all others similarly situated,<br><br>           Plaintiff,<br><br>     v.<br><br>MARRONE BIO INNOVATIONS, INC., et al.,<br><br>           Defendants. | No.  2:14-cv-02130 MCE-KJN |
| SPECIAL SITUATIONS FUND III QP, L.P., AND SPECIAL SITUATIONS CAYMAN FUND, L.P., individually and on behalf of all others similarly situated,<br><br>           Plaintiffs,<br><br>     v.<br><br>MARRONE BIO INNOVATIONS, INC., et al.,<br><br>           Defendants. | No.  2:14-cv-02571 MCE-KJN |

Plaintiffs in these related class action cases charge Defendant Marrone Bio Innovations, Inc., ("Marrone Bio"), certain of its officers and directors, and its underwriters with violating the Securities and Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), Securities Act of 1933 (the "Securities Act"), 15 U.S.C. § 77z-1(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA").  Presently before the Court are three motions to consolidate these cases, to appoint lead plaintiffs, and to approve class counsel: (1) a motion filed by Special Situations Fund III QP, L.P., and Special Situations Cayman Fund, L.P. (collectively "Special Situations") (ECF No. 15);[1] (2) a motion filed by Metzler Investment GmbH and Stacey Gillis (collectively "Global Investors") (ECF No. 20); and (3) a motion brought by Edward L. Carter, Michael Criston, Jagpall S. Gill, Harpreet Singh, and Venkata Parimi

---

[1] All motions were filed in the docket for Case No. 2:14-cv-02055-MCE-KJN, but this motion was also filed as ECF No. 5 in the docket for related case, 2:14-cv-2571-MCE-KJN.

(collectively "Marrone Investor Group") (ECF No. 24). For the reasons set forth below, these cases are consolidated, the Special Situations Plaintiffs are appointed Lead Plaintiffs, and their selection of Lead Counsel is approved.[2]

## BACKGROUND[3]

Marrone Bio is a local biotech company providing bio-based, eco-friendly pest management and health products. After completing an initial public offering in August 2013, the company's stock was traded on the NASDAQ under the ticker symbol "MBII." At the end of 2013, Marrone Bio filed its 10-K, reporting that its revenues had doubled over the prior year. The company continued to report strong results in the first quarter of 2014 and subsequently, in June 2014, it undertook a Secondary Offering of 4.575 million shares of common stock at $9.50. That offering was conducted pursuant to a Registration Statement that was filed with the Securities and Exchange Commission ("SEC") and declared effective on June 5, 2014.

Special Situations purchased 140,000 shares directly out of the Second Offering and made purchases of 422,685 shares on the open market between June 6 and September 2, 2014. During the same relevant time period, Global Investors purchased 41,299 shares and the Marrone Investor Group purchased 22,100 shares of Marrone Bio common stock. Decl. of Shawn A. Williams, ECF No. 22, Exs. A, B; Decl. of Jon A. Tostrud, ECF No. 26, Ex. D.

Subsequently, on September 3, 2014, Marrone Bio issued a press release, which was also filed with the SEC. That press release revealed that Marrone's Audit Committee had discovered documents calling into question the recognition of certain material revenue in the fourth quarter of 2013. According to the Audit Committee,

---

[2] Because oral argument would not be of material assistance, the Court ordered this matter submitted on the briefs. E.D. Cal. Local Rule 230(g).

[3] Unless otherwise indicated, the following facts are taken, at times verbatim, from Special Situations' Motion. (ECF No. 15).

3

following that discovery, it conducted an internal investigation and determined that the financials reported for 2013 and the first half of 2014 should not have been relied upon by investors. This revelation purportedly meant that the Registration Statement under which shares had been sold was false. Marrone Bio shares thereafter fell by at least $2.85 per share.

As is relevant here, the Special Situations Plaintiffs suffered losses in excess of $3 million as a result of this decrease in the value of Marrone Bio's stock. Decl. of Lawrence M. Rolnick, ECF No. 17-2, Ex. B. The Global Investors estimate their losses at just over $300,000, and the Marrone Investor Group lost approximately $85,000. Williams Decl., Exs. A, B; Tostrud Decl., Ex. D.

Special Situations subsequently filed its Complaint in Case No. 2:14-cv-2571-MCE-KJN, seeking to recover damages on behalf of both a class of purchasers who had invested directly during the Secondary Offering and a class of purchasers who had obtained the stock on the open market. At approximately the same time, the four other putative class actions pending before the Court, including those brought by the Global Investors and the Marrone Investor Group, were also initiated.

**ANALYSIS**

Each of the moving parties seeks to consolidate these actions, to be appointed as lead plaintiffs, and to have their choice of lead counsel approved. There is no dispute that these cases should be consolidated. Given the fact that the claims arise from the same general set of facts and involve common questions of law, the Court agrees. Accordingly, those requests are all GRANTED. See Fed. R. Civ. P. 42(a) ("If actions before the court involve a common question of law or fact, the court may . . . consolidate the actions."). There is also largely no dispute when it comes to the appointment of lead plaintiff and lead counsel. Those requests are nonetheless addressed in more detail below.

