**GLANCY BINKOW & GOLDBERG LLP**
Lionel Z. Glancy (#134180)
Michael Goldberg (#188669)
Robert V. Prongay (#270796)
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email:  info@glancylaw.com

*Attorneys for Plaintiff*
[Additional Counsel on Signature Page]

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOANN N. MARTINELLI, Individually and On Behalf of All Others Similarly Situated, | Case No.: 2:14-cv-2055-MCE-KJN |
| Plaintiff, | **CLASS ACTION** |
| v. | **COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| MARRONE BIO INNOVATIONS, INC., PAMELA G. MARRONE, DONALD J. GLIDEWELL, and JAMES B. BOYD, | **DEMAND FOR JURY TRIAL** |
| Defendants. | |

CLASS ACTION COMPLAINT

Plaintiff JoAnn N. Martinelli ("Plaintiff"), individually and on behalf of all other persons similarly situated, by her undersigned attorneys, for her complaint against defendants, alleges the following based upon personal knowledge as to herself and her own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through her attorneys, which included, among other things, a review of the defendants' public documents, conference calls and announcements made by defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Marrone Bio Innovations, Inc. ("Marrone" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a federal securities class action on behalf of a class consisting of all persons other than Defendants (defined below) who purchased or otherwise acquired Marrone securities between March 6, 2014 and September 2, 2014, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder against the Company and certain of its top officials.

2. Marrone makes bio-based pest management and plant health products. Bio-based products are comprised of naturally occurring microorganisms, such as bacteria and fungi, and plant extracts. The Company targets the major markets that use conventional chemical pesticides, including certain agricultural and water markets, where the bio-based products are used as substitutes for, or in connection with, conventional chemical pesticides. Marrone also targets new markets for which there are no available conventional chemical pesticides, the use of conventional chemical products may not

be desirable or permissible because of health and environmental concerns or the development of pest resistance has reduced the efficacy of conventional chemical pesticides.

3.     Throughout the Class Period, Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that:  (1) Marrone's financial statements contained errors related to the improper recognition of revenues; (2) the Company lacked adequate internal controls over financial reporting; and (3) as a result of the foregoing, the Company's financial statements were materially false and misleading at all relevant times.

4.     On September 3, 2014, the Company filed a Form 8-K with the SEC, announcing, among other things, that some of its previously issued financial statements should no longer be relied upon as being in compliance with generally accepted accounting principles.  In the Form 8-K, the Company stated, in part:

> On September 3, 2014, we issued a press release announcing that our board's Audit Committee has commenced an internal investigation after learning of documents calling into question the recognition of revenue in the fourth quarter of 2013 for an $870,000 transaction. On September 2, 2014 the Audit Committee concluded, after consultation with management, that our previously reported financial statements as of December 31, 2013 and for the fiscal year ended December 31, 2013 included in the Company's Annual Report on Form 10-K for the year ended December 31, 2013, the related report of the independent auditors on those 2013 financial statements dated March 25, 2014, and the unaudited interim financial statements included in the Company's Quarterly Reports on Forms 10-Q for the quarters ended March 31, 2014 and June 30, 2014, should no longer be relied upon.
>
> The Audit Committee of the Board of Directors of the Company and Company management have discussed the foregoing matters with the Company's independent registered public accounting firm, Ernst & Young LLP.

5.     On this news, the Company's shares fell $2.50, or over 44%, to close at $3.15 on September 3, 2014.

6.      As a result of De fendants' wrongful acts and  omissions, and the precipitous decline in the market value of the Com pany's securities, Plaintiff and other Class m embers have suffered significant losses and damages.

## JURISDICTION AND VENUE

7.      The claims asserted herein arise un der and pursuant to Sections 10 (b) and 20(a) of the Exchange Act (15 U.S.C. § 78j(b) and 78t(a)) and     Rule 10b-5 prom ulgated thereunder (17 C.F.R. § 240.10b-5).

8.      This Court has jurisdiction over the subject m atter of this action pursuant to § 27 of  the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331.

9.      Venue is proper in this Distri ct pursuant to §27 of the Exch ange Act, 15 U.S.C. §78aa and 28 U.S.C. §1391(b), as the Company maintains corporate offices in this District.

