ROBBINS GELLER RUDMAN
& DOWD LLP
WILLOW E. RADCLIFFE (200087)
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA 94104
Telephone: 415/288-4545
415/288-4534 (fax)
willowr@rgrdlaw.com
– and –
DARREN J. ROBBINS (168593)
DAVID C. WALTON (167268)
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
darrenr@rgrdlaw.com
davew@rgrdlaw.com
– and –
SAMUEL H. RUDMAN
MARY K. BLASY (211262)
58 South Service Road, Suite 200
Melville, NY 11747
Telephone: 631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
mblasy@rgrdlaw.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL SAUSMAN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>MARRONE BIO INNOVATIONS, INC., PAMELA G. MARRONE, DONALD J. GLIDEWELL and JAMES B. BOYD,<br><br>Defendants. | Case No. 2:14-cv-2072-MCE-KJN<br><br>CLASS ACTION<br><br>COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS<br><br>DEMAND FOR JURY TRIAL |

Plaintiff Paul Sausman, individually and on behalf of all others similarly situated, by plaintiff's undersigned attorneys, for plaintiff's complaint against defendants, alleges the following based upon personal knowledge as to plaintiff and plaintiff's own acts, and upon information and belief as to all other matters based on the investigation conducted by and through plaintiff's attorneys, which included, among other things, a review of Securities and Exchange Commission ("SEC") filings by Marrone Bio Innovations, Inc. ("Marrone" or the "Company"), as well as media and analyst reports about the Company and conference call transcripts. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

**JURISDICTION AND VENUE**

1. The claims asserted herein arise under §§10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§78j(b) and 78t(a), and Rule 10b-5, 17 C.F.R. §240.10b-5. Jurisdiction is conferred by §27 of the Exchange Act, 15 U.S.C. §78aa.

2. Venue is proper in this District pursuant to §27 of the Exchange Act. Acts and transactions giving rise to the violations of law complained of occurred in this District.

**NATURE OF THE ACTION**

3. This is a securities class action on behalf of all purchasers of the common stock of Marrone between March 7, 2014 and September 2, 2014, inclusive (the "Class Period"), seeking remedies pursuant to §§10(b) and 20(a) of the Exchange Act. Defendants include Marrone and certain of its current and former senior executives and/or directors.

**THE PARTIES**

4. Plaintiff Paul Sausman purchased Marrone common stock during the Class Period as described in the Certification attached hereto and incorporated herein by reference and suffered damages thereon.

5. Defendant Marrone makes bio-based pest management and plant health products. The Company completed its initial public stock offering ("IPO") in August 2013, and during the

Class Period, Marrone had more than 24 million shares of common stock outstanding, which shares traded in an efficient market on the NASDAQ under the ticker symbol "MBII." Marrone was followed by stock analysts and stock rating agencies and was constantly in communication with the markets and investors in quarterly conference calls and frequent presentations at investor and analyst conferences. Marrone also filed periodic public reports with the SEC and regularly issued press releases to the financial press.

6. Defendant Pamela G. Marrone ("Pamela Marrone") is, and was throughout the Class Period, Marrone's founder, President, Chief Executive Officer ("CEO") and member of its Board of Directors.

7. Defendant Donald J. Glidewell ("Glidewell") was, from April 6, 2011 until March 25, 2014, Marrone's Chief Financial Officer ("CFO") and Secretary.

8. Defendant James B. Boyd ("Boyd") is, and has been since February 26, 2014, Marrone's Vice President and CFO.

9. Defendants Pamela Marrone, Glidewell and Boyd are sometimes referred to herein as the "Individual Defendants." The Individual Defendants along with Marrone are collectively referred to herein as "Defendants."

10. During the Class Period, the Individual Defendants ran Marrone as "hands-on" managers, overseeing Marrone's operations and finances, and made the material false and misleading statements described herein. The Individual Defendants were intimately knowledgeable about all aspects of Marrone's financial and business operations, as they received daily reports and had access to computerized information regarding sales, costs and expenses, product demand and inventory management. They were also intimately involved in deciding which disclosures would be made by Marrone. The Individual Defendants made various public statements for Marrone during the Class Period and participated in Class Period investor conferences.

## BACKGROUND TO THE CLASS PERIOD

11. Defendant Marrone is a provider of bio-based pest management and plant health products for the agriculture, turf and ornamental and water treatment markets. The Company represents that its "effective and environmentally responsible solutions help customers operate more sustainably while controlling pests, improving plant health, and increasing crop yields," and that it has "a proprietary discovery process, a rapid development platform, and a robust pipeline of pest management and plant health product candidates."

