**LOWENSTEIN SANDLER LLP**
MICHAEL J. MCGAUGHEY (198617)
390 Lytton Avenue
Palo Alto, CA 94301
Telephone: 415-288-4545
Fax: 415-288-4534
mmcgaughey@lowenstein.com

*Counsel for Lead Plaintiffs Special Situations*
    *Fund III QP, L.P. and Special Situations*
    *Cayman Fund, L.P. and additional named*
    *Plaintiff David M. Fineman*

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SPECIAL SITUATIONS FUND III QP, L.P., SPECIAL SITUATIONS CAYMAN FUND, L.P, and DAVID M. FINEMAN, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br><br> vs. <br><br> MARRONE BIO INNOVATIONS, INC., PAMELA G. MARRONE, JAMES B. BOYD, DONALD J. GLIDEWELL, HECTOR ABSI, ELIN MILLER, RANJEET BHATIA, PAMELA CONTAG, TIM FOGARTY, LAWRENCE HOUGH, JOSEPH HUDSON, LES LYMAN, RICHARD ROMINGER, SHAUGN STANLEY, SEAN SCHICKEDANZ, and ERNST & YOUNG LLP, <br><br> Defendants. | Master File 2:14-cv-2571-MCE-KJN <br><br> Chief Judge Morrison C. England, Jr. <br><br> CONSOLIDATED CLASS ACTION <br><br> **CONSOLIDATED AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** <br><br> **JURY TRIAL DEMANDED** |

*(caption continued on the following page)*

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL
SECURITIES LAWS
MASTER FILE 2:14-CV-2571-MCE-KJN

33452986.1                                    -1-

JOANN N. MARTINELLI, Individually and
On Behalf of All Others Similarly Situated,

           Plaintiff,

vs.

MARRONE BIO INNOVATIONS, INC.,
PAMELA G. MARRONE, DONALD J.
GLIDEWELL, and JAMES B. BOYD,

           Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

---

PAUL SAUSMAN, Individually and On
Behalf of All Others Similarly Situated,

           Plaintiff,

vs.

MARRONE BIO INNOVATIONS, INC.,
PAMELA G. MARRONE, DONALD J.
GLIDEWELL, and JAMES B. BOYD,

           Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

---

SUSCHIA CHEN, Individually and On
Behalf of All Others Similarly Situated,

           Plaintiff,

vs.

MARRONE BIO INNOVATIONS, INC.,
PAMELA G. MARRONE, DONALD J.
GLIDEWELL, and JAMES B. BOYD,

           Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

*(caption continued on the following page)*

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL
SECURITIES LAWS
MASTER FILE 2:14-CV-2571-MCE-KJN

33452986.1                                   -2-

KENT OLDHAM, Individually and On
Behalf of All Others Similarly Situated,

                Plaintiff,

vs.

MARRONE BIO INNOVATIONS, INC.,
JAMES B. BOYD, DONALD J.
GLIDEWELL, PAMELA G. MARRONE,
RANJEET BHATIA, TIM FOGARTY,
LAWRENCE HOUGH, JOSEPH HUDSON,
RICHARD ROMINGER, SEAN
SCHICKEDANZ, SHAUGN STANLEY,
PIPER JAFFRAY & CO., STIFEL,
NICOLAUS & COMPANY,
INCORPORATED, ROTH CAPITAL
PARTNERS, LLC, and JEFFERIES LLC,

                Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL
SECURITIES LAWS
MASTER FILE 2:14-CV-2571-MCE-KJN

33452986.1                                              -3-

## I.     INTRODUCTION

1.     Lead Plaintiffs Special Situations Fund III QP, L.P. and Special Situations Cayman Fund, L.P., ("Lead Plaintiffs" or "The Funds"), and additional named Plaintiff David M. Fineman ("Fineman" and, together with Lead Plaintiffs, "Plaintiffs"), by their undersigned attorneys, allege as follows upon personal knowledge as to their own acts, and upon information and belief as to all other matters, based on the investigation conducted by and through Plaintiffs' counsel, which included, among other things, a review of Defendants' public documents, filings made with the United States Securities and Exchange Commission ("SEC"), conference calls and announcements issued by Marrone Bio Innovations, Inc. ("MBII" or the "Company"), wire and press releases published by and regarding the Company and other information readily obtainable in the public domain.

## II.     NATURE OF THE CLASS ACTION

2.     This is a federal securities class action brought on behalf of three classes:

(a) all persons who purchased or otherwise acquired MBII securities directly in or traceable to the Company's August 1, 2013 initial offering (the "Initial Public Offering") pursuant to MBII's Form S-1 Registration Statement, dated July 1, 2013 and its Prospectus dated August 1, 2013 (together, the "August 2013 Registration Statement").   This class asserts claims only for violations of Sections 11 and 15 of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. §§ 77k and 77o (the "IPO Section 11 Class");

(b) all persons who purchased or otherwise acquired MBII securities directly in the Company's secondary offering (the "Secondary Offering") pursuant to MBII's Form S-1 Registration Statement, dated May 16, 2014 and its Prospectus dated June 5, 2014 (together, the "June 2014 Registration Statement").   This

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS
MASTER FILE No. 2:14-CV-2571-MCE-KJN

class asserts claims only for violations of Sections 11 and 15 of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. §§ 77k and 77o (the "Secondary Section 11 Class" and, with the IPO Section 11 Class, the "Section 11 Classes"); and

(c) all persons who purchased or otherwise acquired MBII securities on the open market between March 7, 2014 and September 2, 2014, inclusive (the "Section 10(b) Class Period"). This class of investors asserts claims only for violations of Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j(b) and 78t(a), and Rule l0b-5 promulgated thereunder by the Securities and Exchange Commission ("SEC"), 17 C.F.R. § 240.10b-5, as well as Section 20(a) of the Exchange Act (the "Section 10(b) Class").

3.      The Section 11 Classes do not assert any claims sounding in fraud, whether under Section 10(b) of the Exchange Act or otherwise.  Any person who did not purchase MBII shares traceable to the Initial Offering or directly in Secondary Offering and pursuant to the August 2013 Registration Statement or June 2014 Registration Statement (collectively, the "Registration Statements"), is not included in the Section 11 Classes.  The Section 10(b) Class does not assert any claims under Sections 11 or 15 of the Securities Act.

4.      MBII purports to provide effective, sustainable pest management solutions that are safe for people and protective of the environment.  It claims to be a leading provider of bio-based pest management and plant health products for the agriculture, turf and ornamental and water treatment markets.  The Company is incorporated in the state of Delaware and maintains its principle executive offices in Davis, California.  MBII trades on the NASDAQ exchange under the ticker symbol "MBII."  The Company's securities began publicly trading on August 2, 2013, the day after the Initial Public Offering.

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS
MASTER FILE No. 2:14-CV-2571-MCE-KJN

-5-

5.     In its August 2013 Registration Statement, MBII represented that the Company's financial statements were reliable and not inaccurate or misleading.

6.     In its June 2014 Registration Statement, MBII represented that the Company's audited financial statements were reliable and in compliance with generally accepted accounting principles.

7.     On September 3, 2014, the Company announced that the audit committee of its board of directors had "commenced an internal investigation after management learned of documents calling into question the recognition of revenue" of an $870,000 transaction that had occurred in the fourth quarter of 2013.  MBII simultaneously announced that the Audit Committee concluded that the Company's previously reported financial statements for the fiscal year ended December 31, 2013, the unaudited interim financial statements for the quarter ended March 31, 2014 and the unaudited interim financial statements for the quarter ended June 30, 2014, should no longer be relied upon as being in compliance with generally accepted accounting principles.

8.     On the release of the news, the Company's share price fell $2.50 from a close of $5.65 on September 2, 2014, to close at $3.15 on September 3, 2014.

9.     The price continued to fall in the days following the announcement, reaching an intraday low of $2.80 on September 5, 2014, closing that day at just $2.87.  Thus, in less than three days, MBII's securities depreciated by approximately 50%.  Trading in the Company's securities reached the heaviest volume in MBII's history on September 3, 2014, with 2,549,800 shares reportedly traded.

10.     MBII's subsequent regulatory filings confirm that all of the Company's publicly reported financial statements contain material misstatements of fact.

### III.     JURISDICTION AND VENUE

11.     The claims asserted in the First, Second, Third and Fourth Causes of Action arise under Sections 11 and 15 of the Securities Act.

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS
MASTER FILE No. 2:14-CV-2571-MCE-KJN

-6-

12.     The claims asserted in the Fifth and Sixth Causes of Action arise under Sections 10(b) and 20(a) of the Exchange Act.

13.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1337 and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

14.     Venue is proper in this District pursuant to Section 27 of the Exchange Act and 28 U.S.C. § 1391(b), as many of the acts and practices complained of herein occurred in substantial part in this District and the Company is headquartered in this District.

15.     In connection with the acts alleged herein, Defendants directly or indirectly used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

### IV.     <u>PARTIES</u>

**<u>Lead Plaintiffs</u>**

16.     Lead Plaintiff Special Situations Fund III QP, L.P. ("Fund III QP"), as set forth in the certification attached hereto as Exhibit A, purchased MBII securities (i) in the Secondary Offering and (ii) during the Section 10(b) Class Period, and has been damaged thereby.  On February 13, 2015, this Court appointed Fund III QP to serve as co-Lead Plaintiff in this consolidated securities class action.

17.     Lead Plaintiff Special Situations Cayman Fund, L.P. ("Cayman Fund"), as set forth in the certification attached hereto as Exhibit A, purchased MBII securities (i) in the Secondary Offering and (ii) during the Section 10(b) Class Period, and has been damaged thereby.  On February 13, 2015, this Court appointed Cayman Fund to serve as co-Lead Plaintiff in this consolidated securities class action.

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS
MASTER FILE No. 2:14-CV-2571-MCE-KJN

-7-

**Additional Named Plaintiff**

18.     Plaintiff David M. Fineman, as set forth in the certification attached hereto as Exhibit B, purchased MBII securities directly in the Initial Public Offering and has been damaged thereby.

**Defendants**

19.     Defendant MBII is a Delaware corporation with its headquarters located at 1540 Drew Avenue, Davis, California 95618.

20.     Defendant Pamela G. Marrone ("Marrone") is the Company's Chief Executive Officer ("CEO"). Marrone signed the Registration Statements.   Marrone also signed Sarbanes-Oxley ("SOX") certifications attesting that MBII's financial statements were accurate and that its systems of internal controls were adequate.

