1
2
3
4
5

**LOWENSTEIN SANDLER LLP**
MICHAEL J. MCGAUGHEY (198617)
390 Lytton Avenue
Palo Alto, CA 94301
Telephone: 213-426-2170
Fax: 973-597-6233
mmcgaughey@lowenstein.com

6
7
8

*Counsel for Lead Plaintiffs Special Situations*
*      Fund III QP, L.P. and Special Situations*
*      Cayman Fund, L.P. and additional named*
*      Plaintiff David M. Fineman*

9
10
11

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| 12<br>13<br>14<br><br>15<br>16<br>17<br>18<br>19<br>20<br>21<br>22<br>23<br>24<br>25 | SPECIAL SITUATIONS FUND III QP, L.P., SPECIAL SITUATIONS CAYMAN FUND, L.P., and DAVID M. FINEMAN, Individually and On Behalf of All Others Similarly Situated,<br><br>    Plaintiffs,<br><br>vs.<br><br>MARRONE BIO INNOVATIONS, INC., PAMELA G. MARRONE, JAMES B. BOYD, DONALD J. GLIDEWELL, HECTOR ABSI, ELIN MILLER, RANJEET BHATIA, PAMELA CONTAG, TIM FOGARTY, LAWRENCE HOUGH, JOSEPH HUDSON, LES LYMAN, RICHARD ROMINGER, SHAUGN STANLEY, SEAN SCHICKEDANZ, and ERNST & YOUNG LLP,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Master No.: 2:14-cv-2571-MCE-KJN<br><br>Hon. Morrison C. England, Jr.<br><br>CONSOLIDATED CLASS ACTION<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR (I) PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, (II) CERTIFICATION OF THE SETTLEMENT CLASS, AND (III) APPROVAL OF NOTICE**<br><br>Date:  June 16, 2016<br>Time:  2:00 p.m.<br>Place:  501 I Street, Courtroom 7<br>    Sacramento, CA 95814 |

26
27
28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
MASTER FILE No. 2:14-cv-2571-MCE-KJN

# TABLE OF CONTENTS

**PAGES**

TABLE OF AUTHORITIES ............................................................................... ii

I.    INTRODUCTION .................................................................................. 1

II.   HISTORY OF THE LITIGATION AND SUMMARY OF SETTLEMENT
      NEGOTIATIONS ................................................................................... 3

III.  ARGUMENT ........................................................................................ 7

      A.    THE PARTIAL SETTLEMENT MERITS PRELIMINARY APPROVAL
            AND PLAINTIFFS SHOULD BE ORDERED TO NOTIFY THE
            SETTLEMENT CLASS OF THE PROPOSED SETTLEMENT ............ 7

            1.    Preliminary Approval Standards ............................................. 7

            2.    The Partial Settlement Resulted from Arm's-Length Negotiations ............... 8

            3.    The Partial Settlement Has No Obvious Deficiencies and Falls Within
                  the Range for Approval .......................................................... 9

            4.    The Risk, Expense and Complexity of the Action Support
                  Preliminarily Approving the Settlement. ....................................... 11

            5.    The Proceedings Are Sufficiently Advanced to Permit Preliminary
                  Approval of the Partial Settlement .............................................. 11

      B.    CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE ............. 12

            1.    The Proposed Partial Settlement Class Meets the Prerequisites for
                  Class Certification Under Rule 23 ............................................. 12

            2.    Common Questions Of Law Predominate And A Class Action Is the
                  Superior Method Of Adjudication, Satisfying Rule 23(b)(3). ................ 17

IV.   NOTICE TO THE SETTLEMENT CLASS SHOULD BE APPROVED ...................... 19

V.    CONCLUSION ...................................................................................... 20

-i-

# TABLE OF AUTHORITIES

**PAGES**

CASES

*In re Adobe Sys., Inc. Sec. Litig.*,
  139 F.R.D. 150 (N.D. Cal. 1991) ........................................................................... 13

*Alfus v. Pyramid Tech. Corp.*,
  764 F. Supp. 598 (N.D. Cal. 1991) ....................................................................... 15

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) ..................................................................................... 15, 17

*In re Apollo Group, Inc. Sec. Litig.*,
  No. CV 04-2147-PHX, 2008 WL 3072731 (D. Ariz. Aug. 4, 2008) ...................... 11

*Athale v. Sinotech Energy Ltd.*,
  No. 11-CV-05831, slip op. (S.D.N.Y. Sept. 4, 2013) .......................................... 12

*Blackie* v. *Barrack*,
  524 F.2d 891 (9th Cir. 1975) ..................................................................... 13, 14, 17

*Churchill Village, LLC v. GE*,
  361 F.3d 566 (9th Cir. 2004) ............................................................................... 11

*Class Plaintiffs v. City of Seattle*,
  955 F.2d 1268 (9th Cir. 1992) ................................................................................ 7

*In re Cooper Companies Inc. Sec. Litig.*,
  254 F.R.D. 628 (C.D. Cal. 2009) ............................................................. 13, 16, 17

*Danis v. USN Commc'n, Inc.*,
  189 F.R.D. 391 (N.D. III. 1999) ........................................................................... 15

*In re Emulex Corp., Sec. Litig.*,
  210 F.R.D. 287 (C.D. Cal. 2002) ................................................................... 15, 17

*Erica P. John Fund, Inc. v. Halliburton Co.*,
  131 S. Ct. 2179 (2011) ......................................................................................... 16

*In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*,
  No. MDL 901, 1992 WL 226321 (C.D. Cal. June 10, 1992) .................................. 9

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) .................................................................... 7, 12, 16

*Hanon v. Dataproducts Corp.*,
  976 F. 2d 497 (9th Cir. 1992) ............................................................................... 15

*Harris v. Palm Springs Alpine Estates, Inc.*,
   329 F. 2d 909 (9th Cir. 1964) ........................................................ 13

*In re Heritage Bond Litig.*,
   No. 02ML1475, 2005 WL 1594403 (C.D. Cal. June 10, 2005) ........................................... 10

*Hodges v. Akeena Solar Inc.*,
   274 F.R.D 259 (N.D. Cal. 2011).............................................. 13, 14, 16

*In re Immune Response Sec. Litig.*,
   497 F. Supp. 2d 1166 (S.D. Cal. 2007)........................................................ 9

*Knight v. Red Door Salons, Inc.*,
   No. 08-0520, 2009 WL 248367 (N.D. Cal. Feb. 2, 2009) ............................................. 10, 11

*In re LDK Solar Sec. Litig.*,
   255 F.R.D. 519 (N.D. Cal. 2009) ........................................................ 16

*Lerwill v. Inflight Motion Pictures, Inc.*,
   582 F. 2d 507 (9th Cir. 1978) ........................................................ 16

*Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*,
   244 F.3d 1152 (9th Cir. 2001) ........................................................ 17

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000) ........................................................ 11

*Negrete v. Allianz Life Ins. Co. of N. Am.*,
   238 F.R.D. 482 (C.D. Cal. 2006) ........................................................ 17

*In re NYSE Specialists Sec. Litig.*,
   260 F.R.D. 55 (S.D.N.Y. 2009) ........................................................ 18