**A.    Lead Plaintiff**

Under the PSLRA, district courts "select as lead plaintiff the one 'most capable of adequately representing the interests of class members.'" In re Cavanaugh, 306 F.3d 726, 729 (9th Cir. 2002) (quoting 15 U.S.C. § 78u-4(a)(3)(B)(i)).  "While the words 'most capable' seem to suggest that the district court will engage in a wide-ranging comparison to determine which plaintiff is best suited to represent the class, the statute defines the term much more narrowly: The 'most capable' plaintiff-- and hence the lead plaintiff-- is the one who has the greatest financial stake in the outcome of the case, so long as he meets the requirements of Rule 23." Id.

This Court follows a "three-step process for identifying the lead plaintiff pursuant to these criteria." Id.  "The first step consists of publicizing the pendency of the action, the claims made and the purported class period." Id. (quoting 15 U.S.C. § 78u-4(a)(3)(A)).  "In step two, the . . . [Court] must consider the losses allegedly suffered by the various plaintiffs before selecting as the 'presumptively most adequate plaintiff'-- and hence the presumptive lead plaintiff-- the one who 'has the largest financial interest in the relief sought by the class' and 'otherwise satisfies the requirements of Rule 23 . . . .'" Id. at 729-30 (footnotes omitted) (quoting 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)).  "In other words, the district court must compare the financial stakes of the various plaintiffs and determine which one has the most to gain from the lawsuit." Id. at 730.

After that initial determination has been made, "[the court] must then focus its attention on that plaintiff and determine, based on the information he has provided in his pleadings and declarations, whether he satisfies the requirements of Rule 23(a), in particular those of 'typicality' and 'adequacy.'" Id.  "If the plaintiff with the largest financial stake in the controversy provides information that satisfies these requirements, he becomes the presumptively most adequate plaintiff." Id.  "The third step of the process is to give other plaintiffs an opportunity to rebut the presumptive lead plaintiff's showing that it satisfies Rule 23's typicality and adequacy requirements." Id. (quoting 15 U.S.C.

5

§ 78u-4(a)(3)(B)(iii)(II)).   Special Situations meets all these requirements in the present matter.

First, on September 8, 2014, Special Situations published notice in the Business Wire apprising investors of the pendency of related case Sausman v. Marrone Bio Innovations, Inc., Case No. 2:14-cv-2072-MCE-KJN, and advised investors of their right to seek status as Lead Plaintiff.  Rolnick Decl., Ex. D.[4]  All motions currently before the Court were timely filed on November 4, 2014.  Accordingly, the first step has been satisfied here.

Second, Special Situations offered evidence, and the other moving parties concede, that, having lost over $3 million, they have the greatest stake in this action. The Global Investors suffered the next largest loss amount, estimated at just over $300,000, and the members of the Marrone Investor Group lost approximately $85,000. As such, the Special Situations parties are presumptively the most adequate lead plaintiffs.

Third, Special Situations offered ample evidence sufficient to meet the requirements of Rule 23.  "Although Rule 23 contains four basic requirements (numerosity, commonality, typicality, and adequacy of representation), a presumptive lead plaintiff need only make a 'preliminary showing' of typicality and adequacy." In re Surebeam Corp. Sec. Lit., 2004 WL 5159061, at *5 (S.D. Cal.) (internal citations omitted).

The typicality requirement focuses on whether "the plaintiff's claim is aligned with the claims of the remainder of the class." Id. at *6.  "This factor mandates that the presumptive lead plaintiff's claim arise from the same event or course of conduct giving rise to the claims of other class members and be based on the same legal theory." Id. Here, Special Situations' claims arise from substantially the same conduct as the other

///

---

[4] There are no objections to this form of notice, which has previously been found adequate in other securities cases.  See In re Surebeam Corp. Sec. Lit., 2004 WL 5159061, at *1 n.3 (S.D. Cal.).

class members' claims, and all of the legal theories are fundamentally the same. Special Situations have thus shown sufficient typicality.

Special Situations has likewise satisfied Rule 23's adequacy requirement. "In evaluating whether a class representative is adequate, courts assess whether [it] has interests antagonistic to the class, and whether [its] counsel have the necessary capabilities and qualifications." Puente v. Chinacast Educ. Corp., 2012 WL 3731822, at *5 (C.D. Cal.). Special Situations' interest in pursuing this action is directly aligned with the remaining class members, and given its much greater financial stake in the action, Special Situations has a strong incentive to vigorously prosecute this litigation. It has affirmatively acknowledged and accepted the responsibility of proceeding as lead-plaintiffs by submitting a Certification indicating, among other things, that "[Special Situations] fully understand[s] the duties and responsibilities of a lead plaintiff under the Private Securities Litigation Reform Act, including the selection and retention of counsel and overseeing the prosecution of the action for the classes." Rolnick Decl., Ex. A. Special Situations has extensive experience serving as lead plaintiff in other actions, and they have selected as counsel a firm highly qualified and experienced in the area of securities class action litigation. Id., at Ex. E.