10.     In  connection with the acts, conduct and     other  wrongs alleged in this Com     plaint, Defendants, directly or  indirectly, used the m eans and instrum entalities of interstate commerce, including  but not lim ited to, the United States m  ail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

11.     Plaintiff, as set forth in the attached Ce        rtification, acquired Ma rrone securities at artificially inflated prices duri ng the Class Period and was dam aged upon the revelation of the alleged corrective disclosures.

12.     Defendant Marrone Bio Innovations, Inc. provides bio-based pest management and plant health products for the crop protection, water treatm ent, and other target m arkets in the United States and internationally. Marrone is headquartered in  Davis, California and trades on the Nasdaq Global Market ("NASDAQ") under the ticker symbol "MBII."

13.     Defendant Pamela G. Marrone ("P. Marrone") has served as the Company's Chief Executive Officer and President at all relevant times.

14.     Defendant Donald J. Glidewell ("Glidewell") served as the Company's Chief Financial Officer.  Pursuant to the terms of the transition agreement that the Company entered into with Glidewell on November 7, 2012, Glidewell resigned as the Company's Chief Financial Officer effective as of March 25, 2014.

15.     Defendant James B. Boyd ("Boyd") had been serving jointly with Glidewell as Chief Financial Officer during the transition period, and assumed sole responsibility for that role on March 25, 2014.

16.     The defendants referenced above in ¶¶ 13 – 15 are sometimes referred to herein as the "Individual Defendants."

17.     Defendant Marrone and the Individual Defendants are referred to herein, collectively, as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

18.     Marrone makes bio-based pest management and plant health products. The Company's headquarters are located in Davis, CA.

### Materially False And Misleading Statements Issued During the Class Period

19.     On March 6, 2014, the first day of the Class Period, the Company issued a press release announcing results for the fourth quarter and fiscal year ended December 31, 2013.  For the quarter, Marrone reported revenues of $6 million, representing growth of 106%.  Revenue for the full year 2013 totaled $14.5 million, representing growth of 104%.  The March 6, 2014 press release contained additional statements from defendants pertaining to the Company's fourth quarter and fiscal 2013 performance, including in relevant part:

1
2
3
4
5

"Our robust fourth quarter results capped a transformative year for Marrone Bio Innovations," said Pam Marrone, Chief Executive Officer of Marrone Bio Innovations. "I am extremely pleased with the progress we have achieved in 2013. We continued to broaden our sales into high value specialty crops, launched into row crops in North America and also extended our commercial reach across the globe. Our commercial success in the fourth quarter as well as our numerous scientific and operational milestones in 2013 underscore our confidence that we will continue to lead the shift to biologically-based alternatives for pest management and plant health."

6
7

20.     On March 25, 2014, the Company filed an annual report Form 10-K with the SEC which

8

was signed by defendants P. Marrone and Glidewell, and reiterated the Company's previously

9
10

announced quarterly and annual financial results and financial position. In addition, the Form 10-K

11

contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by defendants P.

12

Marrone and Glidewell, stating that the financial information contained in the Form 10-K was accurate

and disclosed any material changes to the Company's internal control over financial reporting.

13
14

21.     Moreover, the 2013 Form 10-K contained the following materially false and/or

misleading language pertaining to the Company's revenue recognition policies:

15
16

***Revenue Recognition***

17
18
19
20

The Company recognizes revenues when persuasive evidence of an arrangement exists, delivery and transfer of title has occurred or services have been rendered, the price is fixed or determinable, and collectability is reasonably assured, unless contractual obligations, acceptance provisions or other contingencies exist. If such obligations or provisions exist, revenue is recognized after such obligations or provisions are fulfilled or expire.

21
22

22.     On May 13, 2014, the Company issued a press release announcing results for the first

23

quarter ended March 31, 2013. Marrone reported revenues for the first quarter 2014 of $2.8 million,

compared to $2.7 million for the first quarter of 2013, in-line with the Company's expectations.

24
25

23.     On May 15, 2014, the Company filed a Form 10-Q with the SEC which was signed by

26

defendant Boyd, and reiterated the Company's previously announced quarterly financial results and

27

financial position. In addition, the Form 10-Q contained signed SOX certifications by defendants P.

28

1
2

Marrone and Boyd, stating that the financial information contained in the Form 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

3
4

24.     Moreover, the first quarter Form 10-Q contained the following materially false and/or misleading language pertaining to the Company's revenue recognition policies:

5
6

*Revenue Recognition*

7
8
9
10

The Company recognizes revenues when persuasive evidence of an arrangement exists, delivery and transfer of title has occurred or services have been rendered, the price is fixed or determinable, and collectability is reasonably assured, unless contractual obligations, acceptance provisions or other contingencies exist. If such obligations or provisions exist, revenue is recognized after such obligations or provisions are fulfilled or expire.