12. The Company went public in the IPO selling 5.4625 million shares at $12 each, generating $65.5 million in gross proceeds to the Company before underwriting fees and offering expenses.

13. In November 2013, immediately following the IPO, Marrone announced that then-CFO Glidewell, who had only joined Marrone in 2011, was "retiring" as soon as his replacement could be located, but that in no event would he stay more than five months.

14. On February 25, 2014, the Company announced that the Marrone Board of Directors had appointed defendant Boyd as its Vice President and Co-CFO effective February 26, 2014. Defendant Boyd would serve in that role jointly with defendant Glidewell until he departed, which the Company stated would be no later than March 31, 2014.

## DEFENDANTS' MATERIALLY FALSE AND MISLEADING CLASS PERIOD STATEMENTS

15. On March 6, 2014, after the close of trading, Marrone issued a press release announcing its fourth quarter and fiscal 2013 financial results for the period ended December 31, 2013. In the release, the Company stated that "***[r]evenues for the fourth quarter 2013 totaled $6 million, representing growth of 106%***," and that "***[r]evenue for the full year 2013 totaled $14.5 million, representing growth of 104%***." The release further stated that Marrone had achieved a fourth quarter 2013 "[n]et loss of $10 million, compared to net loss of $17.1 million in the fourth

quarter of 2012," and a net loss of $28.489 million for fiscal 2013 compared with a net loss of $38.794 for fiscal 2012. The release also quoted defendant Pamela Marrone as stating in pertinent part that Marrone's "'commercial success in the fourth quarter as well as [its] numerous scientific and operational milestones in 2013 underscore[d] [Defendants'] confidence that [Marrone would] continue to lead the shift to biologically-based alternatives for pest management and plant health.'" As to Marrone's "Business Outlook," the release stated in pertinent part that "***[f]or the full year 2014 the Company expect[ed] net revenues to continue to at least double compared to the full year 2013.***"

16. Later that evening, the Company conducted a conference call with investors during which it reiterated the financial results announced that day and provided other positive commentary regarding the Company's business results and financial prospects. Defendants Pamela Marrone and Glidewell participated in the call.

17. On March 25, 2014, the Company filed with the SEC its annual financial report on Form 10-K for the fiscal year ended December 31, 2013, signed by defendants Pamela Marrone and Glidewell. The Form 10-K contained the same fourth quarter and fiscal 2013 financial results as described above in the ¶15, and also contained audited financial statements.

18. On March 28, 2014, the Company announced that defendant Glidewell had resigned effective March 25, 2014.

19. On May 13, 2014, Marrone issued a press release announcing its first quarter 2014 financial results for the period ended March 31, 2014. In the release, the Company stated that "[r]evenues for the first quarter 2014 totaled $2.8 million, compared to $2.7 million for the first quarter of 2013, in-line with the company's expectations against the headwinds of severe weather in all of [its] growing regions," and that the Company had achieved a "[n]et loss of $10.2 million, compared to net loss of $10.7 million in the first quarter of 2013." As to Marrone's "Business

Outlook," the release stated in pertinent part that "*[f]or the full year 2014 the Company continue[d] to expect net revenues to at least double compared to the full year 2013*."

20. Later that evening, the Company conducted a conference call with investors in which it reiterated the financial results announced that day and provided other positive commentary regarding the Company's business results and financial prospects. Defendants Pamela Marrone and Boyd participated in the call.

21. On May 15, 2014, the Company filed with the SEC its quarterly financial report on Form 10-Q for the period ended March 31, 2014, signed by defendant Boyd. The Form 10-Q contained the same fourth quarter and fiscal 2013 financial results as contained in the release detailed above in ¶15.

22. On May 16, 2014, the Company filed a Registration Statement on Form S-1 with the SEC, representing that the Company intended to undertake a follow-on stock offering. Following amendments made to the Registration Statement in response to comments received from the SEC, the Registration Statement was declared effective by the SEC on June 5, 2014. Thereafter, on June 6, 2014, the Company priced and sold 4.575 million shares of common stock and selling stockholder Syngenta Ventures Pte. LTD. sold another 600,000 shares at $9.50 per share, with Marrone receiving $43.463 million in gross proceeds. The Registration Statement contained the same fourth quarter and fiscal 2013 financial results as contained in the release detailed above in ¶15.