21.     Defendant James B. Boyd ("Boyd") is the Company's CFO.  He has served as MBII's CFO since February 25, 2014.  Boyd signed the June 2014 Registration Statement. Boyd signed SOX certifications attesting that MBII's financial statements were accurate and that its systems of internal controls were adequate.

22.     Defendant Donald J. Glidewell ("Glidewell") served as the Company's CFO until his resignation in March 2014.  On November 7, 2013, the Company announced that Glidewell would resign pursuant to a transition agreement between Glidewell and Company. On March 28, 2014, the Company announced that Glidewell had resigned.  Glidewell signed the August 2013 Registration Statement.  Glidewell also signed SOX certifications attesting that MBII's financial statements were accurate and that its systems of internal controls were adequate.

23.     Defendant Hector Absi ("Absi") joined MBII as the Company's Senior Vice President of Commercial Operations in September 2012.  Absi served as MBII's Chief Operating Officer ("COO") from January 2014 to August 22, 2014.  Absi is identified in the June 2014 Registration Statement as one of MBII's executive officers and key employees.

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS
MASTER FILE NO. 2:14-CV-2571-MCE-KJN

-8-

24.     Defendants Marrone, Boyd, Glidewell and Absi are referred to collectively as the "Section 10(b) Individual Defendants."

25.     Defendant Elin Miller ("Miller") is chairperson of the Board and signed the Registration Statements.

26.     Defendant Tim Fogarty ("Fogarty") is a member of the Board and signed the Registration Statements.

27.     Defendant Richard Rominger ("Rominger") is a member of the Board and signed the Registration Statements.

28.     Defendant Shaugn Stanley ("Stanley") is a member of the Board and signed the Registration Statements.

29.     Defendant Ranjeet Bhatia ("Bhatia") was a member of the Board at the time of the Initial Public Offering and Secondary Offering and signed the Registration Statements.

30.     Defendant Lawrence Hough ("Hough") was a member of Board at the time of the Initial Public Offering and Secondary Offering signed the Registration Statements.

31.     Defendant Joseph Hudson ("Hudson") was a member of the Board at the time of the Initial Public Offering and Secondary Offering and signed the Registration Statements.

32.     Defendants Miller, Fogarty, Rominger, Stanley, Bhatia, Hough and Hudson are referred to as the "Offering Defendants" and are named as defendants solely by the Section 11 Classes and solely for violations of the Securities Act.   All of the Offering Defendants, along with Marrone, signed the Registration Statements issued in connection with the Initial Public Offering and the Secondary Offering.   Defendant Glidewell signed the August 2013 Registration Statement.   Defendant Boyd signed the June 2014 Registration Statement.

33.     Defendant Sean Schickedanz ("Schickedanz") was a member of the Board at the time of the Initial Public Offering and signed the August 2013 Registration Statement.

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS
MASTER FILE NO. 2:14-CV-2571-MCE-KJN

-9-

Schickedanz is named as a defendant solely by the IPO Section 11 Class and solely for violations of the Securities Act.

34.     Defendant Pamela Contag ("Contag") is a member of the Board and signed the June 2014 Registration Statement.   Contag is named as a defendant solely by the Secondary Section 11 Class and solely for violations of the Securities Act.

35.     Defendant Les Lyman ("Lyman") is a member of the Board and signed the June 2014 Registration Statement.  Lyman is named as a defendant solely by the Secondary Section 11 Class and solely for violations of the Securities Act.

36.     Defendant Ernst & Young LLP ("E&Y") is a limited liability partnership headquartered in New York and is one of the largest accounting firms in the United States. E&Y serves as MBII's independent registered public accounting firm.  E&Y audited MBII's financial statements and its system of internal controls over financial reporting for the years ended December 31, 2014, 2013, and 2012.   E&Y's audit opinion on the Company's financial statement for the year ended December 31, 2013 (the "2013 Financial Statement") was incorporated by reference into the June 2014 Registration Statement.  On June 2, 2014, MBII filed E&Y's consent to include in the June 2014 Registration Statement E&Y's March 24, 2014 audit report on the 2013 Financial Statement, among other statements, and MBII's reference to E&Y as an "Expert" in the June 2014 Registration Statement.

## FIRST CAUSE OF ACTION

### By The IPO Section 11 Class Against
### MBII, Marrone, Glidewell, Schickedanz and the Offering Defendants
### Violations of Section 11 of the Securities Act

37.     Defendants' liability under this cause of action is predicated solely on the participation of each Defendant in signing the August 2013 Registration Statement, which contained untrue statements and omitted material fact necessary to make it not misleading. Schickedanz and the Offering Defendants are additionally liable as directors of MBII.  This cause of action exclusively asserts strict-liability and negligence claims.  Any allegations of

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS
MASTER FILE No. 2:14-CV-2571-MCE-KJN

fraud or fraudulent conduct and/or motive are specifically excluded from this cause of action. For purposes of asserting this claim under the Securities Act, Plaintiffs do not allege that Defendants acted with *scienter* or fraudulent intent.

38.     This cause of action is asserted for violations of Section 11 of the Securities Act, 15 U.S.C. § 77k, on behalf of all members of the IPO Section 11 Class who purchased MBII stock directly from or traceable to the Initial Public Offering.

## A.     Class Allegations By The IPO Section 11 Class

39.     Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(3) on behalf of all persons who purchased MBII securities directly from or traceable to the Company's Initial Public Offering pursuant to the August 2013 Registration Statement.  This class asserts claims only for violations of Sections 11 and 15 of the Securities Act.  The Section 11 Class does not assert any claims sounding in fraud, whether under Section 10(b) of the Exchange Act or otherwise.  Any person who did not acquire MBII shares traceable to the Initial Public Offering and pursuant to the August 2013 Registration Statement is not included in the IPO Section 11 Class.

40.     Excluded from the IPO Section 11 Class are any persons who did not purchase MBII securities directly in or traceable to the Initial Public Offering.  Also excluded from the IPO Section 11 Class are Defendants, the officers and directors of the Company, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

41.     The members of the IPO Section 11 Class are so numerous that joinder of all members is impracticable.  While the exact number of IPO Section 11 Class members is unknown to Plaintiffs at this time and can only be ascertained through appropriate discovery, Plaintiffs believe that there are hundreds or thousands of members in the proposed IPO Section 11 Class.  Record owners and other members of the IPO Section 11 Class may be identified from records maintained by MBII or its transfer agent and may be notified of the

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS
MASTER FILE No. 2:14-CV-2571-MCE-KJN

-11-

pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

42.     Plaintiff Fineman's claims are typical of the claims of the members of the IPO Section 11 Class, as all members of the IPO Section 11 Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

43.     Plaintiffs will fairly and adequately protect the interests of the members of the Section 11 Class and have retained counsel competent and experienced in class and securities litigation.   Indeed, the Funds have been appointed co-Lead Plaintiffs in this consolidated securities class action, and undersigned counsel has been named Lead Counsel.

44.     Common questions of law and fact exist as to all members of the IPO Section 11 Class and predominate over any questions solely affecting individual members of the IPO Section 11 Class.   Among the questions of law and fact common to the IPO Section 11 Class are:

        (a)     whether the federal securities laws were violated by Defendants' acts as alleged herein; and

        (b)     whether statements made by Defendants to the investing public in the August 2013 Registration Statement misrepresented and/or omitted material facts about the business, operations and management of MBII, including its financial statements.

45.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual IPO Section 11 Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the IPO Section 11 Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS
MASTER FILE No. 2:14-CV-2571-MCE-KJN

### B.     Substantive Allegations Under the Securities Act

46.     MBII purports to provide effective, sustainable pest management solutions that are safe for people and protective of the environment.  It claims to be a leading provider of bio-based pest management and plant health products for the agriculture, turf and ornamental and water treatment markets.

47.     On July 1, 2013, MBII filed a Form S-1 Registration Statement with the SEC, representing that the Company intended to undertake an initial public offering of stock.  The Registration Statement was declared effective by the SEC on August 1, 2013.  Thereafter, pursuant to the Registration Statement and August 1, 2013 Prospectus, which forms part of the Registration Statement (collectively, the "August 2013 Registration Statement"), the Company offered and sold 5.462 million shares of common stock at an offering price of $12.00 per share.  Total proceeds generated from the offering were approximately $65 million.

48.     The August 2013 Registration Statement contained untrue statements of material fact and omitted to state material facts necessary to make the statements therein not misleading.

49.     Among other materially untrue statements, the August 2013 Registration Statement represented that MBII's financial information as of March 31, 2013 and for the three months ended March 31, 2013 was accurate and reliable.

50.     The August 2013 Registration Statement further stated that this financial information was prepared pursuant to the rules and regulations of the SEC, which rules and regulations require that interim financial information include disclosures sufficient so as to make that information not misleading.

51.     The August 2013 Registration Statement also represented that MBII properly recognized revenue and that the distributors to whom MBII sold its products did not have price protection or return rights.  According to the August 2013 Registration Statement, for

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS
MASTER FILE No. 2:14-CV-2571-MCE-KJN

-13-

the three months ended March 31, 2013, the Company derived $2.649 million in product revenue and earned a gross profit of $935,000.

52.   These statements were untrue, and/or omitted material fact necessary to make them not misleading, as detailed below.

**C.   Defendants Admit The Falsity of the August 2013 Registration Statement**

53.   On September 3, 2014, MBII announced that the Company's Audit Committee had begun an investigation into the accounting practices of the Company.  It stated, in an 8-K filed with the SEC, that:

> Item 4.02. Non-Reliance on Previously Issued Financial Statements or a Related Audit Report or Completed Interim Review.
>
> On September 3, 2014, we issued a press release announcing that our board's Audit Committee has commenced an internal investigation after learning of documents calling into question the recognition of revenue in the fourth quarter of 2013 for an $870,000 transaction.  On September 2, 2014 the Audit Committee concluded, after consultation with management, that our previously reported financial statements as of December 31, 2013 and for the fiscal year ended December 31, 2013 included in the Company's Annual Report on Form 10-K for the year ended December 31, 2013, the related report of the independent auditors on those 2013 financial statements dated March 25, 2014, and the unaudited interim financial statements included in the Company's Quarterly Reports on Forms 10-Q for the quarters ended March 31, 2014 and June 30, 2014, should no longer be relied upon.
>
> The Audit Committee of the Board of Directors of the Company and Company management have discussed the foregoing matters with the Company's independent registered public accounting firm, Ernst & Young LLP.