*Officers for Justice v. Civil Serv. Comm'n*,
   688 F.2d 615 (9th Cir. 1982) ........................................................ 10

*In re Omni Vision Techs., Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2008) ........................................................ 8, 10

*Perez-Funez v. Dist. Director, Immigration & Naturalization Serv.*,
   611 F. Supp. 990 (C.D. Cal. 1984) ........................................................ 13

*In re Portal Software, Inc. Sec. Litig.*,
   No. C-03-5138 VRW, 2007 WL 1991529 (N.D. Cal. June 30, 2007) ................................ 19

*Rodriguez v. W. Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) ........................................................ 7

*Rosenburg v. IBM,*
   No. C06-00430, 2007 WL 128232 (N.D. Cal. Jan. 11, 2007) .................................................... 8

*Satchell v. Fed. Express Corp.*, No. C039-2659, 2007 WL 1114010 (N.D. Cal.
   Apr. 13, 2007) ............................................................................................................................. 9

*Schleicher v. Wendt*, 618 F.3d 679 (7th Cir. 2010).................................................................... 18

*Schwartz v. Harp,*
   108 F.R.D. 279 (C.D. Cal. 1985) .............................................................................................. 13

*Spann v. J.C. Penney Corp.*,
   --- F.R.D. ----, 2016 WL 297399 (C.D. Cal. Jan. 25, 2016) ....................................................... 7

*Sullivan v. Chase Inv. Servs., Inc.*,
   79 F.R.D. 246 (N.D. Cal. 1978).................................................................................................. 14

*In re Tableware Antitrust Litig.*,
   484 F. Supp. 2d 1078 (N.D. Cal. 2007) ...................................................................................... 9

*Torrisi v. Tucson Elec. Power Co.*,
   8 F.3d 1370 (9th Cir. 1993) ....................................................................................................... 11

*In re UTStarcom, Inc. Sec. Litig.*,
   No. C006- 4908, 2010 WL 1945737 (N.D. Cal. May 12, 2010) .............................. 12, 14, 15

*Vathana v. EverBank*,
   No. C 0902338 RS, 2010 WL 934219 (N.D. Cal. Mar. 15, 2010) ........................................ 16

*In re VeriSign, Inc. Sec. Litig.*,
   No. C 02-02270-JW, 2005 U.S. Dist. LEXIS 10438 (N.D. Cal. Jan. 13, 2005)............. 14, 15

*Wehner v. Syntex Corp.*,
   715 F.R.D. 641 (N.D. Cal. 1987) .............................................................................................. 14

*Welling v. Alexy,*
   155 F.R.D. 654 (N.D. Cal. 1994) .............................................................................................. 13

*West v. Circle K Stores, Inc.*,
   No. S-04-0438 WBS GGH, 2006 WL 1652598 (E.D. Cal. June 13, 2006) ................... passim

*In re Wireless Facilities, Inc. Sec. Litig. II*,
   No. 07CV482, 2008 WL 4146126 (S.D. Cal. Sept. 3, 2008) ........................................... 8, 19

*Wright v. Linkus Enters., Inc.*,
   259 F.R.D. 468 (E.D. Cal. 2009) ............................................................................................ 8, 9

*Yamner v. Boich,*
   No. C-92-20597 RPA, 1994 WL 514035 (N.D. Cal. Sept. 15, 1994) ................................... 14

*Young v. Polo Retail, LLC*,
   No. C-02-4546, 2006 WL 3050861 (N.D. Cal. Oct. 25, 2006) ............................................. 8

STATUTES

15 U.S.C. § 77k(a)(4) ............................................................................................................. 2

Private Securities Litigation Reform Act of 1995 ............................................................. 1, 3, 19

Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 .................................. 5

RULES

Fed R. Civ. P. 23(a) ................................................................................................... passim

Fed R. Civ. P. 23(b) ....................................................................................... 12, 13, 16, 18

Fed. R. Civ. P. 23(e) ................................................................................................................ 7

Fed. R. Civ. P. 23(g) .............................................................................................................. 18

OTHER AUTHORITIES

4 William Rubenstein, Alba Conte & Herbert B. Newberg, *Newberg on Class
   Actions* (4th ed. 2002) ................................................................................................ 7, 8

Cornerstone Research, *Securities Class Action Settlements: 2015 Review and
   Analysis* (2016) ............................................................................................................. 10

J. Moore, et al., *Moore's Federal Practice* (2d ed. 1993). ..................................... 9-10

*Manual for Complex Litigation* (Fourth) (Fed. Judicial Ctr. 2004) ............................... 8

Lead Plaintiffs Special Situations Fund III QP, L.P. ("Fund III") and Special Situations Cayman Fund, L.P. ("Cayman Fund") (collectively, "the Funds" or "Lead Plaintiffs"), and additional named Plaintiff David M. Fineman ("Fineman" and, with Lead Plaintiffs, "Plaintiffs"), on behalf of themselves and the proposed Settlement Class,[1] hereby seek preliminary approval of the Settlement they have reached with Defendants Marrone Bio Innovations, Inc. ("MBI" or "the Company"), Pamela G. Marrone, James B. Boyd, Donald J. Glidewell, Hector Absi, Elin Miller, Tim Fogarty, Richard Rominger, Shaugn Stanley, Ranjeet Bhatia, Lawrence Hough, Joseph Hudson, Sean Schickendanz, Pamela Contag, and Les Lyman (collectively, the "Individual Defendants," with MBI, the "Settling Defendants," and with Plaintiffs, the "Settling Parties").  This memorandum outlines the parameters of the Settlement and demonstrates why preliminary approval should be granted.  It also demonstrates why the Court should:  (i) certify the proposed Settlement Class; and (ii) approve the form and manner of providing notice of the Settlement to Settlement Class Members.

## I.    INTRODUCTION

Following extensive negotiations, Plaintiffs and the Settling Defendants have reached an agreement to partially resolve this securities fraud class action (the "Action") for $12 million in cash.  The terms and conditions of the Settlement are set forth in the Stipulation.

By the time the Settlement was reached, Plaintiffs were fully informed about the strengths and weaknesses of their case, as well as the substantial risk to recovery resulting from MBI's precarious financial situation and substantial risk of insolvency.  The Settlement was possible only after the Funds' filing of an initial complaint; appointment of the Funds as Lead Plaintiffs pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"); Lead Plaintiffs' filing of a Consolidated Amended Complaint to add additional claims against the

---

[1] All capitalized terms used herein that are not otherwise defined shall have the meanings ascribed to them in the Stipulation and Agreement of Settlement, dated May 25, 2016 (the "Stipulation").  The Stipulation is attached as Exhibit A to the Notice of Motion which is being filed concurrently herewith. The [Proposed] Order Preliminarily Approving Proposed Settlement and Providing for Notice (the "Preliminary Approval Order") is attached as Exhibit B to the Notice of Motion.