Finally, no party offers any evidence to rebut Special Situations' showing that it meets the Rule 23 typicality and adequacy requirements. Instead, both other groups of moving Plaintiffs filed Statements of Non-Opposition to the granting of Special Situations' Motion.[5] See ECF No. 32, 34. Accordingly, Special Situations' Motion to Proceed as co-lead Plaintiffs is GRANTED, and the other competing Motions (ECF Nos. 20, 24) are DENIED without prejudice.

**B.     Lead Counsel**

Special Situations' request for approval of its choice of Lowenstein Sandler to serve as lead counsel is also approved. "The most adequate plaintiff shall, subject to

---

[5] Defendants take no position as to which groups should be appointed lead plaintiff. See ECF No. 35.

7

1  the approval of the court, select and retain counsel to represent the class." 15 U.S.C.
2  § 78u–4(a)(3)(B)(v).  "Although this power is subject to court approval and is therefore
3  not absolute, it plainly belongs to the lead plaintiff."  Cohen v. U.S. Dist. Court for the
4  Northern Dist. of Cal., 586 F.3d 703, 709 (9th Cir. 2009).
5       Special Situations' choice is sound.  As evidenced by the firm's resume,
6  Lowenstein Sandler is a leading national firm with over 100 litigation attorneys.  Rolnick
7  Decl., Ex. F.  The firm's lawyers have extensive experience, and have developed
8  nationally recognized practices, in securities fraud litigation, class actions, derivative
9  litigation, antitrust, consumer fraud litigation, and white collar criminal defense.  Id.  Its
10 litigation department continues to receive top rankings from the Chambers USA guide,
11 and the firm is consistently the recipient of numerous other awards as well.  Id.
12 Moreover, Lowenstein Sandler has previously served as lead counsel or co-lead counsel
13 in several large, complex securities class action lawsuits.  Id. at ¶¶ 5-8.  Because
14 Lowenstein Sandler is without a doubt qualified to serve as Lead Counsel, Special
15 Situations' choice is APPROVED.

## CONCLUSION

After review of the parties' Stipulated Motion to Consolidate Cases, the Court makes the following orders:

1. All Motions to Consolidate (ECF No. 15,[6] 20, and 24) are GRANTED;
2. Special Situations' Motion for Appointment as Lead Plaintiff and for Approval of Lead Counsel (ECF No. 15) in the above-captioned actions and all related actions consolidated under this Order is GRANTED, and the Global Investors and Marrone Investor Group motions (ECF Nos. 20, 24) are DENIED without prejudice;

///

---

[6] This Motion is also docketed as ECF No. 5 in Case No. 2:14-cv-2571-MCE-KJN and may be terminated there as well.

1   3.   Pursuant to Fed. R. Civ. P. 42, the actions denominated as <u>Martinelli v. Marrone Bio Innovations, Inc.</u>, No. 2:14-cv-02055-MCE-KJN, <u>Sausman v. Marrone Bio Innovations, Inc.</u>, No. 2:14-cv-02072-MCE-KJN, <u>Chen v. Marrone Bio Innovations, Inc.</u>, 2:14-cv-02105-MCE-KJN, <u>Oldham v. Marrone Bio Innovations, Inc.</u>, 2:14-cv-02130-MCE-KJN, and <u>Special Situations Fund III QP, L.P. v. Marrone Bio Innovations, Inc.</u>, No. 2:14-cv-02571-MCE-KJN are consolidated;

2.   Case No. 2:14-cv-02571-MCE-KJN is designated as the "master file";

3.   The Clerk of the Court is directed to add all complaints and answers filed in Case Nos. 2:14-cv-02055-MCE-KJN, 2:14-cv-02072-MCE-KJN, 2:14-cv-02105-MCE-KJN, and 2:14-cv-02130-MCE-KJN to the master case;

4.   The Clerk of the Court is directed to administratively close Case Nos. 2:14-cv-02055-MCE-KJN, 2:14-cv-02072-MCE-KJN, 2:14-cv-02105-MCE-KJN, and 2:14-cv-02130-MCE-KJN;

5.   The parties are directed to file a Joint Status Report, with all parties participating, pursuant to the Order Requiring Joint Status Report in the master case; and

6.   The parties are directed to file all future pleadings, motions and other filings ONLY in case No. 2:14-cv-02571-MCE-KJN.

IT IS SO ORDERED.

Dated:  February 12, 2015

_____
MORRISON C. ENGLAND, JR, CHIEF JUDGE
UNITED STATES DISTRICT COURT