11
12
13

25.     On August 7, 2014, the Company issued a press release announcing results for the second quarter ended June 30, 2014.  Marrone reported revenues for the second quarter of $3.6 million, compared to $4.5 million in the second quarter of 2013.

14
15
16
17
18
19

26.     On August 13, 2014, the Company filed a Form 10-Q with the SEC which was signed by defendant Boyd, and reiterated the Company's previously announced quarterly financial results and financial position. In addition, the Form 10-Q contained signed SOX certifications by defendants P. Marrone and Boyd, stating that the financial information contained in the Form 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

20
21
22

27.     Moreover, the first quarter Form 10-Q contained the following materially false and/or misleading language pertaining to the Company's revenue recognition policies:

23
24

*Revenue Recognition*

25
26
27

The Company recognizes revenues when persuasive evidence of an arrangement exists, delivery and transfer of title has occurred or services have been rendered, the price is fixed or determinable, and collectability is reasonably assured, unless contractual obligations, acceptance provisions or other contingencies exist. If such obligations or provisions exist, revenue is recognized after such obligations or provisions are fulfilled or expire.

28

28.   The statements referenced in ¶¶ 19 – 27 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations, and prospects, which were known to Defendants or recklessly disregarded by them.   Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) Marrone's financial statements contained errors related to the improper recognition of revenues; (2) the Company lacked adequate internal controls over financial reporting; and (3) as a result of the foregoing, the Company's financial statements were materially false and misleading at all relevant times.

**The Truth Emerges**

29.   On September 3, 2014, the Company issued a press release and filed a Form 8-K with the SEC announcing that certain of its previously issued financial statements should no longer be relied upon as being in compliance with generally accepted accounting principles.   In the Form 8-K, the Company stated, in part:

**Item 4.02. Non-Reliance on Previously Issued Financial Statements or a Related Audit Report or Completed Interim Review**.

On September 3, 2014, we issued a press release announcing that our board's Audit Committee has commenced an internal investigation after learning of documents calling into question the recognition of revenue in the fourth quarter of 2013 for an $870,000 transaction. On September 2, 2014   the Audit Committee concluded, after consultation with management, that our previously reported financial statements as of December 31, 2013 and for the fiscal year ended December 31, 2013 included in the Company's Annual Report on Form 10-K for the year ended December 31, 2013, the related report of the independent auditors on those 2013 financial statements dated March 25, 2014, and the unaudited interim financial     statements included in the Company's Quarterly Reports on Forms 10-Q for the quarters ended March 31, 2014 and June 30, 2014, should no longer be relied upon.

The Audit Committee of the Board of Directors of the Company and Company management have discussed the foregoing     matters with the Company's independent registered public accounting firm, Ernst & Young LLP.

30.   On this news, the Company's shares fell $2.50, or over 44%, to close at $3.15 on September 3, 2014.

31.    As a result of De fendants' wrongful acts and  omissions, and the precipitous decline in the  market  value of th  e  Company's  securities,  Plaintiff  and other C  lass  members  have suffered significant losses and damages.

### PLAINTIFF'S CLASS ACTION ALLEGATIONS

32.    Plaintiff brings this action as a class action  pursuant to Federal Rule of Civil Procedure 23(a)  and (b)(3) on behalf of a Cl    ass,  consisting of all those who    purchased  or ot herwise  acquired Marrone securities during the Class Period (the "C lass"); and were da maged upon the revelation of the alleged  corrective  disclosures.  Ex  cluded  from  the  Class are Defendants herein, the officers and directors  of the Com pany, at all relevant tim es, members  of their imm ediate  families  and their legal representatives,  heirs, successo rs  or assign s  and  any en tity  in which Def  endants have o  r  had a controlling interest.

33.    The members of the Class are so num erous that joinder of all members is impracticable. Throughout  the Class Period, Marrone   securities  were actively trad ed on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate  discovery, Plai ntiff  believes that there are hundred    s  or thousands of m   embers  in the proposed  Class.  Record owners and other mem     bers  of the Class may be identified from        records maintained by Marrone or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

34.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the  Class are sim ilarly  affected  by Defendants' wrongful conduct in vi  olation  of federal law that is complained of herein.