23. On June 13, 2014, Marrone and its wholly-owned operating subsidiary, Marrone Michigan Manufacturing, LLC ("MMM"), entered into a Business Loan Agreement as co-borrowers with Five Star Bank pursuant to which Five Star Bank agreed to lend to Marrone and MMM the principal amount of $10 million, secured by the assets of MMM and Marrone's deposit accounts with the bank.

24. On August 7, 2014, the Company issued a press release announcing its second quarter 2014 financial results for the period ended June 30, 2014. In the release, the Company stated that "[r]evenues for the second quarter totaled $3.6 million, compared to $4.5 million in the second quarter of 2013," that "[a]s in the first quarter of 2014, this comparison primarily reflects the ongoing impact of adverse weather across the Company's growing regions, partially offset by increased adoption rates for all of its products, including Venerate, which began shipments and sold out all available inventory in the second quarter," and that the "[n]et loss for the second quarter was $10.4 million compared to $10.2 million in first quarter 2014." The release also stated in pertinent part that, "[a]s a result of the impact of bad weather on the year ***and the late Tuesday resignation of its COO***, the Company [was] unable to give annual guidance at [that] time, but [might] be able to provide annual guidance at a later date." The release also quoted defendant Boyd as stating in pertinent part that Marrone "'enjoy[ed] a strong balance sheet, reinforced by approximately $40 million in proceeds from [its] recent secondary offering,'" and that "'go[ing] forward, [the Company would] deploy capital in a disciplined manner to accelerate growth'" and was "'***well positioned financially as well as strategically and with regard to [its] operating capabilities***.'"

25. Later that evening, the Company conducted a conference call with investors in which it reiterated the financial results announced that day and provided other positive commentary regarding the Company's business results and financial prospects. Defendants Pamela Marrone and Boyd participated in the call.

26. Also on August 7, 2014, the Company announced in a press release that Hector Absi ("Absi"), the Company's Chief Operating Officer, was resigning effective August 22, 2014.

27. On the news that, among other things, Absi was resigning, the price of Marrone stock plummeted on August 8, 2014, falling more than $4 per share to close at $5.51 per share on unusually high trading volume of more than 1.3 million shares traded, or 13 times the average daily

trading volume during the Class Period. However, based on Defendants' false and misleading statements about the Company's past, present and future financial results, the price of Marrone stock remained artificially inflated.

28. On August 13, 2014, the Company filed with the SEC its quarterly financial report on Form 10-Q for the period ended June 30, 2014, signed by defendant Boyd. The Form 10-Q contained the same fiscal and fourth quarter 2013 financial results as contained in the release detailed above in ¶15.

29. The statements referenced above in ¶¶15-17, 19-22, 24-25 and 28 were each materially false and misleading when made because they failed to disclose and misrepresented the following adverse facts known by Defendants, or recklessly disregarded by them, during the Class Period:

(a) Marrone had overstated its fourth quarter and fiscal 2013 revenues by $870,000 by improperly recognizing revenue in violation of Generally Accepted Accounting Principles ("GAAP"), which the financial reports and reports filed on Forms 10-K and 10-Q claimed to have been prepared in compliance with;

(b) As a result, the Company's fourth quarter and fiscal 2013 net loss was materially understated; and

(c) As a result, Marrone was not on track to achieve the financial results it claimed to be on track to achieve during the Class Period.

30. On September 3, 2014, the Company issued a press release "announc[ing] that, at the recommendation of management, the Audit Committee of its Board of Directors ha[d] commenced an internal investigation after management learned of documents calling into question the recognition of revenue in the fourth quarter of 2013 for an $870,000 transaction," and that the "Audit Committee ha[d] retained independent legal advisers to assist it in this investigation." The release

also disclosed that "the Audit Committee ha[d already] determined that the company's financial statements for the fiscal year ended December 31, 2013, the unaudited interim financial statements for the three month period ended March 31, 2014 and the three- and six- month periods ended June 30, 2014, should no longer be relied upon as being in compliance with generally accepted accounting principles."

31. On this news, the price of Marrone stock plummeted, falling $2.50 per share to close at $3.15 per share on unusually high trading volume of more than 2.5 million shares traded, or 25 times the average daily trading volume during the Class Period.

**NO SAFE HARBOR**

32. Marrone's "Safe Harbor" warnings accompanying its reportedly forward-looking statements ("FLS") issued during the Class Period were ineffective to shield those statements from liability. Because most of the false and misleading statements related to existing facts or conditions, the Safe Harbor has no applicability. To the extent that known trends should have been included in the Company's financial reports prepared in accordance with GAAP, they are excluded from the protection of the statutory Safe Harbor. 15 U.S.C. §78u-5(b)(2)(A).