54.   The Company further stated, in a press release entitled "Marrone Bio Innovations Announces Audit Committee Investigation" and attached to the 8-K filed with the SEC on September 3, 2014, that:

> Marrone Bio Innovations, Inc. (MBI)[NASDAQ: MBII] today

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS
MASTER FILE NO. 2:14-CV-2571-MCE-KJN

-14-

announced that, at the recommendation of management, the Audit Committee of its Board of Directors has commenced an internal investigation after management learned of documents calling into question the recognition of revenue in the fourth quarter of 2013 for an $870,000 transaction.  The Audit Committee has retained independent legal advisers to assist it in this investigation.

In addition, the Audit Committee has determined that the company's financial statements for the fiscal year ended December 31, 2013, the unaudited interim financial statements for the three month period ended March 31, 2014 and the three- and six- month periods ended June 30, 2014, should no longer be relied upon as being in compliance with generally accepted accounting principles.

55.   In response to this information, the price of MBII's common stock dropped from $5.65 to $2.80, on record volume.

56.   On February 4, 2015, MBII announced that the investigation into the Company's historical accounting practices was substantially complete.  According to a press release later filed with the SEC on Form 8-K, the Company had improperly recognized revenue for certain of the MBII's historical sales transactions with its distributors.  The press release announced that

[t]he principal findings of the Committee were that (i) certain employees did not share with the Company's finance department or the external auditors certain important transactional terms, (ii) certain sales personnel executed inaccurate "sales representation" letters, which are intended to inform the Company's finance department and the external auditors of any commitments not included on a customer purchase order provided to the finance department, and (iii) certain employees mischaracterized expenses related to agreements to pay for the storage and freight fees associated with certain transactions.

57.   MBII also stated that

[i]n light of the [Audit] Committee's findings, management of the Company is evaluating the necessity, nature and scope of any restatements to any of its previously filed financial statements. Due to the ongoing nature of this evaluation, the Company cannot at this time provide an estimate of the timing, extent, or effect of any such restatement.

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS
MASTER FILE No. 2:14-CV-2571-MCE-KJN

-15-

58.     On April 17, 2015, the Company announced further results from the Audit Committee's investigation into MBII's historical accounting and revenue recognition practices.  The Company stated, in a report filed with the SEC on Form 8-K, that:

> [T]he Audit Committee concluded, after consultation with management, that in addition to the 2013 Fiscal Year and 2014 Quarterly Financial Statements, the Company's previously reported unaudited interim financial statements as of and for the three months, the three and six months and the three and nine months ended March 31, 2013, June 30, 2013 and September 30, 2013, respectively, should no longer be relied upon.  Although the Company expects to restate certain of its previously filed financial statements, the Company's evaluation process is ongoing; accordingly, the Company cannot at this time provide an estimate of the timing, extent, or effect of such restatement.

59.     On May 18, 2015, MBII announced that it would not be able to timely file with the SEC the Company's Quarterly Report for the three-month period ended March 31, 2015.  In its Form 12b-25 filed with the SEC on that date, MBII reiterated that

> the Company's previously reported financial statements as of December 31, 2013 and for the fiscal year ended December 31, 2013, the related report of the independent auditors on those 2013 financial statements dated March 25, 2014, and the unaudited interim financial statements as of and for the three months and the three and six months ended March 31, 2014 and June 30, 2014, respectively, should no longer be relied upon.

60.     MBII further stated that "the Company's previously reported unaudited interim financial statements as of and for the three months, the three and six months and the three and nine months ended March 31, 2013, June 30, 2013 and September 30, 2013, respectively, also should no longer be relied upon."  These financial statements, as well as the financial statements in Paragraph 59, are referred to collectively as the "Misstated Financial Statements."

61.     The Company announced that MBII's management

> has been evaluating all distributor sales transactions during the periods [covered by the Misstated Financial Statements] on a

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS
MASTER FILE No. 2:14-CV-2571-MCE-KJN

-16-

> customer-by-customer and transaction-by-transaction basis, including relevant documents and seeking any details of any other undocumented arrangements or commitments. With respect to each individual transaction, the Company's management is evaluating relevant facts and circumstances to apply its revenue recognition policy. With respect to many transactions, to permit the Company to determine both (i) the appropriate methodology for accounting for those transactions and (ii) the appropriate timing and quantification of any product revenues arising from those transactions, the Company has sought to obtain additional information from certain of its distributors – including information regarding the distributors' sales to end users of the products the Company shipped to the distributor.

> In light of the nature and complexity of this ongoing process, while the Company anticipates that it will restate the [Misstated Financial Statements], the Company has not yet made any definitive conclusions regarding the nature, scope and specific financial impacts of such restatements, and cannot at this time provide an estimate of extent or effect of such restatements.

62. On the release of this news, the price of MBII's common stock fell from $2.94 to $2.36, on unusually heavy volume. The price continued to decline in the days following the May 18, 2015 announcement, dropping to $1.94 on May 22, 2015.

63. Thereafter, on July 9, 2015, MBII announced that the Misstated Financial Statements had improperly recognized revenue on a "sell-in" rather than a "sell-through" basis.

64. Specifically, in a report filed with the SEC on Form 8-K, MBII explained that the Misstated Financial Statements, as well as certain financial statements that the Company has yet to report, are

> expected to be presented using a "sell-through" method as to some or all distributors rather than the "sell-in" method previously used by the Company. In general, under the "sell-through" method sales by the Company to distributors would not be recognized as product revenues until the distributors sell the product through to end-users, rather than at the time of the initial sale to the distributors under the "sell-in" method. The Company is evaluating the appropriate application of the sell-through method,

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS
MASTER FILE No. 2:14-CV-2571-MCE-KJN

including the particular distributors and applicable periods as to which the Company would apply the sell-through method.  The principal impact of switching from a "sell-in" to a "sell-through" method is that product revenues with respect to the applicable distributors are expected to be deferred to later periods.

65.    The Company further stated that

[i]n addition to the expected change in methodology from "sell-in" to "sell-through" for sales to distributors, and the resulting deferral in revenue recognition to later periods, the Company also expects to recognize, in the aggregate, approximately $1.7-2.0 million less in product revenues than previously reported for 2013 and the first six months of 2014 because certain distributors have returned (or are in the process of returning) product to the Company pursuant to "inventory protection" rights.

66.    In light of the foregoing, the statements referenced above in ¶¶ 49-51 were each false and/or misleading statements of material fact when made because the Misstated Financial Statements, including those in the August 2013 Registration Statement which MBII has advised should no longer be relied upon, materially misstated product revenues by improperly or prematurely recognizing them.  The statements referenced above in ¶¶ 49-51 were inaccurate statements of material fact when made for the additional reason that MBII's distributors did in fact have protection rights that would allow them to return MBII's products to the Company, thereby precluding immediate revenue recognition.

67.    As of September 1, 2015, MBII has not yet restated the Misstated Financial Statements.

D.    **Cause of Action**

68.    The August 2013 Registration Statement contained untrue statements of material fact and omitted other facts necessary to make the statements not untrue, and failed to disclose material facts as described above.  MBII was the Registrant, while Marrone, Glidewell, Schickedanz and the Offering Defendants were responsible for the contents and dissemination of the August 2013 Registration Statement, and each of them signed the Registration Statement.   As such, these Defendants issued, caused to be issued, and

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS
MASTER FILE No. 2:14-CV-2571-MCE-KJN

-18-

participated in the issuance of the Registration Statement and are subject to liability for violations of Section 11 of the Securities Act.

69.    MBII is strictly liable to members of the IPO Section 11 Class, who purchased shares directly in or traceable to the August 2013 Registration Statement, which contained misstatements and omissions of material fact.  Marrone, Glidewell, Schickedanz and the Offering Defendants are also liable to members of the IPO Section 11 Class.

70.    By reason of the conduct alleged herein, MBII, Marrone, Glidewell, Schickedanz and the Offering Defendants each violated Section 11 of the Securities Act.

71.    Plaintiff Fineman and other members of the IPO Section 11 Class have sustained damages under 15 U.S.C. § 77k(e).  The value of the stock purchased by Plaintiff Fineman and other members of the IPO Section 11 Class has declined since the time of the Initial Public Offering.

72.    Plaintiffs have brought the present action promptly after the untrue statements contained in the August 2013 Registration Statement were discovered or reasonably could have been discovered and within one year from the time that Plaintiffs discovered or reasonably could have discovered the facts upon which this complaint is based to the time that Plaintiffs filed this complaint.  Likewise, less than three years have elapsed from the time that the securities upon which this cause of action is brought were offered to the public.

## SECOND CAUSE OF ACTION

**By the IPO Section 11 Class Against Marrone,
Glidewell, Schickedanz and the Offering Defendants
<u>Violations of Section 15 of the Securities Act</u>**

73.    This cause of action is asserted against Marrone, Glidewell, Schickedanz and the Offering Defendants for violations of Section 15 of the Securities Act, 15 U.S.C. § 77o, on behalf of Plaintiff Fineman and the other members of the IPO Section 11 Class.

74.    By reason of the wrongful conduct described herein, MBII committed a primary violation of Section 11 of the Securities Act.

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS
MASTER FILE No. 2:14-CV-2571-MCE-KJN

-19-

75.    At all relevant times, Marrone, Glidewell, Schickedanz and the Offering Defendants were controlling persons of the Company within the meaning of Section 15 of the Securities Act.    Each of Marrone, Glidewell, Schickedanz and the Offering Defendants served as an executive officer and/or director of MBII prior to and at the time of the Initial Public Offering.  Marrone, Glidewell, Schickedanz and the Offering Defendants each signed the August 2013 Registration Statement.  At all relevant times, each of Marrone, Glidewell, Schickedanz and the Offering Defendants participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the conduct of MBII's business affairs.  As officers and/or directors of a publicly owned company, Marrone, Glidewell, Schickedanz and the Offering Defendants had a duty to disseminate accurate and truthful information about MBII's securities and with respect to the Company's internal controls.  By reason of the aforementioned conduct, Marrone, Glidewell, Schickedanz and the Offering Defendants are liable under Section 15 of the Securities Act, jointly and severally with, and to the same extent as, the Company to Plaintiff Fineman and the other members of the IPO Section 11 Class.

## THIRD CAUSE OF ACTION

### By the Secondary Section 11 Class Against MBII, Marrone, Boyd, Absi, Contag, Lyman, the Offering Defendants and E&Y
### <u>Violations of Section 11 of the Securities Act</u>

76.    Defendants' liability under this cause of action is predicated solely on the participation of each Defendant in signing, or as to E&Y, serving as an accounting expert in connection with, the June 2014 Registration Statement, which contained untrue statements and omissions of material fact.  Contag, Lyman and the Offering Defendants are additionally liable as directors of MBII.  This cause of action does not sound in fraud.  Any allegations of fraud or fraudulent conduct and/or motive are specifically excluded from this cause of action. For purposes of asserting this claim under the Securities Act, Plaintiffs do not allege that Defendants acted with *scienter* or fraudulent intent.