Settling Defendants, as well as MBI's public auditor, Ernst & Young LLP ("E&Y")[2]; Lead Counsel's extensive investigation, which included (i) a review of Defendants' public documents, (ii) filings made with the United States Securities and Exchange Commission ("SEC"), (iii) conference calls and announcements issued by MBI, (iv) press releases published by and regarding the Company and other information readily obtainable in the public domain, (v) information obtained from documents filed by the SEC and the Department of Justice ("DOJ"), and (vi) interviews with former MBI employees and other individuals with relevant personal knowledge; Lead Counsel's filing of a detailed, 97-page second amended complaint; Lead Counsel's filing of a 117-page proposed third amended complaint; and in-depth consultation with a financial expert on issues of loss causation and damages.

The Partial Settlement was reached after extensive arms-length negotiations overseen by an experienced mediator, Jed D. Melnick, Esq., of JAMS.  Based on his oversight of the negotiations, including a full-day mediation session preceded by voluminous and comprehensive mediation submissions, the Settling Parties reached an agreement to resolve the claims against the Settling Defendants in the Action for $12 million, to be paid exclusively by the Individual Defendants' insurance carriers for the benefit of the Settlement Class.  The Settlement is the only realistic source of meaningful recovery for the class, because MBI has little to no free cash, there is substantial doubt about MBI's ability to continue as a going concern, and available insurance proceeds are dwindling rapidly.

Plaintiffs and Lead Counsel -- based upon their experience, evaluation of the facts and applicable law, their recognition of the amount of the Settlement, and the risk and expense of continued litigation -- submit that the proposed Settlement is fair, reasonable, and adequate. The Settlement represents an excellent result and is in the best interests of the Settlement Class.

---

[2] The claim against E&Y is under Section 11 of the Securities Act, which renders experts like auditors liable for, *inter alia*, portions of registration statements that have been "prepared or certified" by that expert, *see* 15 U.S.C. § 77k(a)(4).  MBI's audited financial information included in the June 2014 Registration Statement was admittedly false and misleading.  The Section 11 claim against E&Y is not being resolved in the Settlement.  Accordingly, should the Court approve this Settlement between the Settling Parties, the only Defendant left in this case will be E&Y.

Plaintiffs respectfully request that the Court grant preliminary approval of the Settlement so that notice may be provided to the Settlement Class.  Specifically, Plaintiffs request that this Court enter the Settling Parties' agreed-upon Preliminary Approval Order, submitted herewith as Exhibit B to the Notice of Motion, which among other things, will:

(i)   preliminarily approve the proposed Settlement on the terms set forth in the Stipulation;

(ii)  certify the proposed Settlement Class for purposes of the Settlement;

(iii) approve the form and content of the Notice, Proof of Claim Form and Summary Notice attached to the proposed Preliminary Approval Order as Exhibits 1, 2 and 3, respectively; and

(iv) find that the procedures for distribution of the Notice and Proof of Claim Form and publication of the Summary Notice in the manner and form set forth in the Preliminary Approval Order constitute the best notice practicable under the circumstances, and comply with the notice requirements of due process, Rule 23 of the Federal Rules of Civil Procedure, and the PSLRA.

## II.     HISTORY OF THE LITIGATION AND SUMMARY OF SETTLEMENT NEGOTIATIONS

Plaintiffs brought this putative securities fraud class action against MBI, a developer of bio-based pesticide and plant health products whose common stock trades on NASDAQ; MBI officers Pamela G. Marrone, James B. Boyd, Donald J. Glidewell, and Hector Absi; and MBI directors Elin Miller, Tim Fogarty, Richard Rominger, Shaugn Stanley, Ranjeet Bhatia, Lawrence Hough, Joseph Hudson, Sean Schickendanz, Pamela Contag, and Les Lyman, for violations of Sections 11 and 15 of the Securities Act and violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and SEC Rule 10b-5.  Plaintiffs allege that these Defendants made false and misleading statements regarding MBI's revenues, gross profit, and net loss, in violation of generally accepted accounting principles ("GAAP").

The Funds filed their initial Complaint on November 3, 2014.  (Docket No. 1.)  The next day, the Funds filed one of several competing motions in this District seeking appointment as Lead Plaintiffs and approval of their selection of Lead Counsel.  (Docket No. 4.)  Following briefing, the Court appointed the Funds as Lead Plaintiffs and approved their choice of counsel, Lowenstein Sandler LLP, as Lead Counsel pursuant to the PSLRA.  (Docket No. 8.)

On February 4, 2015, MBI announced that its Audit Committee investigation of certain revenue recognition issues was substantially complete, and that MBI's management was evaluating the necessity, nature and scope of any restatements to certain of its financial statements previously filed with the SEC (the "Financial Statement Review").  During the pendency of the Financial Statement Review, the Court So Ordered a number of stipulations delaying Lead Plaintiffs' deadline to file a consolidated amended complaint until after the results of the Financial Statement Review were announced.  On September 1, 2015, however, and pursuant to so-ordered stipulation, Plaintiffs filed and served a Consolidated Amended Complaint for Violations of the Federal Securities Law that added, *inter alia*, a claim under Section 11 against E&Y, MBI's public auditor.  (Docket No. 5.)[3]

After MBI announced the results of its Financial Statement Review on November 10, 2015, and following Lead Counsel's extensive independent investigation, Lead Counsel filed and served a Second Consolidated Amended Complaint for Violations of the Federal Securities Laws.  (Docket No. 44.)  Shortly thereafter, the SEC filed lawsuits against MBI and Absi, alleging civil violations of the federal securities laws.  In addition, the United States Attorney for the Eastern District of California unsealed an indictment that alleges that Absi committed, *inter alia*, securities fraud.

Plaintiffs have incorporated certain allegations from the complaints and the indictment into a proposed Third Consolidated Amended Class Action Complaint for Violations of the Federal Securities Law (the "Third Amended Complaint").  (*See* Docket No. 59-1.)  The Third Amended Complaint alleges seven causes of action, on behalf of three classes of investors in MBI common stock.  The First Cause of Action alleges violations of Section 11 of the Securities Act against Defendants MBI, Marrone, Glidewell, Miller, Fogarty, Rominger, Stanley, Bhatia, Hough, Hudson, and Schickedanz.  The Second Cause of Action alleges violations of Section 15 of the Securities Act against Defendants Marrone and Glidewell.  The Third Cause of Action alleges violations of Section 11 of the Securities Act against Defendants

---

[3] As stated, the claim against E&Y is not released by this Settlement Agreement and Plaintiffs intend to continue its prosecution.

MBI, Marrone, Boyd, Miller, Fogarty, Rominger, Stanley, Bhatia, Hough, Hudson, Contag, and Lyman.  The Fourth Cause of Action alleges violations of Section 15 of the Securities Act against Defendants Marrone and Boyd.  The Fifth Cause of Action alleges violations of Section 11 of the Securities Act against Defendant EY.  The Sixth Cause of Action alleges violations of Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") against Defendants MBI and Absi.  The Seventh Cause of Action alleges violations of Section 20(a) of the Exchange Act against Defendants Marrone, Glidewell, Absi, and Boyd.