35.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has  retained counsel competent and experienced in     class  and securities litigat ion.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

36.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Marrone;

- whether the Individual Defendants caused Marrone to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Marrone securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

37.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

38.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Marrone securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchase d, acquired and/or sold  Marrone securities between the time the Defendants failed to disclose or misrepresented material facts and the  time  the  true facts were disclosed,        without  knowledge of the om      itted  or misrepresented facts.

39.     Based  upon the foregoing, Plai  ntiff  and  the mem  bers  of th e  Class are entitled to a presumption of reliance upon the integrity of the market.

40.     Alternatively, Plaintiff and the m embers of the Class are entitled to the presum ption of reliance established by the Suprem e Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as  Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### Violations of Section 10(b) of The Exchange Act and Rule 10b-5
### Against All Defendants

41.     Plaintiff repeats and realleges each and every   allegation contained above as if fully set forth herein.

42.     This  Count is asserted against Defendant    s  and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

43.     During the Class Period, Defenda nts engaged in a plan, schem e, conspiracy and course of conduct, pursuant to which they knowingly or reck lessly engaged in acts, tr ansactions, practices and courses of business which operate d as a fraud and deceit upon Plain tiff and the other m embers of the Class; made various untrue sta tements of material facts and omitted to state material facts necessary in order to m ake the statem ents made, in light of  the circumstances under  which they were m ade, not misleading; and em ployed devices, schemes and artifices to defraud  in connection with th e purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did:  (i) deceive

1   the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially

2   inflate and maintain the market price of Marrone securities; and (iii) cause Plaintiff and other members

3   of the Class to purchase or otherwise acquire Marrone securities at artificially inflated prices. In

4   furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took

5   the actions set forth herein.

6

7           44.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the

8   Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and

9   annual reports, SEC filings, press releases and other statements and documents described above,

10  including statements made to securities analysts and the media that were designed to influence the

11  market for Marrone securities. Such reports, filings, releases and statements were materially false and

12  misleading in that they failed to disclose material adverse information and misrepresented the truth

13  about Marrone's finances and business prospects.

14

15          45.     By virtue of their positions at Marrone, Defendants had actual knowledge of the

16  materially false and misleading statements and material omissions alleged herein and intended thereby

17  to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with

18  reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as

19  would reveal the materially false and misleading nature of the statements made, although such facts

20  were readily available to Defendants. Said acts and omissions of Defendants were committed willfully

21  or with reckless disregard for the truth. In addition, each defendant knew or recklessly disregarded that

22  material facts were being misrepresented or omitted as described above.

23

24          46.     Defendants were personally motivated to make false statements and omit material

25  information necessary to make the statements not misleading in order to personally benefit from the

26  sale of Marrone securities from their personal portfolios.

27

28

CLASS ACTION COMPLAINT
11

47.     Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control. As the senior managers and/or directors of Marrone, the Individual Defendants had knowledge of the details of Marrone's internal affairs.

48.     The Individual Defendants are liable both      directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or      indirectly, control the content of the statements of Marrone. As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Marrone's businesses, operations, future financial condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Marrone securities was artificially inflated throughout the Class Period.      In ignorance of the adverse facts concerning Marrone's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Marrone securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

49.     During the Class Period, Marrone    securities were traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants    made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Marrone securities at prices artificially inflated by Defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Marrone securities was substantially lower than the prices paid by Plaintiff and the other members of the Class. The market

price of Marrone securities declined sharply upon public   disclosure of the facts a lleged herein to the injury of Plaintiff and Class members.

50.    By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

51.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered da mages in connection with their respective purchases, acquisitions and sales of the Com pany's securities during the Cla ss Period, upon the disclosure that the Com pany had been disseminating misrepresented financial statements to the investing public.

## COUNT II

### Violations of Section 20(a) of The Exchange Act
### Against The Individual Defendants

52.    Plaintiff repeats and   realleges each  and ev ery  allegation containe d  in the f oregoing paragraphs as if fully set forth herein.

53.    During  the Class Period, the Individual Defe   ndants  participated in the operation and management  of Marrone, and conducted and participat   ed,  directly and indirect ly,  in the conduct of Marrone's  business affairs.  Beca  use of their senior positions,    they  knew the adverse non-public information about Marrone's current financial position and future business prospects.