33. The Defendants are also liable for any false or misleading FLS pleaded because, at the time each FLS was made, the speaker knew the FLS was false or misleading and the FLS was authorized and/or approved by an executive officer and/or director of Marrone who knew that the FLS was false. In addition, the FLS were contradicted by existing, undisclosed material facts that were required to be disclosed so that the FLS would not be misleading. Finally, most of the purported "Safe Harbor" warnings were themselves misleading because they warned of "risks" that had already materialized or failed to provide meaningful disclosures of the relevant risks.

## ADDITIONAL SCIENTER ALLEGATIONS

34. As alleged herein, Defendants acted with scienter in that Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, Defendants, by virtue of their receipt of information reflecting the true facts regarding Marrone, their control over, and/or receipt of or modification of Marrone's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Marrone, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE: FRAUD-ON-THE-MARKET DOCTRINE

35. At all relevant times, the market for Marrone common stock was an efficient market for the following reasons, among others:

(a) Marrone stock met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b) the Company had more than 24 million shares outstanding as of August 6, 2014, and during the Class Period, on average, more than 100,000 shares of Marrone stock were traded on a daily basis, demonstrating a very active and broad market for Marrone stock and permitting a very strong presumption of an efficient market;

(c) as a regulated issuer, Marrone filed periodic public reports with the SEC;

(d) Marrone regularly communicated with public investors via established market communication mechanisms, including regular dissemination of press releases on the national

circuits of major newswire services, the Internet and other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;

(e) Marrone was followed by many securities analysts who wrote reports that were distributed to the sales force and certain customers of their respective firms during the Class Period and each of these reports was publicly available and entered the public marketplace;

(f) numerous National Association of Securities Dealers member firms were active market-makers in Marrone stock at all times during the Class Period; and

(g) unexpected material news about Marrone was rapidly reflected in and incorporated into the Company's stock price during the Class Period.

36. As a result of the foregoing, the market for Marrone common stock promptly digested current information regarding the Company from publicly available sources and reflected such information in Marrone's stock price. Under these circumstances, all purchasers of Marrone common stock during the Class Period suffered similar injury through their purchase of Marrone common stock at artificially inflated prices, and a presumption of reliance applies.

## LOSS CAUSATION

37. During the Class Period, as detailed herein, Defendants made false and misleading statements and omitted material information concerning Marrone's business fundamentals and financial prospects and engaged in a scheme to deceive the market.

38. By artificially inflating and manipulating Marrone's stock price, Defendants deceived plaintiff and the Class and caused them losses when the truth was revealed. Defendants' prior misrepresentations and fraudulent conduct began to become apparent to the market on August 7, 2014, causing Marrone's stock price to fall precipitously as the prior artificial inflation came out of the stock price. As a result of their purchases of Marrone common stock during the Class Period,

plaintiff and other members of the Class suffered economic loss, *i.e.*, damages, under the federal securities laws.

## CLASS ACTION ALLEGATIONS

39. This is a class action on behalf of all purchasers of Marrone common stock between March 7, 2014 and September 2, 2014, inclusive, excluding Defendants (the "Class"). Excluded from the Class are officers and directors of the Company as well as their families and the families of the Defendants. Class members are so numerous that joinder of them is impracticable.

40. Common questions of law and fact predominate and include: (a) whether Defendants violated the Exchange Act; (b) whether Defendants omitted and/or misrepresented material facts; (c) whether Defendants knew or recklessly disregarded that their statements were false; (d) whether Defendants artificially inflated the price of Marrone common stock; and (e) the extent of and appropriate measure of damages.

41. Plaintiff's claims are typical of those of the Class. Prosecution of individual actions would create a risk of inconsistent adjudications. Plaintiff will adequately protect the interests of the Class. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## COUNT I

### For Violation of §10(b) of the Exchange Act and Rule 10b-5 Against All Defendants

42. Plaintiff repeats and realleges the above paragraphs as though fully set forth herein.

43. Throughout the Class Period, Defendants, in pursuit of their scheme and continuous course of conduct to inflate the market price of Marrone common stock, had the ultimate authority for making, and knowingly or recklessly made, materially false or misleading statements or failed to disclose material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading.