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS
MASTER FILE No. 2:14-CV-2571-MCE-KJN

77.   This cause of action is asserted for violations of Section 11 of the Securities Act, 15 U.S.C. § 77k, on behalf of all members of the Secondary Section 11 Class who purchased MBII securities directly from the Secondary Offering.

**A.**   **Class Allegations By The Secondary Section 11 Class**

78.   Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(3) on behalf of all persons who purchased MBII securities directly in the Company's Secondary Offering pursuant to the June 2014 Registration Statement. This class asserts claims only for violations of Sections 11 and 15 of the Securities Act.  The Secondary Section 11 Class does not assert any claims sounding in fraud, whether under Section 10(b) of the Exchange Act or otherwise.  Any person who did not acquire MBII shares directly from the Secondary Offering and pursuant to the June 2014 Registration Statement is not included in the Secondary Section 11 Class.

79.   Excluded from the Secondary Section 11 Class are any persons who did not purchase MBII securities directly from the Secondary Offering.  Also excluded from the Secondary Section 11 Class are Defendants, the officers and directors of the Company, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

80.   The members of the Secondary Section 11 Class are so numerous that joinder of all members is impracticable.  While the exact number of Secondary Section 11 Class members is unknown to Plaintiffs at this time and can only be ascertained through appropriate discovery, Plaintiffs believe that there are hundreds or thousands of members in the proposed Secondary Section 11 Class.  Record owners and other members of the Secondary Section 11 Class may be identified from records maintained by MBII or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS
MASTER FILE No. 2:14-CV-2571-MCE-KJN

-21-

81.     Lead Plaintiffs' claims are typical of the claims of the members of the Secondary Section 11 Class, as all members of the Secondary Section 11 Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

82.     Plaintiffs will fairly and adequately protect the interests of the members of the Secondary Section 11 Class and have retained counsel competent and experienced in class and securities litigation.  Indeed, the Funds have been appointed co-Lead Counsel in this consolidated securities class action, and undersigned counsel has been named Lead Counsel.

83.     Common questions of law and fact exist as to all members of the Secondary Section 11 Class and predominate over any questions solely affecting individual members of the Secondary Section 11 Class.  Among the questions of law and fact common to the Section 11 Class are:

> (a)     whether the federal securities laws were violated by Defendants' acts as alleged herein; and
>
> (b)     whether statements made by Defendants to the investing public in the June 2014 Registration Statement misrepresented and/or omitted material facts about the business, operations and management of MBII, including its financial statements.

84.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Secondary Section 11 Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Secondary Section 11 Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS
MASTER FILE No. 2:14-CV-2571-MCE-KJN

B.     **Substantive Allegations Under the Securities Act**

85.     On May 16, 2014, MBII filed the June 2014 Registration Statement with the SEC, representing that the Company intended to undertake a follow-on stock offering. Following amendments made to the June 2014 Registration Statement in response to comments received from the SEC, the June 2014 Registration Statement was declared effective by the SEC on June 5, 2014.  Thereafter, on June 6, 2014, the Company offered and sold 4.575 million shares of common stock at an offering price of $9.50 per share.  Total proceeds generated from the offering were approximately $43.5 million.

86.     The June 2014 Registration Statement incorporated by reference MBII's Form 10-K for the year ended December 31, 2013 (the "2013 Form 10-K"), which was filed with the SEC on March 25, 2014.   The 2013 Form 10-K included MBII's 2013 Financial Statement, which was audited by E&Y.

87.     The 2013 Form 10-K represented that for the year ended December 31, 2013, MBII derived $12.657 million in product revenues and earned gross profit of $3.807 million. The 2013 Financial Statement further represented that distributors to whom the Company sold its product did not have price protection or return rights.

88.     The 2013 Form 10-K represented that the 2013 Financial Statement and MBII's other financial statements were reliable and presented in accordance with Generally Accepted Accounting Principles.   GAAP are those principles recognized by accounting professional as the conventions, rules and procedures necessary to define accepted accounting practices at a given time.  Regulation S-X [17 C.F.R. § 210.4-01(a)(1)] provides that financial statements filed with the SEC that are not prepared in conformity with GAAP are presumed to be misleading and inaccurate.

89.     The 2013 Form 10-K also included information required by Item 307 Regulation S-K [17 C.F.R. § 229.307] about MBII's disclosure controls and procedures and its internal control over financial reporting.   The 2013 Form 10-K represented, under the heading "Evaluation of Disclosure Controls and Procedures," that

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS
MASTER FILE No. 2:14-CV-2571-MCE-KJN

-23-

> Our management, with the participation of our chief executive officer (CEO) and chief financial officer, Mr. Glidewell (CFO), has evaluated the effectiveness of our disclosure controls and procedures . . .  as of the end of the period covered by this Annual Report on Form 10-K.  Based on such evaluation, our CEO and CFO have concluded that as of December 31, 2013, our disclosure controls and procedures are designed at a reasonable assurance level and are effective to provide reasonable assurance that information we are required to disclose in reports that we file or submit under the Exchange Act is recorded, processed, summarized, and reported within the time periods specified in the rules and forms of the [SEC], and that such information is accumulated and communicated to our management, including our CEO and CFO, as appropriate, to allow timely decisions regarding required disclosure.

90.     The 2013 Form 10-K was accompanied by SOX certifications signed by Marrone and Glidewell that, among other things, certified that the information contained in the 2013 Form 10-K "fairly presents in all material respects the financial condition and results of operations of [MBII]."

91.     The June 2014 Registration Statement and the 2013 Form 10-K referenced therein contained materially untrue statements when made.  Among other materially untrue statements, the June 2014 Registration Statement represented that MBII's financial statements were reliable and in compliance with GAAP.  These statements were untrue, as the Company itself later admitted when it informed the public on September 3, 2014 that the 2013 Financial Statement and other MBII financial statements could no longer be relied upon and would be restated, as further detailed below.

**C.     Audit Opinions**

92.     E&Y's audit opinion on the 2013 Financial Statement was included in the June 2014 Registration Statement.

93.     E&Y is a firm of certified public accountants that has provided independent auditing and accounting services to MBII for a number of years.  E&Y's website describes its "Assurance" Services, which include Financial Statement Audit and Accounting Compliance

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS
MASTER FILE No. 2:14-CV-2571-MCE-KJN

and Reporting, as a "timely and constructive challenge to management, a robust and clear perspective to audit committees, and transparent information for . . . stakeholders and investors."

94.    E&Y's audit opinion on the 2013 Financial Statement represented as follows:

**Report of Independent Registered Public Accounting Firm**

The Board of Directors and Shareholders of
Marrone Bio Innovations, Inc.

We have audited the accompanying consolidated balance sheets of Marrone Bio Innovations, Inc. ("the Company") as of December 31, 2013 and 2012, and the related consolidated statements of operations, comprehensive loss, convertible preferred stock and stockholders' equity (deficit), and cash flows for each of the three years in the period ended December 31, 2013. These financial statements are the responsibility of the Company's management. Our responsibility is to express an opinion on these financial statements based on our audits.

We conducted our audits in accordance with the standards of the Public Company Accounting Oversight Board (United States). Those standards require that we plan and perform the audit to obtain reasonable assurance about whether the financial statements are free of material misstatement. We were not engaged to perform an audit of the Company's internal control over financial reporting. Our audits included consideration of internal control over financial reporting as a basis for designing audit procedures that are appropriate in the circumstances, but not for the purpose of expressing an opinion on the effectiveness of the Company's internal control over financial reporting. Accordingly, we express no such opinion. An audit also includes examining, on a test basis, evidence supporting the amounts and disclosures in the financial statements, assessing the accounting principles used and significant estimates made by management, and evaluating the overall financial statement presentation. We believe that our audits provide a reasonable basis for our opinion.

In our opinion, the financial statements referred to above present fairly, in all material respects, the consolidated financial position of Marrone Bio Innovations, Inc. at December 31, 2013 and 2012, and the consolidated results of its operations and its cash flows for

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS
MASTER FILE NO. 2:14-CV-2571-MCE-KJN

-25-

1     each of the three years in the period ended December 31, 2013, in conformity with U.S. generally accepted accounting principles.

2     95.     As detailed below, E&Y's report in ¶ 94 contained inaccurate statements of embedded facts because MBII's 2013 Financial Statement was not prepared in conformity with GAAP and did not fairly represent the results of MBII's operations and its cash flows. E&Y's report was also materially misleading because it omitted the fact, not disclosed by E&Y, that MBII was prematurely and improperly recognizing as revenue sales to certain of MBII's distributors that had the right to return product to the Company.

**D.     MBII Admits The Falsity of the June 2014 Registration Statement**

96.     On September 3, 2014, MBII announced that the Audit Committee had begun an investigation into the accounting practices of the Company. It stated, in an 8-K filed with the SEC, that:

> Item 4.02. Non-Reliance on Previously Issued Financial Statements or a Related Audit Report or Completed Interim Review.
>
> On September 3, 2014, we issued a press release announcing that our board's Audit Committee has commenced an internal investigation after learning of documents calling into question the recognition of revenue in the fourth quarter of 2013 for an $870,000 transaction. On September 2, 2014 the Audit Committee concluded, after consultation with management, that our previously reported financial statements as of December 31, 2013 and for the fiscal year ended December 31, 2013 included in the Company's Annual Report on Form 10-K for the year ended December 31, 2013, the related report of the independent auditors on those 2013 financial statements dated March *25,* 2014, and the unaudited interim financial statements included in the Company's Quarterly Reports on Forms 10-Q for the quarters ended March 31, 2014 and June 30, 2014, should no longer be relied upon.
>
> The Audit Committee of the Board of Directors of the Company and Company management have discussed the foregoing matters with the Company's independent registered public accounting firm, Ernst & Young LLP.

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS
MASTER FILE No. 2:14-CV-2571-MCE-KJN

-26-

97.     The Company further stated, in a press release entitled "Marrone Bio Innovations Announces Audit Committee Investigation" and attached to the 8-K filed with the SEC on September 3, 2014, that:

> Marrone Bio Innovations, Inc. (MBI)[NASDAQ: MBII] today announced that, at the recommendation of management, the Audit Committee of its Board of Directors has commenced an internal investigation after management learned of documents calling into question the recognition of revenue in the fourth quarter of 2013 for an $870,000 transaction. The Audit Committee has retained independent legal advisers to assist it in this investigation.
>
> In addition, the Audit Committee has determined that the company's financial statements for the fiscal year ended December 31, 2013, the unaudited interim financial statements for the three month period ended March 31, 2014 and the three- and six- month periods ended June 30, 2014, should no longer be relied upon as being in compliance with generally accepted accounting principles.