The Third Amended Complaint alleges that, among other things, Defendants made false and misleading statements regarding MBI's revenues, gross profit, and net loss, in violation of GAAP.  It alleges that a result of these false and misleading statements, certain members of the Settlement Class (*i.e.*, the IPO Claimants and Secondary Claimants) suffered a statutory measure of damages under the Securities Act.  The Third Amended Complaint further alleges that the price of MBI's common stock was artificially inflated as a result of the Settling Defendants' false and misleading statements, and declined when the truth was revealed, damaging those MBI shareholders who purchased on the secondary market.

Due in part to the conduct outlined in the Third Amended Complaint, MBI is in dire financial straits.  In the Company's Annual Report, filed on Form 10-K with the SEC on March 30, 2016, its auditor issued a "going concern" opinion, meaning that there is substantial doubt about MBI's ability to comply with its debt covenants and otherwise continue as going concern.  The Company burned through about $10 million in cash in the first quarter of 2016, and given its current free cash reserves, at this rate it appears as if MBI will run out of money sometime in the fourth quarter of 2016.

Driven in part by concerns over the Company's tenuous financial position, Plaintiffs and the Settling Defendants began a dialogue concerning possible early partial resolution of the Action.  Accordingly, on April 4, 2016, counsel for the Settling Parties participated in an in-person mediation (the "Mediation") before Jed D. Melnick, Esq. (the "Mediator"), of JAMS.  In advance of that session, the parties prepared extensive confidential mediation statements that addressed issues of liability, damages, and collectability.  In connection with this effort,

1   Plaintiffs engaged a financial expert to advise on issues of loss causation and class-wide
2   damages.

3         Following arm's-length negotiations under the supervision of the Mediator, the Settling
4   Parties reached an agreement in principle to settle the Action for, *inter alia*, Plaintiffs'
5   agreement to release all claims asserted against the Settling Defendants in the Action in return
6   for a cash payment of $12 million, to be paid exclusively by the Settling Defendants' insurance
7   carriers for the benefit of the Settlement Class.  The $12 million cash payment represents
8   substantially all of the Individual Defendants' available $15 million director's and officer's
9   insurance policy, after accounting for attorney's fees that have been and will be incurred by the
10  Settling Defendants' counsel.  The Settling Parties subsequently negotiated the Stipulation (as
11  well as the exhibits thereto), which sets forth the final and binding agreement to settle the
12  Action as to the Settling Parties, and executed the Stipulation on May 25, 2016.

13        Reached by experienced litigators after a comprehensive investigation conducted at the
14  direction of Lead Counsel, the proposed Partial Settlement is the result of fully informed, arms-
15  length bargaining, and an in-person Mediation before an experienced and well-respected
16  Mediator.  The $12 million proposed Settlement is an excellent result for the Settlement Class,
17  when considering the risk of a diminished or nonexistent recovery if the Action proceeded
18  through motions to dismiss, discovery, class certification, summary judgment, trial and perhaps
19  appeals.

20        Perhaps most pressing, however, is the real risk that the Settlement Class would not be
21  able to recover anything, regardless of the merits of Plaintiffs' claims, due to MBI's precarious
22  financial position, and the Individual Defendants' rapidly diminishing insurance reserves.
23  Simply put, an immediate settlement that consists of substantially all of available insurance
24  reserves is a significant victory for the Settlement Class.

25

26

27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
MASTER FILE No. 2:14-cv-2571-MCE-KJN

III.    **ARGUMENT**

    A.    **The Partial Settlement Merits Preliminary Approval And Plaintiffs Should Be Ordered To Notify The Settlement Class Of The Proposed Settlement**

        1.    **Preliminary Approval Standards.**

The settlement of complex class action litigation is encouraged by courts as sound policy.   The Ninth Circuit maintains a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned."   *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("This circuit has long deferred to the private consensual decision of the parties."); *West v. Circle K Stores, Inc.*, No. S-04-0438 WBS GGH, 2006 WL 1652598, at *1 (E.D. Cal. June 13, 2006).   "[T]he law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation."   4 William Rubenstein, Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* [hereinafter "*Newberg*"] § 11.41 (4th ed. 2002).

Indeed, the Ninth Circuit "does not follow the approach of other circuits [which require] district courts to 'specifically weigh the merits of the class's case against the settlement amount and quantif[y] the expected value of fully litigation the matter.'"   *Spann v. J.C. Penney Corp.*, --- F.R.D. ----, 2016 WL 297399, at *8 (C.D. Cal. Jan. 25, 2016) (quoting *Rodriguez*, 563 F.3d at 965).   "Rather, the Ninth Circuit examines whether the settlement is 'the product of arms-length, non-collusive, negotiated resolution'"; when it is, the parties are entitled to the presumption that the settlement is proper.   *See id.*   Consistent with this long-standing policy favoring settlements, approval of a proposed class action settlement is within the broad authority of the district court.   *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025 (9th Cir. 1998).

Federal Rule of Civil Procedure 23(e) requires judicial approval for a compromise of claims brought on a class basis.   Fed. R. Civ. P. 23(e) ("The claims . . . of a certified class may be settled . . . only with the court's approval.").   The class action settlement approval process involves two steps: first, preliminary approval, followed by notice to the class, and then final

approval.  *See, e.g., West*, 2006 WL 1652598, at *2.  Once the class has received notice, and class members have had an opportunity to object to or opt out of the proposed class, the court then holds a final settlement hearing.  *Newberg* § 11.25, at 38-39 (endorsing two-step process). The test for whether preliminary approval should be granted has both a procedural and a substantive component.  The court in *Young v. Polo Retail, LLC*, No. C-02-4546, 2006 WL 3050861, at *5 (N.D. Cal. Oct. 25, 2006), quoting from *Newberg*, explains the procedure as follows:

> If the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval, then the court should direct that the notice be given to the class members of a formal fairness hearing . . . .

At the preliminary approval stage, the Court's function is to evaluate whether the proposed settlement:  (1) was negotiated at arm's-length, and (2) is within the range of reasonableness such that "probable cause" exists to disseminate notice and begin the formal fairness process. *Manual for Complex Litigation* (Fourth) § 21.632, at 320 (Fed. Judicial Ctr. 2004); *see also Wright v. Linkus Enters., Inc.*, 259 F.R.D. 468, 472 (E.D. Cal. 2009) (England, J.) ("For purposes of preliminary approval of class certification and proposed settlement, a district court must evaluate the terms of the settlement to determine whether they are within a range of possible judicial approval." (citing *Newberg* § 11.25)); *Rosenburg v. IBM,* No. CV06-00430, 2007 WL 128232, at *5 (N.D. Cal. Jan. 11, 2007) (preliminary approval granted where the "[s]ettlement has no obvious defects and is within the ranges of possible Settlement approval such that notice to the Class is appropriate").

This standard is comfortably satisfied here.