54.    As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to dissem inate  accurate and  truthful  information  with respec t to  Marrone's  business practices, and to correct promptly any public statements issued by Marrone which had become materially false or misleading.

55.    Because  of their positio ns of control and au  thority as sen ior  officers,  the Ind ividual Defendants were able to, and did, co ntrol the contents of the various  reports, press releases and public filings  which Marrone dissem  inated  in the m  arketplace  during the Class Pe   riod  concerning the Company's business, operational and accounting policies.  Throughout the Cla ss Period, the Individual

Defendants exercised their power  and authority to cause  Marrone to engage  in the wrongful acts complained of herein. T he Individual Defendants  therefore, were "con trolling  persons" of Marrone within the meaning of Section 20 (a) of the Ex change Act.  In this ca pacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Marrone securities.

56.     Each of the Individual Defendants, therefore,  acted as a controlling person of Marrone. By reason of their senior m   anagement  positions a nd/or  being directors of   Marrone, each of the Individual Defendants had the power to direct the actions of, and exer cised the same to cause, Marrone to engage in the unlawful acts  and conduct complained of  herein.  Each of the Individual Defendants exercised  control over the general operations of     Marrone and possessed the   power to c ontrol  the specific activities which comprise the primary violations about which Plaintiff and the other m embers of the Class complain.

57.     By reason of the above conduct, the Individua l Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Marrone.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demand judgment against Defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.     Requiring Defendants to pay dam ages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.     Awarding Plaintiff and the other m embers of the Class prejudgm ent and post-judgment interest, as well as her reasonable attorneys' fees, expert fees and other costs; and

D.     Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: September 5, 2014                    Respectfully submitted,


                                            **GLANCY BINKOW & GOLDBERG LLP**


                                            By: *s/ Lionel Z. Glancy*
                                            Lionel Z. Glancy
                                            Michael Goldberg
                                            Robert V. Prongay
                                            1925 Century Park East, Suite 2100
                                            Los Angeles, CA 90067
                                            Telephone: (310) 201-9150
                                            Facsimile: (310) 201-9160

                                            **POMERANTZ LLP**
                                            Jeremy A. Lieberman
                                            Francis P. McConville
600                                               Third Avenue, 20th Floor
New                                           York, New York 10016
Telephone:                                        (212) 661-1100
Facsim                                        ile:  (212) 661-8665

                                            **POMERANTZ LLP**
                                            Patrick V. Dahlstrom
                                            10 South La Salle Street, Suite 3505
                                            Chicago, Illinois 60603
                                            Telephone:  (312) 377-1181
                                            Facsimile:  (312) 377-1184

                                            **BRONSTEIN, GEWIRTZ &
                                            GROSSMAN, LLC**
                                            Edward N. Gewirtz
                                            60 East 42nd Street, Suite 4600
                                            New York, NY 10165
                                            Telephone (212) 697-6484
                                            Facsimile (212) 697-7296
                                            Email: chona@bgandg.com


                                            *Attorneys for Plaintiff*

## CERTIFICATION PURSUANT
## TO FEDERAL SECURITIES LAWS

1.   I, JoAnn Martinelli, make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2.   I have reviewed a Complaint against Marrone Bio Innovations, Inc. ("Marrone Bio" or the "Company"), and authorize the filing of a comparable complaint on my behalf.

3.   I did not purchase or acquire Marrone Bio securities at the direction of plaintiffs counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.

4.   I am willing to serve as a representative party on behalf of a Class of investors who purchased or acquired Marron Bio securities during the class period, including providing testimony at deposition and trial, if necessary. I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.   To the best of my current knowledge, the attached sheet lists all of my transactions in Marron Bio securities during the Class Period as specified in the Complaint.

6.   During the three-year period preceding the date on which this Certification is signed, I have not sought to serve as a representative party on behalf of a class under the federal securities laws.

7.   I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8.   I declare under penalty of perjury that the foregoing is true and correct.

Executed _September 4, 2014_
            (Date)

_JoAnn Nielsen Martinelli_
                (Signature)

_JoAnn Nielsen Martinelli,_
            (Type or Print Name)

**Marrone Bio Innovations, Inc. (MBII)**                    **Martinelli, Joann**

### LIST OF PURCHASES AND SALES

| DATE | PURCHASE OR SALE | NUMBER OF SHS/UTS | PRICE PER SH/UT |
|------|------------------|-------------------|------------------|
| 05/19/2014 | PUR | 400 | $8.4200 |

martinelli