44. During the Class Period, Defendants carried out a plan, scheme, and course of conduct using the instrumentalities of interstate commerce and the mails, which was intended to and, throughout the Class Period, did: (a) artificially inflate and maintain the market price of Marrone common stock; (b) deceive the investing public, including plaintiff and other Class members, as alleged herein; (c) cause plaintiff and other members of the Class to purchase Marrone common stock at inflated prices; and (d) cause plaintiff and the other members of the Class losses when the truth was revealed. In furtherance of this unlawful scheme, plan and course of conduct, Defendants took the actions set forth herein, in violation of §10(b) of the Exchange Act and Rule 10b-5, 17 C.F.R. §240.10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

45. In addition to the duties of full disclosure imposed on Defendants as a result of their affirmative false and misleading statements to the investing public, Defendants had a duty to promptly disseminate truthful information with respect to Marrone's operations and performance that would be material to investors in compliance with the integrated disclosure provisions of the SEC, including with respect to the Company's revenue and earnings trends, so that the market price of the Company's stock would be based on truthful, complete and accurate information. SEC Regulations S-X (17 C.F.R. §210.01, *et seq.*) and S-K (17 C.F.R. §229.10, *et seq.*).

46. Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein or acted with reckless disregard for the truth in that they failed to ascertain and disclose such facts, even though such facts were either known or readily available to them.

47. As a result of the dissemination of the materially false and misleading information and failure to disclose material facts as set forth above, the market price of Marrone common stock was artificially inflated during the Class Period. In ignorance of the fact that the market price of Marrone common stock was artificially inflated, and relying directly or indirectly on the false and

misleading statements made knowingly or with deliberate recklessness by Defendants, or upon the integrity of the market in which the shares traded, plaintiff and other members of the Class purchased Marrone stock during the Class Period at artificially high prices and, when the truth was revealed, were damaged thereby.

48. Had plaintiff and the other members of the Class and the marketplace known of the true facts, which were knowingly or recklessly concealed by Defendants, plaintiff and the other members of the Class would not have purchased or otherwise acquired their Marrone shares during the Class Period, or if they had acquired such shares during the Class Period, they would not have done so at the artificially inflated prices which they paid.

49. By virtue of the foregoing, Defendants have violated §10(b) of the Exchange Act and Rule 10b-5, 17 C.F.R. §240.10-5, promulgated thereunder.

**COUNT II**

**For Violation of §20(a) of the Exchange Act**
**Against All Defendants**

50. Plaintiff repeats and realleges the above paragraphs as though fully set forth herein.

51. The Individual Defendants had control over Marrone within the meaning of §20(a) of the Exchange Act and made the materially false and misleading statements and omissions on behalf of Marrone as alleged herein. By virtue of their controlling shareholder status, executive positions, board membership, and stock ownership, and their culpable participation, as alleged above, the Individual Defendants had the power to influence and control and did, directly or indirectly, influence and control the decision making of the Company, including the content and dissemination of the various statements which plaintiff contends were false and misleading. The Company controlled the Individual Defendants and all of its employees.

52. The Individual Defendants were provided with or had unlimited access to the Company's internal reports, press releases, public filings, and other statements alleged by plaintiff to

be misleading prior to or shortly after these statements were issued, and had the ability to prevent the issuance of the statements or cause them to be corrected.

53. In particular, the Individual Defendants had direct involvement in and responsibility over the day-to-day operations of the Company and, therefore, are presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein.

54. By reason of such wrongful conduct, Defendants are liable pursuant to §20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, plaintiff and the other members of the Class suffered damages in connection with their purchases of the Company's common stock during the Class Period.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for judgment as follows:

A. Determining that this action is a proper class action, designating plaintiff as Lead Plaintiff and certifying plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and plaintiff's counsel as Lead Counsel;

B. Awarding compensatory damages in favor of plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C. Awarding plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D. Awarding such other and further relief as the Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury.

DATED: September 8, 2014

ROBBINS GELLER RUDMAN
& DOWD LLP
WILLOW E. RADCLIFFE

*s/ Willow E. Radcliffe*
WILLOW E. RADCLIFFE

Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA 94104
Telephone: 415/288-4545
415/288-4534 (fax)

ROBBINS GELLER RUDMAN
& DOWD LLP
DARREN J. ROBBINS
DAVID C. WALTON
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

ROBBINS GELLER RUDMAN
& DOWD LLP
SAMUEL H. RUDMAN
MARY K. BLASY
58 South Service Road, Suite 200
Melville, NY 11747
Telephone: 631/367-7100
631/367-1173 (fax)

Attorneys for Plaintiff

S:\CptDraft\Securities\Cpt Marrone Bio.docx