98.     In response to this information, the price of MBII's common stock dropped from $5.65 to $2.80, on record volume.

99.     On February 4, 2015, MBII announced that the investigation into the Company's historical accounting practices was substantially complete.  According to a press release later filed with the SEC on Form 8-K, the Company had improperly recognized revenue for certain of the MBII's historical sales transactions with its distributors.  The press release announced that

> [t]he principal findings of the Committee were that (i) certain employees did not share with the Company's finance department or the external auditors certain important transactional terms, (ii) certain sales personnel executed inaccurate "sales representation" letters, which are intended to inform the Company's finance department and the external auditors of any commitments not included on a customer purchase order provided to the finance department, and (iii) certain employees mischaracterized expenses related to agreements to pay for the storage and freight fees associated with certain transactions.

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS
MASTER FILE No. 2:14-CV-2571-MCE-KJN

-27-

100.    MBII also stated that

> [i]n light of the [Audit] Committee's findings, management of the Company is evaluating the necessity, nature and scope of any restatements to any of its previously filed financial statements. Due to the ongoing nature of this evaluation, the Company cannot at this time provide an estimate of the timing, extent, or effect of any such restatement.

101.    On April 17, 2015, the Company announced further results from the Audit Committee's investigation into MBII's historical accounting and revenue recognition practices. The Company stated, in a report filed with the SEC on Form 8-K, that:

> [T]he Audit Committee concluded, after consultation with management, that in addition to the 2013 Fiscal Year and 2014 Quarterly Financial Statements, the Company's previously reported unaudited interim financial statements as of and for the three months, the three and six months and the three and nine months ended March 31, 2013, June 30, 2013 and September 30, 2013, respectively, should no longer be relied upon. Although the Company expects to restate certain of its previously filed financial statements, the Company's evaluation process is ongoing; accordingly, the Company cannot at this time provide an estimate of the timing, extent, or effect of such restatement.

102.    On May 18, 2015, MBII announced that it would not be able to timely file with the SEC the Company's Quarterly Report for the three-month period ended March 31, 2015. In its Form 12b-25 filed with the SEC on that date, MBII reiterated that

> the Company's previously reported financial statements as of December 31, 2013 and for the fiscal year ended December 31, 2013, the related report of the independent auditors on those 2013 financial statements dated March 25, 2014, and the unaudited interim financial statements as of and for the three months and the three and six months ended March 31, 2014 and June 30, 2014, respectively, should no longer be relied upon.

103.    MBII further stated that "the Company's previously reported unaudited interim financial statements as of and for the three months, the three and six months and the three and nine months ended March 31, 2013, June 30, 2013 and September 30, 2013,

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS
MASTER FILE No. 2:14-CV-2571-MCE-KJN

-28-

respectively, also should no longer be relied upon."  These financial statements, as well as the financial statements in Paragraph 91, are referred to collectively as the "Misstated Financial Statements."

104.    The Company announced that MBII's management

> has been evaluating all distributor sales transactions during the periods [covered by the Misstated Financial Statements] on a customer-by-customer and transaction-by-transaction basis, including relevant documents and seeking any details of any other undocumented arrangements or commitments.  With respect to each individual transaction, the Company's management is evaluating relevant facts and circumstances to apply its revenue recognition policy.  With respect to many transactions, to permit the Company to determine both (i) the appropriate methodology for accounting for those transactions and (ii) the appropriate timing and quantification of any product revenues arising from those transactions, the Company has sought to obtain additional information from certain of its distributors – including information regarding the distributors' sales to end users of the products the Company shipped to the distributor.

> In light of the nature and complexity of this ongoing process, while the Company anticipates that it will restate the [Misstated Financial Statements], the Company has not yet made any definitive conclusions regarding the nature, scope and specific financial impacts of such restatements, and cannot at this time provide an estimate of extent or effect of such restatements.

105.    On the release of this news, the price of MBII's common stock fell from $2.94 to $2.36, on unusually heavy volume.  The price continued to decline in the days following the May 18, 2015 announcement, dropping to $1.94 on May 22, 2015.

106.    Thereafter, on July 9, 2015, MBII announced that the Misstated Financial Statements had improperly recognized revenue on a "sell-in" rather than a "sell-through" basis.

107.    Specifically, in a report filed with the SEC on Form 8-K, MBII explained that the Misstated Financial Statements, as well as certain financial statements that the Company has yet to report, are

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS
MASTER FILE No. 2:14-CV-2571-MCE-KJN

-29-

expected to be presented using a sell-through" method as to some or all distributors rather than the "sell-in" method previously used by the Company.  In general, under the "sell-through" method sales by the Company to distributors would not be recognized as product revenues until the distributors sell the product through to end-users, rather than at the time of the initial sale to the distributors under the "sell-in" method.   The Company is evaluating the appropriate application of the sell-through method, including the particular distributors and applicable periods as to which the Company would apply the sell-through method.  The principal impact of switching from a "sell-in" to a "sell-through" method is that product revenues with respect to the applicable distributors are expected to be deferred to later periods.

108.    The Company further stated that

[i]n addition to the expected change in methodology from "sell-in" to "sell-through" for sales to distributors, and the resulting deferral in revenue recognition to later periods, the Company also expects to recognize, in the aggregate, approximately $1.7-2.0 million less in product revenues than previously reported for 2013 and the first six months of 2014 because certain distributors have returned (or are in the process of returning) product to the Company pursuant to "inventory protection" rights.

109.    In light of the foregoing, the statements referenced above in ¶¶ 86-90 were each inaccurate statements of material fact when made because the Misstated Financial Statements, including those in the June 2014 Registration Statement (which MBII has advised should no longer be relied upon), materially misstated product revenues by improperly or prematurely recognizing them.  Thus, contrary to Marrone's and Glidewell's SOX certifications, the 2013 Form 10-K did not "fairly present[] in all material respects the financial condition and results of operations of [MBII]."

110.    In light of the foregoing, the statement referenced above in ¶ 89 that MBII's internal "Disclosure Controls and Procedures" were "effective[]" was an inaccurate statement of material fact when made because MBII failed to disclose the material weaknesses in its system of internal controls over revenue recognition.  The design and operation of the Company's system of internal controls over the accounting for revenue recognition failed to

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS
MASTER FILE NO. 2:14-CV-2571-MCE-KJN

-30-

1  prevent or detect material misstatements in MBII's financial statements.  Such weaknesses

2  have caused the Company to now disclose that the Misstated Financial Statements should no

3  longer be relied up.

4      111.   The statements referenced above in ¶¶ 86-90 were false and/or misleading

5  statements of material fact when made for the additional reason that MBII's distributors did

6  in fact have protection rights that would allow them to return MBII's products to the

7  Company, thereby precluding immediate revenue recognition.

8      112.   As of September 1, 2015, MBII has not yet restated the Misstated Financial

9  Statements.

10     **E.    Cause of Action**

11     113.   The June 2014 Registration Statement contained untrue statements of material

12 fact and omitted other facts necessary to make the statements not untrue, and failed to

13 disclose material facts as described above. MBII was the Registrant, while Marrone, Boyd,

14 Absi, Contag, Lyman and the Offering Defendants were responsible for the contents and

15 dissemination of the June 2014 Registration Statement, and Marrone, Boyd, Contag, Lyman

16 and the Offering Defendants signed the Registration Statement.  As such, said Defendants

17 issued, caused to be issued, and participated in the issuance of the June 2014 Registration

18 Statement and are subject to liability for violations of Section 11 of the Securities Act.

19     114.   MBII is strictly liable to Lead Plaintiffs and the other members of the

20 Secondary Section 11 Class, who purchased shares pursuant to the June 2014 Registration

21 Statement, which contained misstatements and omissions.  Marrone, Boyd, Absi, Contag,

22 Lyman and the Offering Defendants are also liable to members of the Secondary Section 11

23 Class.

24     115.   By reason of the conduct alleged herein, MBII, Marrone, Boyd, Absi, Contag,

25 Lyman and the Offering Defendants each violated Section 11 of the Securities Act.

26

27

28 CONSOLIDATED AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL
   SECURITIES LAWS
   MASTER FILE No. 2:14-CV-2571-MCE-KJN

116.    Defendant E&Y expressly consented to having its audit opinion for MBII's 2013 Financial Statement incorporated by reference into the June 2014 Registration Statement.   Accordingly, E&Y expressly consented to serve as an accounting expert with respect to the Secondary Offering.

117.    E&Y's opinion on MBII's 2013 Financial Statement, incorporated by reference in the June 2014 Registration Statement, was materially false and misleading. Contrary to E&Y's representation, the 2013 Financial Statement did not present fairly, in all material respects, the consolidated financial position of MBII at December 31, 2013 in conformity with GAAP.   Instead, MBII's audited 2013 Financial Statement contained untrue statements of material fact and failed to state other facts necessary to make the statements therein not misleading.   Indeed, MBII has now admitted that all of its reported financial statements, including the 2013 Financial Statement, should no longer be relied upon and must be restated.

118.    As an accounting expert who consented to the use of its audit opinion in the June 2014 Registration Statement, E&Y is liable to the IPO Section 11 Class under Section 11 of the Securities Act for the misrepresentations of opinion, misrepresentations of embedded fact or omissions of material fact contained therein

119.    Lead Plaintiffs and other members of the Secondary Section 11 Class have sustained damages.   The value of the stock acquired by Lead Plaintiffs and the other members of the Secondary Section 11 Class has declined since the time of the Secondary Offering.

120.    Plaintiffs have brought the present action promptly after the untrue statements contained in the June 2014 Registration Statement were discovered or reasonably could have been discovered and within one year from the time that Plaintiffs discovered or reasonably could have discovered the facts upon which this complaint is based to the time that Plaintiffs

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS
MASTER FILE No. 2:14-CV-2571-MCE-KJN

-32-

filed this complaint.  Likewise, less than three years have elapsed from the time that the securities upon which this cause of action is brought were offered to the public.

## FOURTH CAUSE OF ACTION

### By the Secondary Section 11 Class Against Marrone, Boyd, Absi, Contag, Lyman and the Offering Defendants Violations of Section 15 of the Securities Act

121.    This cause of action is asserted against Marrone, Boyd, Absi, Contag, Lyman and the Offering Defendants for violations of Section 15 of the Securities Act, 15 U.S.C. § 77o, on behalf of Lead Plaintiffs and the other members of the Secondary Section 11 Class.