### 2.    The Partial Settlement Resulted from Arm's-Length Negotiations

There is a presumption of fairness for a proposed settlement that results from arm's-length negotiations.  *In re Omni Vision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008); *In* re *Wireless Facilities, Inc. Sec. Litig. II*, No. 07CV482, 2008 WL 4146126, at *3 (S.D. Cal. Sept. 3, 2008).  Here, the proposed settlement is the product of arm's-length

negotiations between Plaintiffs, through Lead Counsel, and the Settling Defendants, through their counsel.  As noted above, in April 2016, the Settling Parties engaged in a voluntary mediation before Jed D. Melnick, Esq., and were able to reach an agreement in principle. "[T]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."  *Satchell v. Fed. Express Corp.*, No. C039-2659, 2007 WL 1114010, at \*4 (N.D. Cal. Apr. 13, 2007); *see also In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1171 (S.D. Cal. 2007).  As a result, the Settling Parties were able to negotiate a fair settlement, taking into account the costs and risks of continued litigation, including the real and pressing risk to any collectability based upon MBI's precarious and deteriorating financial condition.

The settlement negotiations undertaken in connection with the Settlement have produced a result that the Settling Parties believe to be within their respective best interests.  Indeed, the opinion of well-informed and experienced counsel in favor of the Partial Settlement is also entitled to significant weight.  *See, e.g.*, *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 11080 (N.D. Cal. 2007); *In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*, No. MDL 901, 1992 WL 226321, at \*2 (C.D. Cal. June 10, 1992) (counsel's opinion favoring settlement is a compelling factor).  Plaintiffs and Lead Counsel consider their claims meritorious, but not without risk.  They have concluded that it is in the best interests of the Settlement Class to settle with the Settling Defendants after considering the following factors:  (1) the immediate benefits provided for the Settlement Class; (2) the risks and uncertainties of complex litigation, and the doubts about MBI's ability to continue as a going concern; (3) the expense and length of time necessary to prosecute the Action through trial and appeal; and (4) the challenges asserted by and available to the Settling Defendants that could substantially reduce the claimed damages, including challenges to loss causation, traceability and class certification.

### 3.    The Partial Settlement Has No Obvious Deficiencies and Falls Within the Range for Approval.

"[A]t this preliminary approval stage, the court need only 'determine whether the proposed settlement is within the range of possible approval.'"  *West*, 2006 WL 1652598, at \*11

---

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
MASTER FILE No. 2:14-cv-2571-MCE-KJN

1    (quotation omitted); *Wright*, 259 F.R.D. at 472; *see also* J. Moore, et al., *Moore's Federal*

2    *Practice* ¶ 23.8102-1, at 23-479 (2d ed. 1993).  Under the proposed Settlement, the Individual

3    Defendants, through MBI's insurance carriers, will pay $12 million, which is a highly beneficial

4    result for the Settlement Class and well within the range of possible final approval.

5          The proposed cash Settlement, which constitutes more than 13% of the maximum

6    estimated class-wide damages of $86 million, represents a percentage of recovery well above

7    the median percentage of investor losses recovered in judicially approved securities class action

8    settlements.  *See Omni Vision*, 559 F. Supp. 2d at 1042 (approving 6% recovery of maximum

9    damages); *In re Heritage Bond Litig.*, No. 02ML1475, 2005 WL 1594403, at *8-9 (C.D. Cal.

10   June 10, 2005) (noting that average recovery in similar cases is between 2% to 3% of maximum

11   damages); Cornerstone Research, *Securities Class Action Settlements: 2015 Review and*

12   *Analysis* 13 (2016) (median settlement as a percentage of "estimated" damages is 3.2% in

13   securities actions with both Section 11 and Section 10(b) claims).  *See also Officers for Justice*

14   *v. Civil Serv. Comm'n*, 688 F.2d 615, 628 (9th Cir. 1982) ("It is well-settled law that a cash

15   settlement amounting to only a fraction of the potential recovery will not per se render the

16   settlement inadequate or unfair"); *Knight v. Red Door Salons, Inc.,* No. 08-0520, 2009 WL

17   248367, at *3 (N.D. Cal. Feb. 2, 2009) ("The immediacy and certainty of the settlement award

18   justifies a recovery smaller than the Class Members could seek in the case").

19         Indeed, given MBI's current share price ($0.68 as of May 24, 2016), and total

20   outstanding shares of common stock (24.584 million), the $12 million cash recovery for the

21   Class represents nearly 73% of the Company's total market capitalization of $16.72 million.  It

22   represents nearly all available insurance proceeds.  And, because the Company is in dire

23   financial straits and may face a potential bankruptcy filing, an immediate and substantial cash

24   payment is the only opportunity for a meaningful recovery on behalf of the Settlement Class.

25   The $12 million settlement is, in other words, eminently reasonable.

26

27

28

1

### 4.    The Risk, Expense and Complexity of the Action Support Preliminarily Approving the Settlement.

2

3    The fairness of the Settlement is further underscored when considering the obstacles the

4    Settlement Class faced in succeeding on the merits, as well as the expense and likely duration of

5    the litigation. *See Churchill Village, LLC v. GE*, 361 F.3d 566, 576 (9th Cir. 2004). Although

6    Plaintiffs believe that their claims are meritorious, a substantial risk existed that the Settling

7    Defendants would derail class certification, prevail in whole or in part at summary judgment, or

8    ultimately succeed at trial.[4]  The Partial Settlement will confer an immediate benefit to the

9    Partial Settlement Class and eliminate the risk of continued litigation as to the Settling

10   Defendants under circumstances where a favorable outcome against such defendants is far from

11   certain, which uncertainty is magnified by MBI's perilous financial position. *Torrisi v. Tucson

12   Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993) (finding that defendant's precarious

13   financial position was factor that "predominate[d]" to render settlement reasonable, where

14   failure to settle might have tipped defendant into bankruptcy); *In re Mego Fin. Corp. Sec. Litig.*,

15   213 F.3d 454, 463 (9th Cir. 2000) (affirming approval of settlement because "[c]omplex

16   litigation is inherently uncertain and Plaintiffs would have had much difficulty proving

17   scienter"); *see also Knight*, 2009 WL 248367, at *3 (acknowledging that settlement agreement

18   which offered an immediate and certain award for the Class was a superior alternative to

19   continued litigation in light of the risks to recovery).

### 5.    The Proceedings Are Sufficiently Advanced to Permit Preliminary Approval of the Partial Settlement.

20

21   Plaintiffs, through Lead Counsel, are thoroughly familiar with the factual and legal

22   issues in this case.  Plaintiffs and the Settling Defendants presented comprehensive submissions

23   in connection with the Mediation.  The Settling Parties' respective positions on liability and

24   damages were explored in great detail before the Mediator, a nationally renowned expert in

25   ───────────────

[4] Even if Plaintiffs were to prevail at trial, risks to the Settlement Class would remain.  For example, the

26   Settling Defendants might initiate a lengthy and costly appeal process to challenge the verdict.

Moreover, any verdict returned by a jury would be subject to the presiding judge's evaluation and, as

27   such, could be overturned. *See, e.g.*, *In re Apollo Group, Inc. Sec. Litig.*, No. CV 04-2147-PHX, 2008

WL 3072731, at *6 (D. Ariz. Aug. 4, 2008) (overturning trial verdict because there was insufficient

28   evidence at trial to prove loss causation).

alternate dispute resolution who routinely mediates complex securities fraud class actions.  In addition, Plaintiffs prepared and filed the 97-page Second Amended Complaint and the proposed 117-page Third Amended Complaint, after extensive factual investigation and legal research.  As a result, Lead Counsel is thoroughly familiar with the facts of the case and has had ample opportunity to assess the strengths and weaknesses of the claims in which to appraise the sufficiency of the settlement.  *See, e.g.*, *Athale v. Sinotech Energy Ltd.*, No. 11-CV-05831, slip op. (S.D.N.Y. Sept. 4, 2013) (approving partial settlement of securities class action before answer filed or motion to dismiss resolved).  In all events, however, the timing of the settlement is eminently reasonable given the doubts about MBI's ability to continue as a going concern (and Lead Counsel's ability to secure any recovery whatsoever for Plaintiffs and the Settlement Class as the litigation dragged on).