122.    By reason of the wrongful conduct described herein, MBII committed a primary violation of Section 11 of the Securities Act.

123.    At all relevant times, Marrone, Boyd, Absi, Contag, Lyman and the Offering Defendants were controlling persons of the Company within the meaning of Section 15 of the Securities Act.  Each of Marrone, Boyd, Absi, Contag, Lyman and the Offering Defendants served as an executive officer and/or director of MBII prior to and at the time of the Secondary Offering.  Marrone, Boyd, Contag, Lyman and the Offering Defendants signed the June 2014 Registration Statement.  At all relevant times, each of Marrone, Boyd, Absi, Contag, Lyman and the Offering Defendants participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the conduct of MBII's business affairs.  As officers and/or directors of a publicly owned company, Marrone, Boyd, Absi, Contag, Lyman and the Offering Defendants had a duty to disseminate accurate and truthful information about MBII's securities and with respect to the Company's internal controls.  By reason of the aforementioned conduct, Marrone, Boyd, Absi, Contag, Lyman and the Offering Defendants are liable under Section 15 of the Securities Act, jointly and severally with, and to the same extent as, the Company to Lead Plaintiffs and the other members of the Secondary Section 11 Class.

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS
MASTER FILE No. 2:14-CV-2571-MCE-KJN

-33-

**FIFTH CAUSE OF ACTION**

**By The Section 10(b) Class Against MBII and the Section 10(b) Individual Defendants**
**Violations of Section 10(b) of the Exchange Act and SEC Rule 10b-5**

124.   This Cause of Action is asserted against MBII and the Section 10(b) Individual Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and SEC Rule 10b-5 promulgated thereunder.

A.   **Class Allegations By The Section 10(B) Class**

125.   Lead Plaintiffs brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(3) on behalf of all persons who purchased or otherwise acquired MBII securities on the open market between March 7, 2014 and September 2, 2014, inclusive.   This class of investors asserts claims only for violations of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b) and 78t(a), and Rule l0b-5 promulgated thereunder, as well as Section 20(a) of the Exchange Act.   The Section 10(b) Class does not assert any claims under Section 11 of the Securities Act.

126.   Excluded from the Section 10(b) Class are Defendants, the officers and directors of the Company, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

127.   The members of the Section 10(b) Class are so numerous that joinder of all members is impracticable.   While the exact number of Section 10(b) Class members is unknown to Lead Plaintiffs at this time and can only be ascertained through appropriate discovery, Lead Plaintiffs believe that there are hundreds or thousands of members in the proposed Section 10(b) Class.   Record owners and other members of the Section 10(b) Class may be identified from records maintained by MBII or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS
MASTER FILE No. 2:14-CV-2571-MCE-KJN

-34-

128.     Lead Plaintiffs' claims are typical of the claims of the members of the Section 10(b) Class, as all members of the Section 10(b) Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

129.     Lead Plaintiffs will fairly and adequately protect the interests of the members of the Section 10(b) Class and have retained counsel competent and experienced in class and securities litigation.

130.     Common questions of law and fact exist as to all members of the Section 10(b) Class and predominate over any questions solely affecting individual members of the Section 10(b) Class.   Among the questions of law and fact common to the Section 10(b) Class are:

(a)     whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)     whether statements made by Defendants to the investing public misrepresented and/or omitted material facts about the business, operations and management of MBII, including its financial statements; and

(c)     to what extent the members of the Section 10(b) Class have sustained damages and the proper measure of those damages.

131.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Section 10(b) Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Section 10(b) Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS
MASTER FILE NO. 2:14-CV-2571-MCE-KJN

-35-

### B.    Basis For Group Pleading

132.    Because of the Individual Defendants' positions within the Company, they had access to undisclosed information about MBII's business, operations, operational trends, financial statements, markets and present and future business prospects via access to internal corporate documents (including the Company's operating plans, budgets and forecasts and reports of actual operations and performance), conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.

133.    It is appropriate to treat the Individual Defendants as a group for pleading purposes and to presume that the false, misleading and incomplete information conveyed in the Company's public filings, press releases and other publications as alleged herein are the collective actions of the narrowly defined group of defendants identified above.  Each of the Section 10(b) Individual Defendants, by virtue of their high-level positions with the Company, directly participated in the management of the Company, were directly involved in the day-to-day operations of the Company at the highest levels and were privy to confidential proprietary information concerning the Company and its business, operations, growth, financial statements, and financial condition, as alleged herein.  The Section 10(b) Individual Defendants collectively were involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein, were aware, or recklessly disregarded, that the false and misleading statements were being issued regarding the Company, and approved or ratified these statements, in violation of the federal securities laws.

134.    As officers and directors of a publicly-held company whose securities were, and are, registered with the SEC pursuant to the federal securities laws, the Section 10(b) Individual Defendants each had a duty to disseminate prompt, accurate and truthful information with respect to the Company's financial condition and performance, growth,

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS
MASTER FILE No. 2:14-CV-2571-MCE-KJN

-36-

operations, financial statements, business, markets, management, earnings and present and future business prospects, and to correct any previously-issued statements that had become materially misleading or untrue, so that the market price of the Company's publicly-traded securities would be based upon truthful and accurate information. The Section 10(b) Individual Defendants' misrepresentations and omissions during the Section 10(b) Class Period violated these specific requirements and obligations.

135.   The Section 10(b) Individual Defendants, because of their positions of control and authority as officers and/or directors of the Company, were able to and did control the content of the various SEC filings, press releases and other public statements pertaining to the Company during the Class Period.  Each of the Section 10(b) Individual Defendants was provided with copies of the documents alleged herein to be misleading prior to or shortly after their issuance and/or had the ability and/or opportunity to prevent their issuance or cause them to be corrected.  Accordingly, each of the Section 10(b) Individual Defendants is responsible for the accuracy of the public reports and releases detailed herein and are therefore primarily liable for the representations contained in those materials.

136.   Each of the Section 10(b) Individual Defendants is liable for making untrue statements of material fact or omitting to state materials facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, or engaging in acts, practices, and a course of business that operated as a fraud or deceit upon Lead Plaintiffs and others similarly situated in connection with their purchases of MBII securities during the Class period.

C.   **Applicability Of Presumption Of Reliance: Fraud On The Market Doctrine**

137.   At all relevant times, the market for MBII's securities was an efficient market for the following reasons, among others:

> (a)   MBII's securities met the requirements for listing, and were listed and actively traded on the NASDAQ, a highly efficient market;

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS
MASTER FILE No. 2:14-CV-2571-MCE-KJN

-37-

(b)     During the Section 10(b) Class Period, MBII's securities were actively traded, demonstrating a very strong presumption of an efficient market;

(c)     As a regulated issuer, MBII filed with the SEC periodic public reports during the Section 10(b) Class Period;

(d)     MBII regularly communicated with public investors via established market communication mechanisms;

(e)     MBII was followed by securities analysts employed by major brokerage firms who wrote reports that were distributed to the sales force and certain customers of brokerage firms during the Section 10(b) Class Period. These analysts included, but were not necessarily limited to: Robert W. Baird and Stifel.  Each of these reports was publicly available and entered the public marketplace; and

(f)     Unexpected material news about MBII was rapidly reflected in and incorporated into the Company's stock price during the Section 10(b) Class Period.

138.     As a result of the foregoing, the market for MBII's securities promptly digested current information regarding MBII from all publicly available sources and reflected such information in MBII's securities price. Under these circumstances, all purchasers of MBII's securities during the Section 10(b) Class Period suffered similar injury through their purchase of MBII's securities at artificially inflated prices, and a presumption of reliance applies.

### D.     Substantive Allegations Under the Exchange Act

139.     Defendant Marrone is a provider of bio-based pest management and plant health products for the agriculture, turf and ornamental and water treatment markets. The Company represents that its "effective and environmentally responsible solutions help customers operate more sustainably while controlling pests, improving plant health, and increasing crop yields,"

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS
MASTER FILE No. 2:14-CV-2571-MCE-KJN

-38-

and that it has "a proprietary discovery process, a rapid development platform, and a robust pipeline of pest management and plant health product candidates."

140.    The Company went public in an IPO in August 2013.  In November 2013, following the IPO, MBII announced that then-CFO Glidewell, who had only joined Marrone in 2011, was retiring as soon as his replacement could be located, but that in no event would he stay more than five months.

141.    On February 25, 2014, the Company announced that the MBII Board of Directors had appointed Defendant Boyd as its Vice President and co-CFO effective February 26, 2014. Defendant Boyd would serve in that role jointly with Defendant Glidewell until he departed, which the Company stated would be no later than March 31, 2014.

**E.    Defendants' Materially False And Misleading Class Period Statements**

142.    On March 6, 2014, after the close of trading, Marrone issued a press release announcing its fourth quarter and fiscal 2013 financial results for the period ended December 31, 2013.  In the release, the Company stated that "[r]evenues for the fourth quarter 2013 totaled $6 million, representing growth of 106%," and that "[r]evenue for the full year 2013 totaled $14.5 million, representing growth of 104%."  The release further stated that Marrone had achieved a fourth quarter 2013 "[n]et loss of $10 million, compared to net loss of $17.1 million in the fourth quarter of 2012," and a net loss of $28.489 million for fiscal 2013 compared with a net loss of $38,794 for fiscal 2012.  As to MBII's "Business Outlook," the release stated in pertinent part that "[f]or the full year 2014 the Company expect[ed] net revenues to continue to at least double compared to the full year 2013."

143.    Later that evening, the Company conducted a conference call with investors during which it reiterated the financial results announced that day and provided other positive commentary regarding the Company's business results and financial prospects.  Defendants Marrone and Glidewell participated in the call.

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS
MASTER FILE No. 2:14-CV-2571-MCE-KJN

-39-

144.     On March 25, 2014, the Company filed with the SEC its annual financial report on Form 10-K for the fiscal year ended December 31, 2013, signed by defendants Marrone and Glidewell.  The Form 10-K contained the same fourth quarter and fiscal 2013 financial results as described above for the same period, and also contained audited financial statements.

145.     The Form 10-K also included information required by Item 307 of Regulation S-K [17 C.F.R. § 229.307] about MBII's disclosure controls and procedures and its internal control over financial reporting.  The Form 10-K represented, under the heading "Evaluation of Disclosure Controls and Procedures," that

> Our management, with the participation of our chief executive officer (CEO) and chief financial officer, Mr. Glidewell (CFO), has evaluated the effectiveness of our disclosure controls and procedures . . .  as of the end of the period covered by this Annual Report on Form 10-K.  Based on such evaluation, our CEO and CFO have concluded that as of December 31, 2013, our disclosure controls and procedures are designed at a reasonable assurance level and are effective to provide reasonable assurance that information we are required to disclose in reports that we file or submit under the Exchange Act is recorded, processed, summarized, and reported within the time periods specified in the rules and forms of the [SEC], and that such information is accumulated and communicated to our management, including our CEO and CFO, as appropriate, to allow timely decisions regarding required disclosure.