**B.      Certification Of The Settlement Class Is Appropriate**

**1.      The Proposed Partial Settlement Class Meets the Prerequisites for Class Certification Under Rule 23**

The Ninth Circuit has long recognized that class actions may be certified for the purpose of settlement only.  *Hanlon*, 150 F.3d at 1019.  Rule 23(a) sets forth the following four prerequisites to class certification:  (i) numerosity, (ii) commonality, (iii) typicality, and (iv) adequacy of representation.  In addition, the class must meet one of the three requirements of Rule 23(b).  *See* Fed. R. Civ. P. 23; *In re UTStarcom, Inc. Sec. Litig.*, No. C006- 4908, 2010 WL 1945737, at *3 (N.D. Cal. May 12, 2010) (citing *Hanlon*, 150 F.3d at 1019).  The Settlement Class is defined as

> all persons or entities who or which (i) purchased or otherwise acquired MBI securities directly in or traceable to the Company's August 1, 2013 initial public offering pursuant to MBI's Form S-1 Registration Statement, dated July 1, 2013, and its Prospectus, dated August 1, 2013, and were damaged thereby; (ii) purchased or otherwise acquired MBI securities directly in or traceable to the Company's secondary offering pursuant to MBI's Form S-1 Registration Statement, dated May 16, 2014, and its Prospectus dated June 5, 2014, and were damaged thereby; and (iii) purchased or otherwise acquired MBII securities on the open market between

August 1, 2013 and November 10, 2015, inclusive, and were damaged thereby.[5]

Courts routinely endorse the use of the class action device to resolve claims brought pursuant to the federal securities laws. *See, e.g.*, *Hodges v. Akeena Solar Inc.*, 274 F.R.D 259, 266 (N.D. Cal. 2011); *In re Cooper Cos. Inc. Sec. Litig.*, 254 F.R.D. 628, 642 (C.D. Cal. 2009). "[C]lass actions commonly arise in securities fraud cases as the claims of separate investors are often too small to justify individual lawsuits, making class actions the only efficient deterrent against securities fraud. Accordingly, the Ninth Circuit . . . hold[s] a liberal view of class actions in securities litigation." *In re Adobe Sys., Inc. Sec. Litig.*, 139 F.R.D. 150, 152-53 (N.D. Cal. 1991) (citations omitted); *see also Cooper*, 254 F.R.D. at 642 ("The availability of the class action to redress such frauds has been consistently upheld, in large part because of the substantial role that the deterrent effect of class actions plays in accomplishing the objectives of the securities laws." (quoting *Blackie* v. *Barrack*, 524 F.2d 891, 903 (9th Cir. 1975))). This Action is no exception, and the proposed Partial Settlement Class satisfies each of the requirements of Rules 23(a) and 23(b)(3).

### (a) Numerosity

Rule 23(a)(1) requires that the class be so numerous that joinder of all class members is impracticable. The Ninth Circuit has long stated that "impracticability does not mean impossibility, but only the difficulty or inconvenience of joining all members of the class." *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F. 2d 909, 913-14 (9th Cir. 1964) (quotation and marks omitted). Indeed, classes consisting of only 25 members have been held to be large enough to justify certification. *See Perez-Funez v. Dist. Director, Immigration & Naturalization Serv.*, 611 F. Supp. 990, 995 (C.D. Cal. 1984); *see also Welling v. Alexy*, 155 F.R.D. 654, 656 (N.D. Cal. 1994) (no set number cut-off for numerosity). Additionally, the exact size of the class need not be known so long as general knowledge and common sense

---

[5] The Settlement Class definition excludes the following: (1) Defendants; (2) members of the Immediate Family of each of the Individual Defendants; (3) the Officers and/or directors of MBII during the Settlement Class Period; (4) any firm, trust, corporation, or other entity in which any Defendant has or had a controlling interest; and (5) any persons or entities that exclude themselves by submitting a request for exclusion that is accepted by the Court as valid.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
MASTER FILE No. 2:14-cv-2571-MCE-KJN

-13-

indicate that the class is large.  *Schwartz v. Harp*, 108 F.R.D. 279, 281-282 (C.D. Cal. 1985) ("A failure to state the exact number in the proposed class does not defeat class certification, and plaintiff's allegations plainly suffice to meet the numerosity requirement of Rule 23.").

MBI's common stock traded on the NASDAQ, with more than 24 million shares of outstanding during the Class Period.  The proposed Settlement Class consists of hundreds or thousands of investors who purchased these securities during the Class Period.  *See Akeena Solar,* 274 F.R.D. at 266 (citing *Sullivan v. Chase Inv. Servs., Inc.*, 79 F.R.D. 246, 257 (N.D. Cal. 1978)).   A class of this size is sufficiently numerous to make individual joinder impracticable.  *See UTStarcom*, 2010 WL 1945737, at *4; *Yamner v. Boich,* No. C-92-20597 RPA, 1994 WL 514035, at *3 (N.D. Cal. Sept. 15, 1994).  Accordingly, the numerosity element is satisfied.

**(b)     Commonality**

Rule 23(a)(2) is satisfied where the proposed class representatives share at least one question of fact or law with the claims of the prospective class.  *Wehner v. Syntex Corp.*, 715 F.R.D. 641, 644 (N.D. Cal. 1987).  Further, commonality exists even if there are varying fact situations among individual members of the class so long as the claims of the plaintiffs and other class members are based on the same legal or remedial theory.  *Blackie*, 524 F.2d at 902.

The common questions of fact and law include:  (i) whether Defendants violated the federal securities laws; (ii) whether Defendants misstated and/or omitted to state material facts in public statements and filings with the SEC; (iii) whether Defendants participated directly or indirectly in the course of misconduct; (iv) whether Defendants knew or recklessly disregarded that their statements were false and misleading; (v) whether the Settlement Class suffered damages as a result of Defendants' misrepresentations; and (vi) whether the price of MBI shares was artificially inflated.  These types of issues routinely satisfy the commonality requirement. *See UTStarcom*, 2010 WL 1945737, at *4 (finding common questions of law and fact as to whether "Defendants engaged in a fraudulent scheme and omitted or misrepresented material facts," whether the "publicly traded securities were artificially inflated," and whether "Defendants' omissions caused class members to suffer economic losses"); *In re VeriSign, Inc.*

1 | *Sec. Litig.*, No. C 02-02270-JW, 2005 U.S. Dist. LEXIS 10438, at *32 (N.D. Cal. Jan. 13, 2005)
2 | ("Here, the issues common to the class -- namely, the nature and extent of Defendants' alleged
3 | misrepresentations and the like -- are predominant.").