146.     The Form 10-K was accompanied by SOX certifications signed by Marrone and Glidewell that, among other things, certified that the information contained in the Form 10-K "fairly presents in all material respects the financial condition and results of operations of [MBII]."

147.     On March 28, 2014, the Company announced that Defendant Glidewell had resigned effective March 25, 2014.

148.     On May 13, 2014, Marrone issued a press release announcing its first quarter 2014 financial results for the period ended March 31, 2014.  In the release, the Company stated that "[r]evenues for the first quarter 2014 totaled $2.8 million, compared to $2.7 million for the

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS
MASTER FILE NO. 2:14-CV-2571-MCE-KJN

-40-

first quarter of 2013, in-line with the company's expectations against the headwinds of severe weather in all of [its] growing regions," and that the Company had achieved a "[n]et loss of $10.2 million, compared to net loss of $10.7 million in the first quarter of 2013." As to MBII's "Business Outlook," the release stated in pertinent part that "[f]or the full year 2014 the Company continue[d] to expect net revenues to at least double compared to the full year 2013."

149.    Later that evening, the Company conducted a conference call with investors in which it reiterated the financial results announced that day and provided other positive commentary regarding the Company's business results and financial prospects. Defendants Marrone and Boyd participated in the call.

150.    On May 15, 2014, the Company filed with the SEC its quarterly financial report on Form 10-Q for the period ended March 31, 2014, signed by defendant Boyd. The Form 10-Q contained the same fourth quarter and fiscal 2013 financial results as contained in the release for the same period detailed above.

151.    On August 7, 2014, the Company issued a press release announcing its second quarter 2014 financial results for the period ended June 30, 2014. In the release, the Company stated that "[r]evenues for the second quarter totaled $3.6 million, compared to $4.5 million in the second quarter of 2013," that "[a]s in the first quarter of 2014, this comparison primarily reflects the ongoing impact of adverse weather across the Company's growing regions, partially offset by increased adoption rates for all of its products, including Venerate, which began shipments and sold out all available inventory in the second quarter," and that the "[n]et loss for the second quarter was $10.4 million compared to $10.2 million in first quarter 2014." The release also stated in pertinent part that, "[a]s a result of the impact of bad weather on the year and the late Tuesday resignation of its COO, the Company [was] unable to give annual guidance at [that] time, but [might] be able to provide annual guidance at a later date." The release also quoted defendant Boyd as stating in pertinent part that MBII "enjoy[ed] a strong balance sheet, reinforced by approximately $40 million in proceeds from [its] recent secondary

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS
MASTER FILE No. 2:14-CV-2571-MCE-KJN

-41-

offering," and that "go[ing] forward, [the Company would] deploy capital in a disciplined manner to accelerate growth" and was "well positioned financially as well as strategically and with regard to [its] operating capabilities."

152.   Later that evening, the Company conducted a conference call with investors in which it reiterated the financial results announced that day and provided other positive commentary regarding the Company's business results and financial prospects.  Defendants Marrone and Boyd participated in the call.

153.   Also on August 7, 2014, the Company announced in a press release that Absi, the Company's COO, was resigning effective August 22, 2014.

154.   On the news that, among other things, Absi was resigning, the price of Marrone stock dropped significantly on August 8, 2014, falling more than $4 per share to close at $5.51 per share on unusually high trading volume of more than 1.3 million shares traded.  However, based on Defendants' false and misleading statements about the Company's past, present and future financial results, the price of MBII stock remained artificially inflated.

155.   On August 13, 2014, the Company filed with the SEC its quarterly financial report on Form 10-Q for the period ended June 30, 2014, signed by Defendant Boyd.  The Form 10-Q contained the same fiscal and fourth quarter 2013 financial results as contained in the release detailed above for the same period.

156.   The statements referenced above were each materially false and misleading when made because they failed to disclose and misrepresented the following adverse facts known by Defendants, or recklessly disregarded by them, during the Section 10(b) Class Period:

        (a)    MBII's representation that its internal "Disclosure Controls and Procedures" were "effective[]" was an inaccurate statement of material fact when made because MBII failed to disclose material weaknesses in its system of internal controls over revenue recognition.  The design and operation of the Company's system of internal controls over the

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS
MASTER FILE No. 2:14-CV-2571-MCE-KJN

-42-

1   accounting for revenue recognition failed to prevent or detect material
    misstatements in MBII's financial statements.

2

3   (b)   Contrary to Marrone's and Glidewell's SOX certifications, the Form 10-
          K did not "fairly present[] in all material respects the financial condition
          and results of operations of [MBII]";

4

5   (c)   MBII had overstated its fourth quarter and fiscal 2013 revenues by
          $870,000 by improperly recognizing revenue in violation of GAAP,
          which the financial reports and reports filed on Forms 10-K and 10-Q
          claimed to have been prepared in compliance with;

6

7

8   (d)   As a result, the Company's fourth quarter and fiscal 2013 net loss was
          materially understated; and

9

10  (e)   As a result, MBII was not on track to achieve the financial results it
          claimed to be on track to achieve during the Section 10(b) Class Period.

11

12  157.   On September 3, 2014, the Company issued a press release "announc[ing] that, at

13  the recommendation of management, the Audit Committee of its Board of Directors ha[d]

14  commenced an internal investigation after management learned of documents calling into

15  question the recognition of revenue in the fourth quarter of 2013 for an $870,000 transaction,"

16  and that the "Audit Committee ha[d] retained independent legal advisers to assist it in this

17  investigation."  The release also disclosed that "the Audit Committee ha[d] already determined

18  that the company's financial statements for the fiscal year ended December 31, 2013, the

19  unaudited interim financial statements for the three month period ended March 31, 2014 and

20  the three- and six- month periods ended June 30, 2014, should no longer be relied upon as

21  being in compliance with generally accepted accounting principles."

22

23  158.   On this news, the price of MBII stock plummeted, falling $2.50 per share to

24  close at $3.15 per share on unusually high trading volume of more than 2.5 million shares

25  traded.

26  159.   Later revelations confirm the scope of MBII's accounting improprieties.

27

28  CONSOLIDATED AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL
    SECURITIES LAWS
    MASTER FILE No. 2:14-CV-2571-MCE-KJN

-43-

160.   On February 4, 2015, MBII announced that the Company had improperly recognized revenue for certain of the MBII's historical sales transactions with its distributors. The press release stated that

> [t]he principal findings of the Committee were that (i) certain employees did not share with the Company's finance department or the external auditors certain important transactional terms, (ii) certain sales personnel executed inaccurate "sales representation" letters, which are intended to inform the Company's finance department and the external auditors of any commitments not included on a customer purchase order provided to the finance department, and (iii) certain employees mischaracterized expenses related to agreements to pay for the storage and freight fees associated with certain transactions.

161.   MBII also stated that

> [i]n light of the [Audit] Committee's findings, management of the Company is evaluating the necessity, nature and scope of any restatements to any of its previously filed financial statements. Due to the ongoing nature of this evaluation, the Company cannot at this time provide an estimate of the timing, extent, or effect of any such restatement.

162.   On April 17, 2015, the Company announced further results from the Audit Committee's investigation into MBII's historical accounting and revenue recognition practices.  The Company stated, in a report filed with the SEC on Form 8-K, that:

> [T]he Audit Committee concluded, after consultation with management, that in addition to the 2013 Fiscal Year and 2014 Quarterly Financial Statements, the Company's previously reported unaudited interim financial statements as of and for the three months, the three and six months and the three and nine months ended March 31, 2013, June 30, 2013 and September 30, 2013, respectively, should no longer be relied upon.  Although the Company expects to restate certain of its previously filed financial statements, the Company's evaluation process is ongoing; accordingly, the Company cannot at this time provide an estimate of the timing, extent, or effect of such restatement.

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS
MASTER FILE No. 2:14-CV-2571-MCE-KJN

-44-

163.   On May 18, 2015, MBII announced that it would not be able to timely file with the SEC the Company's Quarterly Report for the three-month period ended March 31, 2015.  In its Form 12b-25 filed with the SEC on that date, MBII reiterated that

> the Company's previously reported financial statements as of December 31, 2013 and for the fiscal year ended December 31, 2013, the related report of the independent auditors on those 2013 financial statements dated March 25, 2014, and the unaudited interim financial statements as of and for the three months and the three and six months ended March 31, 2014 and June 30, 2014, respectively, should no longer be relied upon.

164.   MBII further stated that "the Company's previously reported unaudited interim financial statements as of and for the three months, the three and six months and the three and nine months ended March 31, 2013, June 30, 2013 and September 30, 2013, respectively, also should no longer be relied upon."  These financial statements, as well as the financial statements in Paragraph 163, are referred to collectively as the "Misstated Financial Statements."

165.   The Company announced that MBII's management

> has been evaluating all distributor sales transactions during the periods [covered by the Misstated Financial Statements] on a customer-by-customer and transaction-by-transaction basis, including relevant documents and seeking any details of any other undocumented arrangements or commitments.  With respect to each individual transaction, the Company's management is evaluating relevant facts and circumstances to apply its revenue recognition policy.  With respect to many transactions, to permit the Company to determine both (i) the appropriate methodology for accounting for those transactions and (ii) the appropriate timing and quantification of any product revenues arising from those transactions, the Company has sought to obtain additional information from certain of its distributors – including information regarding the distributors' sales to end users of the products the Company shipped to the distributor.
>
> In light of the nature and complexity of this ongoing process, while the Company anticipates that it will restate the [Misstated Financial Statements], the Company has not yet made any

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS
MASTER FILE No. 2:14-CV-2571-MCE-KJN

-45-

definitive conclusions regarding the nature, scope and specific financial impacts of such restatements, and cannot at this time provide an estimate of extent or effect of such restatements.

166.    On the release of this news, the price of MBII's common stock fell from $2.94 to $2.36, on unusually heavy volume.  The price continued to decline in the days following the May 18, 2015 announcement, dropping to $1.94 on May 22, 2015.

167.    Thereafter, on July 9, 2015, MBII announced that the Misstated Financial Statements had improperly recognized revenue on a "sell-in" rather than a "sell-through" basis.