4 |       Securities actions containing common questions such as the ones listed above are
5 | consistently held to be prime candidates for class certification.  Simply put, because the core
6 | complaint of all Settlement Class Members is that they purchased shares of MBI pursuant to
7 | false and misleading statements of fact in MBI's publicly filed financial statements and were
8 | damaged thereby, the commonality requirement of Rule 23(a)(2) is satisfied.

9 |          **(c)**     **Typicality**

10 |       The typicality requirement of Rule 23(a)(3) is satisfied when the claims or defenses of
11 | the party or parties representing the class are typical of the claims or defenses of the other class
12 | members.  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997) (common-issues test
13 | readily met in securities cases).  Differences in the amount of damage, the size or manner of
14 | purchase, the nature of the purchaser, and the date of purchase are insufficient to defeat class
15 | certification.  *See Alfus v. Pyramid Tech. Corp.*, 764 F. Supp. 598, 606 (N.D. Cal. 1991).  In
16 | other words, typicality exists "even where factual distinctions exist between the claims of the
17 | named representative and the other class members."  *Danis v. USN Commc'n, Inc.*, 189 F.R.D.
18 | 391, 395 (N.D. Ill. 1999); *see also West*, 2006 WL 1652598, at *5.

19 |       Plaintiffs' claims arise from the same events or course of conduct that give rise to the
20 | claims of other Settlement Class Members, and the claims asserted are based on the same legal
21 | theories.  *See UTStarcom*, 2010 WL 1945737, at *5 (question is "whether 'other members have
22 | the same or similar injury, whether the action is based on conduct which is not unique to the
23 | named plaintiffs, and whether other class members have been injured by the same course of
24 | conduct" (quoting *Hanon v. Dataproducts Corp.*, 976 F. 2d 497, 508 (9th Cir. 1992))).  Indeed,
25 | this case satisfies the Rule 23(a)(3) typicality requirement because the claims of all Proposed
26 | Settlement Class Members derive from the same legal theories and allege the same set of
27 | operative facts.  Plaintiffs, like the other Settlement Class Members, purchased MBI shares in
28 | the same manner, *i.e.*, Defendants' false and misleading statements and omissions artificially

inflated the price of MBI's shares and rendered MBI's publicly filed financial statements false and misleading.  *See, e.g.*, *VeriSign*, 2005 U.S. Dist. LEXIS 10438, at *32 ("Here, the issues common to the class -- namely, the nature and extent of Defendants' alleged misrepresentations and the like -- are predominant."); *In re Emulex Corp., Sec. Litig.*, 210 F.R.D. 717 (C.D. Cal. 2002).  Additionally, Plaintiffs are not subject to any unique defenses that make them atypical of Settlement Class Members.  Accordingly, this Court should find that Plaintiffs' claims are typical of the claims of the Settlement Class.  *See Akeena Solar*, 274 F.R.D. at 266-67; *Cooper*, 254 F.R.D. at 635-36.

**(d)    Adequacy**

The representative parties must satisfy Rule 23(a)'s adequacy requirement by showing that they will fairly and adequately protect the interests of the Settlement Class.  To satisfy this requirement in the Ninth Circuit, all that is required is that the proposed class representative must be free of interests that are antagonistic to the other members of the class, and counsel representing the class must be qualified, experienced and capable of conducting the litigation. *See Lerwill v. Inflight Motion Pictures, Inc.*, 582 F. 2d 507, 512 (9th Cir. 1978); *Hanlon*, 150 F.3d at 1020.

As described above, Plaintiffs possess claims that are typical of and coextensive with those of the Settlement Class.  Plaintiffs, like all Settlement Class Members, purchased MBI shares at artificially inflated prices as a result of Defendants' alleged materially false and misleading statements and omissions of material fact.  Further, Plaintiffs have retained counsel highly experienced in securities class action litigation and who have successfully prosecuted many securities and other complex actions.[6]  Thus, Plaintiffs are adequate representatives of the Settlement Class, and Lead Counsel (as has already been demonstrated by the Court's decision to approve them as such) is qualified, experienced and capable of prosecuting this Action, in satisfaction of Rule 23(a)(4).

---

[6] *See* Docket No. 17-6 in Case No. 14-cv-2055-MCE-KJN (firm resume).

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
MASTER FILE No. 2:14-cv-2571-MCE-KJN

-16-

### 2. Common Questions Of Law Predominate And A Class Action Is the Superior Method Of Adjudication, Satisfying Rule 23(b)(3).

In addition to meeting the prerequisites of Rule 23(a), this case also satisfies Rule 23(b)(3), which requires that the proposed class representative establish that common questions of law or fact predominate over individual questions, and that a class action is superior to other available methods of adjudication. *See Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S. Ct. 2179, 2184 (2011); *In re LDK Solar Sec. Litig.*, 255 F.R.D. 519, 525 (N.D. Cal. 2009); *Vathana v. EverBank*, No. C 0902338 RS, 2010 WL 934219, at *2 (N.D. Cal. Mar. 15, 2010) (noting that "subsection [23(b)(3)] encompasses 'those cases in which a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated . . .'" (quoting Fed. R. Civ. P. 23, 1966 advisory committee's note)).  The predominance test is "readily met" in securities fraud cases. *Amchem*, 521 U.S. at 624-25; *see also Cooper*, 254 F.R.D. at 632 ("As the Ninth Circuit has so aptly stated, securities fraud cases fit Rule23 'like a glove.'" (quotation omitted)).

The common questions of law and fact noted above clearly predominate over individual questions because the Settling Defendants' alleged conduct affected all Settlement Class Members in the same manner. *See, e.g.*, *Cooper*, 254 F.R.D. at 632 ("The common questions of whether misrepresentations were made and whether Defendants had the requisite scienter predominate over any individual questions of reliance and damages.").  The commonality inquiry is directed primarily at the issue of liability, *see Blackie*, 524 F.2d at 902, and issues relating to Defendants' liability are common to all members of the proposed Settlement Class. *Cooper*, 254 F.R.D. at 632*; see also Emulex*, 210 F.R.D. at 721 ("The predominant questions of law or fact at issue in this case are the alleged misrepresentation Defendants made during the Class Period and are common to the class.").

As is the case here, common questions generally predominate where "'many purchasers have been defrauded over time by similar misrepresentations, or by a common scheme to which alleged non-disclosures related.'" *Negrete v. Allianz Life Ins. Co. of N. Am.*, 238 F.R.D. 482, 492 (C.D. Cal. 2006) (quotation omitted).  MBI's misstatements during the Class Period

1   "affect[ed] [all] investors alike" and proof of falsity, materiality, scienter, and causation will "be

2   made on a class-wide basis." *Schleicher v. Wendt*, 618 F.3d 679, 685, 687 (7th Cir. 2010);

3   *Cooper*, 254 F.R.D. at 641.  Accordingly, common questions of law and fact predominate.  *See*

4   *Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d

5   1152, 1162 (9th Cir. 2001) (class treatment is justified "[w]hen common questions present a

6   significant aspect of the case and they can be resolved for all members of the class in a single

7   adjudication").