168.    Specifically, in a report filed with the SEC on Form 8-K, MBII explained that the Misstated Financial Statements, as well as certain financial statements that the Company has yet to report, are

expected to be presented using a sell-through" method as to some or all distributors rather than the "sell-in" method previously used by the Company.  In general, under the "sell-through" method sales by the Company to distributors would not be recognized as product revenues until the distributors sell the product through to end-users, rather than at the time of the initial sale to the distributors under the "sell-in" method.  The Company is evaluating the appropriate application of the sell-through method, including the particular distributors and applicable periods as to which the Company would apply the sell-through method.  The principal impact of switching from a "sell-in" to a "sell-through" method is that product revenues with respect to the applicable distributors are expected to be deferred to later periods.

169.    The Company further stated that

[i]n addition to the expected change in methodology from "sell-in" to "sell-through" for sales to distributors, and the resulting deferral in revenue recognition to later periods, the Company also expects to recognize, in the aggregate, approximately $1.7-2.0 million less in product revenues than previously reported for 2013 and the first six months of 2014 because certain distributors have returned (or are in the process of returning) product to the Company pursuant to "inventory protection" rights.

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS
MASTER FILE No. 2:14-CV-2571-MCE-KJN

-46-

### F.  No Safe Harbor

170.  The statutory safe harbor under the Private Securities Litigation Reform Act of 1995, which applies to forward-looking statements under certain circumstances, does not apply to any of the allegedly false and misleading statements plead herein.  The statements alleged herein to be false and misleading all relate to then-existing facts and conditions, and the safe harbor has no applicability.  The forward-looking statements were contradicted by existing, undisclosed material facts that were required to be disclosed so that the forward-looking statements would not be misleading.  To the extent that known trends should have been included in the Company's financial reports prepared in accordance with GAAP, they are excluded from the protection of the statutory safe harbor.

171.  In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not adequately identified as forward-looking statements when made, and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.  Moreover, to the extent that there were cautionary statements purporting to identify factors that could cause actual results to differ, such warnings were themselves misleading because they warned of "risks" that had actually already materialized.

172.  Alternatively, to the extent that the statutory safe harbor is intended to apply to any forward-looking statements pled herein, Defendants are liable for those false forward-looking statements because, at the time each of those forward-looking statements was made, the particular speaker had actual knowledge that the particular forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized and/or approved by an executive officer of MBII who knew that those statements were false, misleading or omitted necessary information when they were made.  MBII's safe-harbor warnings accompanying its purportedly forward-looking statements issued during the Section 10(b) Class Period were thus ineffective to shield those statements from liability.

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS
MASTER FILE No. 2:14-CV-2571-MCE-KJN

-47-

### G. **Additional Scienter Allegations**

173.    As alleged herein, Defendants acted with scienter in that Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.   As set forth herein, Defendants, by virtue of their receipt of information reflecting the true facts regarding MBII, their control over, and/or receipt of or modification of MBII's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning MBII, participated in the fraudulent scheme alleged herein.

### H. **Defendants' Misconduct Caused the Plaintiffs to Suffer Economic Loss (Loss Causation)**

174.    During the Section 10(b) Class Period, as detailed herein, Defendants engaged in a scheme to deceive the market and a course of conduct that artificially inflated the Company's stock price, and operated as a fraud or deceit on acquirers of the Company's securities.   As detailed above, when the truth about MBII's misconduct and its lack of operational and financial controls was revealed, the Company's securities declined precipitously as the prior artificial inflation no longer propped up its stock price.   The decline in MBII's share price was a direct result of the nature and extent of Defendants' fraud finally being revealed to investors and the market.   The timing and magnitude of the common stock price decline negates any inference that the loss suffered by Lead Plaintiffs and other members of the Section 10(b) Class was caused by changed market conditions, macroeconomic or industry factors or Company-specific facts unrelated to the Defendants' fraudulent conduct.   The economic loss, *i.e.,* damages, suffered by Lead Plaintiffs and other

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS
MASTER FILE No. 2:14-CV-2571-MCE-KJN

-48-

Section 10(b) Class members was a direct result of Defendants' fraudulent scheme to artificially inflate the Company's stock price and the subsequent significant decline in the value of the Company's share price when Defendants' prior misrepresentations and other fraudulent conduct was revealed.

175.    At all relevant times, Defendants' materially false and misleading statements or omissions alleged herein directly or proximately caused the damages suffered by Lead Plaintiffs and other Section 10(b) Class members.  Those statements were materially false and misleading through their failure to disclose a true and accurate picture of MBII's business, operations and financial condition, as alleged herein.  Throughout the Section 10(b) Class Period, Defendants publicly issued materially false and misleading statements and omitted material facts necessary to make Defendants' statements not false or misleading, causing MBII's securities to be artificially inflated.  Lead Plaintiffs and other Section 10(b) Class members purchased MBII's securities at those artificially inflated prices, causing them to suffer the damages complained of herein.

## I.      Cause of Action

176.    During the Section 10(b) Class Period, these Defendants made untrue statements of material fact or omitted to state materials facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, and/or engaged in acts, practices, and a course of business that operated as a fraud or deceit upon Lead Plaintiffs and others similarly situated in connection with their purchases of MBII securities.

177.    As a result of the failure to disclose material facts, the information these Defendants disseminated to the investing public was materially false and misleading as set forth above, and the market price of MBII's securities was artificially inflated during the Section 10(b) Class Period.  In ignorance of the false and misleading nature of the statements described above and the deceptive and manipulative devices and contrivances employed by

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS
MASTER FILE No. 2:14-CV-2571-MCE-KJN

-49-

these Defendants, Lead Plaintiffs and other members of the Section 10(b) Class relied, to their detriment, on the integrity of the market price of MBII's securities in purchasing their shares. Had Lead Plaintiffs and the other members of the Section 10(b) Class known the truth, they would not have purchased said shares or would not have purchased them at the inflated prices that were paid.

178.   Lead Plaintiffs and other members of the Section 10(b) Class have suffered substantial damages as a result of the unlawful conduct alleged herein in an amount to be proved at trial.

179.   By reason of the foregoing, Defendants directly violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder in that they: (a) employed devices, schemes and artifices to defraud; (b) failed to disclose material information; and/or (c) engaged in acts, practices and a course of business which operated as a fraud and deceit upon Plaintiffs and the other members of the Section 10(b) Class in connection with their purchases of MBII's securities during the Section 10(b) Class Period.

180.   Defendants' earliest fraud was discovered on or about September 3, 2014. Lead Plaintiffs have brought this claim within two years of discovery of the violations alleged herein, and within five years of the date of those violations.

## SIXTH CAUSE OF ACTION

**By the Section 10(b) Class Against the Section 10(b) Individual Defendants
Violations of Section 20(a) of the Exchange Act**

181.   By reason of the wrongful conduct described herein, MBII committed a primary violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS
MASTER FILE No. 2:14-CV-2571-MCE-KJN

-50-

182.   The Section 10(b) Individual Defendants, by virtue of their positions, stock ownership and/or specific acts described above, were, at the time of the wrongs alleged herein, controlling persons within the meaning of Section 20(a) of the Exchange Act.

183.   The Section 10(b) Individual Defendants had the power and influence -- and exercised such power and influence -- as to cause MBII to engage in the unlawful conduct and practices complained of herein.

184.   By reason of the conduct alleged in the fifth cause of action of this Complaint, the Section 10(b) Individual Defendants are jointly and severally liable to the same extent as the Company for the aforesaid unlawful conduct, and are liable to Lead Plaintiffs and to the other members of the Section 10(b) Class for the substantial damages which they suffered in connection with their purchases of MBII's securities during the Section 10(b) Class Period.

## V.   **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on their own behalf and on behalf of the IPO Section 11 Class, the Secondary Section 11 Class and the Section 10(b) Class, pray for judgment as follows:

(a)   Determining this action to be a proper class action and certifying Plaintiffs as class representatives under Rule 23 of the Federal Rules of Civil Procedure;

(b)   Awarding compensatory damages in favor of (i) Plaintiff Fineman and the other members of the IPO Section 11 Class, (ii) Lead Plaintiffs and the other members of the Secondary Section 11 Class, and (iii) Lead Plaintiffs and the other members of the Section 10(b) Class, respectively, against Defendants, jointly and severally, for the damages sustained as a result of the wrongdoings of Defendants, together with interest thereon;

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS
MASTER FILE No. 2:14-CV-2571-MCE-KJN

1          (c)     Awarding Plaintiffs the fees and expenses incurred in this action,

2                including reasonable allowance of fees for Plaintiffs' attorneys and

3                experts;

4          (d)     Granting extraordinary equitable relief as permitted by law; and,

5          (e)     Granting such other and further relief as the Court may deem just

6                and proper.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28  CONSOLIDATED AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL
SECURITIES LAWS
MASTER FILE No. 2:14-CV-2571-MCE-KJN

1

**JURY TRIAL DEMANDED**

2
Plaintiffs hereby demand a trial by jury.

3
DATED: September 1, 2015

4
/s/ Michael J. McGaughey

MICHAEL J. McGAUGHEY (198617)

5
**LOWENSTEIN SANDLER LLP**

6
390 Lytton Avenue

Palo Alto, CA 94301

7
Telephone: 415-288-4545

Fax: 415-288-4534

8
E-mail: mmcgaughey@lowenstein.com

9

*Counsel for Lead Plaintiffs Special Situations Fund*

10
*III QP, L.P. and Special Situations Cayman Fund,*
*L.P. and Additional Named Plaintiff David M.*

11
*Fineman, and Lead Counsel for the Classes*

12
Appearance *pro hac vice*:

13
LAWRENCE M. ROLNICK

STEVEN M. HECHT

14
THOMAS E. REDBURN, JR.

15
**LOWENSTEIN SANDLER LLP**

1251 Avenue of the Americas

16
New York, NY 10020

17
 - and –

65 Livingston Avenue

18
Roseland, NJ 07068

19
Telephone: 646-414-6902

Fax: 973-597-2381

20
E-mail: shecht@lowenstein.com

tredburn@lowenstein.com

21

22

23

24

25

26

27

28
CONSOLIDATED AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL
SECURITIES LAWS
MASTER FILE No. 2:14-CV-2571-MCE-KJN

**CERTIFICATE OF SERVICE**

I hereby certify that on September 1, 2015, I caused the foregoing CONSOLIDATED AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS to be electronically filed with the Clerk of Court using the Court's CM/ECF system, which will send notification of such filing to counsel of record.

       /s/ Michael J. McGaughey____
       Michael J. McGaughey

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS
MASTER FILE No. 2:14-CV-2571-MCE-KJN

-54-