8          Regarding superiority, Rule 23(b)(3) sets forth the following non-exhaustive factors to

9   be considered in making a determination of whether class certification is the superior method of

10  litigation:  "(A) the class members' interests in individually controlling the prosecution . . . of

11  separate actions; (B) the extent and nature of any litigation concerning the controversy already

12  begun by . . . class members; (C) the desirability or undesirability of concentrating the litigation

13  of the claims in the particular forum; and (D) the likely difficulties in managing a class action."

14  *See* Fed. R. Civ. P. 23(b)(3).  Securities cases "easily satisfy the superiority requirement of Rule

15  23."  *See, e.g.*, *In re NYSE Specialists Sec. Litig.*, 260 F.R.D. 55, 80 (S.D.N.Y. 2009).  Class

16  certification is the only way to afford relief to those MBI investors whose claims are simply too

17  small to justify individual lawsuits.   Further, the nationwide geographical dispersion of

18  Settlement Class Members, due to the availability of MBI common stock on a national

19  exchange, makes a class action resolution superior to other methods for adjudication.  Because

20  individual litigation of each Settlement Class Member's claims would be highly inefficient and

21  impracticable, a class action is the superior means of adjudicating this action.[7]

22

23  ───────────────────────────

24  [7] Additionally, under Rule 23(g)(1) "a court that certifies a class must appoint class counsel."  Fed. R.
    Civ. P. 23(g)(1).  Lead Counsel Lowenstein Sandler LLP satisfies the requirements set forth in Rule
25  23(g) and should be appointed Class Counsel here.  Lowenstein Sandler LLP has fairly and vigorously
    represented the Settlement Class, having undertaken an exhaustive investigation, drafted comprehensive
26  complaints, and participated in a day-long Mediation, preceded by voluminous submissions and
    consultation with experts on loss causation and damages.  Lead Counsel is deeply knowledgeable about
27  the federal securities laws, has performed significant work in pursuing the Settlement Class's claims
    here, and has committed significant resources to representing the Settlement Class.  Fed. R. Civ. P.
28  23(g)(1)(A), (B).  Accordingly, Lead Counsel should be appointed Class Counsel.

IV.     **NOTICE TO THE SETTLEMENT CLASS SHOULD BE APPROVED**

As outlined in the agreed-upon form of proposed Preliminary Approval Order (Exhibit B to the Notice of Motion), if the Court grants preliminary approval, the Claims Administrator will mail the Notice and Proof of Claim Form (Exhibits 1 and 2 to the Preliminary Approval Order) to Settlement Class Members who can be identified with reasonable effort, including through shareholder transfer records provided by MBI containing the names and addresses of record holders who purchased MBI common stock during the Settlement Class Period.[8]   The Claims Administrator will also utilize a proprietary list of the largest and most common U.S. banks, brokerage firms, and nominees that purchase securities on behalf of beneficial owners to facilitate the dissemination of notice.   Additionally, Lead Counsel will cause the Summary Notice (Exhibit 3 to the Preliminary Approval Order) to be published in *The Wall Street Journal* and transmitted over the *PR Newswire*.   The Claims Administrator will also make the Notice, Summary Notice, and other settlement-related documents available to all Settlement Class Members on the following website, created specifically for this settlement:

www.MBISecuritiesLitigationSettlement.com

The Notice will advise Settlement Class Members of the pendency of the Action, the essential terms of the Settlement, Lead Counsel's forthcoming application for attorneys' fees and reimbursement of Litigation Expenses,[9] and the proposed Plan of Allocation for distributing the Net Settlement Fund.   The Notice will further detail: (i) the procedures for objecting to the Settlement, the Plan of Allocation, or the request for attorneys' fees and Litigation Expenses; (ii) how Settlement Class Members can exclude themselves from (*i.e.*, opt out of) the Settlement Class; and (iii) the date, time, and location of the Settlement Hearing.

---

[8] Plaintiffs request that the Court approve retention of Garden City Group, LLC as the Claims Administrator for this Settlement.

[9] As explained in the Notice (Exhibit 1 to the Preliminary Approval Order), Lead Counsel will apply to the Court for an award of attorneys' fees to Plaintiffs' Counsel (in an amount not to exceed 25% of the Settlement Fund) and reimbursement of Litigation Expenses (in an amount not to exceed $450,000).   In accordance with the PSLRA, Lead Counsel's application for Litigation Expenses may include a request for reimbursement of the reasonable costs and expenses incurred by Lead Plaintiffs directly related to its representation of the Settlement Class.

1    Similar forms of notice are routinely approved as satisfying the requirements of due

2    process, Rule 23, and the PSLRA.  *E.g.*, *Wireless Facilities*, 2008 WL 4146126, at *6; *In re*

3    *Portal Software, Inc. Sec. Litig.*, No. C-03-5138 VRW, 2007 WL 1991529, at *7 (N.D. Cal.

4    June 30, 2007) (holding that "notice by mail and publication is the 'best notice practicable under

5    the circumstances,' as mandated by [Fed. R. Civ. P.] 23(c)(2)(B)"); *see also West*, 2006 WL

6    1652598, at *11 (settlement notice that explains to class members their options held to be more

7    than adequate).

8  **V.    CONCLUSION**

9    Based upon the foregoing reasons, Plaintiffs respectfully request that the Court grant the

10   requested relief.  The Settling Parties' agreed-upon form of proposed Preliminary Approval

11   Order, with exhibits, is attached to the accompanying Notice of Motion as Exhibit B.

12   Dated: May 25, 2016

13                                                     Respectfully Submitted,

14                                                     /s/ *Michael J. McGaughey*

15                                                     MICHAEL J. McGAUGHEY
                                                       **LOWENSTEIN SANDLER LLP**
16                                                     390 Lytton Avenue
                                                       Palo Alto, CA 94301
17                                                     Telephone: 213-426-2170
                                                       Fax: 973-597-6233
18                                                     E-mail: mmcgaughey@lowenstein.com

19
                                                       *Counsel for Lead Plaintiffs Special*
20                                                     *Situations Fund III QP, L.P. and Special*
                                                       *Situations Cayman Fund, L.P. and*
21                                                     *Additional Named Plaintiff David M.*
                                                       *Fineman, and Lead Counsel for the Class*
22

23   Appearance *pro hac vice*:
24   LAWRENCE M. ROLNICK
     STEVEN M. HECHT
25   THOMAS E. REDBURN, JR.
     **LOWENSTEIN SANDLER LLP**
26   1251 Avenue of the Americas
     New York, NY 10020
27
28        - and -

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
MASTER FILE No. 2:14-cv-2571-MCE-KJN

1

65 Livingston Avenue
Roseland, NJ 07068
Telephone: 646-414-6902
Fax: 973-597-2381
E-mail: lrolnick@lowenstein.com

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28