1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**LOWENSTEIN SANDLER LLP**
MICHAEL J. MCGAUGHEY (198617)
390 Lytton Avenue
Palo Alto, CA 94301
Telephone: 213-426-2170
Fax: 973-597-6233
mmcgaughey@lowenstein.com

*Counsel for Lead Plaintiffs Special Situations*
*Fund III QP, L.P. and Special Situations*
*Cayman Fund, L.P. and additional named*
*Plaintiff David M. Fineman*

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SPECIAL SITUATIONS FUND III QP, L.P., SPECIAL SITUATIONS CAYMAN FUND, L.P., and DAVID M. FINEMAN, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br><br> vs. <br><br> MARRONE BIO INNOVATIONS, INC., PAMELA G. MARRONE, JAMES B. BOYD, DONALD J. GLIDEWELL, HECTOR ABSI, ELIN MILLER, RANJEET BHATIA, PAMELA CONTAG, TIM FOGARTY, LAWRENCE HOUGH, JOSEPH HUDSON, LES LYMAN, RICHARD ROMINGER, SHAUGN STANLEY, SEAN SCHICKEDANZ, and ERNST & YOUNG LLP, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) Master No.: 2:14-cv-2571-MCE-KJN <br><br> Hon. Morrison C. England, Jr. <br><br> CONSOLIDATED CLASS ACTION <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LEAD PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION** <br><br> Date:   September 22, 2016 <br> Time:   2:00 p.m. <br> Place:  501 I Street, Courtroom 7 <br>            Sacramento, CA 95814 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF CONTENTS

**PAGES**

TABLE OF AUTHORITIES ................................................................................. ii

I.      INTRODUCTION ................................................................................ 1

II.     FACTUAL AND PROCEDURAL BACKGROUND ......................................... 2

    A.      The Litigation ........................................................................... 2

    B.      The Mediation And Settlement ..................................................... 5

III.    THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE, AND
       SHOULD BE APPROVED .................................................................... 6

    A.      The Settlement Satisfies The Ninth Circuit's Churchill Factors ............... 7

         1.      The Strength of Plaintiffs' Case Weighed Against the Risk, Expense,
             Complexity, and Likely Duration of Further Litigation ................. 8

         2.      The Risk of Maintaining Class Action Status Throughout the Lawsuit ....... 11

         3.      The Amount Offered in Settlement .............................................. 11

         4.      Extent of Discovery ................................................................ 12

         5.      The Experience and Views of Counsel .......................................... 13

         6.      The Reaction of the Settlement Class to the Proposed Settlement ............... 14

         7.      The Settlement Serves the Public Interest ..................................... 15

    B.      The Settlement Does Not Present Any Indicia Of Collusion ................... 16

IV.     THE PLAN OF ALLOCATION SHOULD BE APPROVED .......................... 17

V.      THE COURT-APPROVED NOTICE TO THE CLASS WAS THE BEST NOTICE
      PRACTICABLE UNDER THE CIRCUMSTANCES .................................... 19

VI.     CERTIFICATION OF THE SETTLEMENT CLASS REMAINS WARRANTED ......... 20

VII.    CONCLUSION .................................................................................. 20

1

2

## **TABLE OF AUTHORITIES**

3
**PAGES**

**CASES**

4

5
*Allen v. Bedolla*,
  787 F.3d 1218 (9th Cir. 2015) ..................................................................... 6

6
*Bateman Eichler, Hill Richards, Inc. v. Berner*,
7
  472 U.S. 299 (1985).................................................................................... 15

8
*In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*,
  909 F. Supp. 2d 259 (S.D.N.Y. 2012)........................................................ 10
9

10
*Bellinghausen v. Tractor Supply Co.*,
  306 F.R.D. 245 (N.D. Cal. 2015)...................................................... 7, 13, 17

11
*In re Bluetooth Headset Prods. Liab. Litig.*,
12
  654 F.3d 935 (9th Cir. 2011) ...................................................................... 16

13
*Booth v. Strategic Realty Trust, Inc.*,
14
  No. 13-cv-04921-JST, 2015 WL 6002919 (N.D. Cal. Oct. 15, 2015)................................... 10

15
*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001)........................................................................ 10
16

17
*Ching v. Siemens Indus., Inc.*,
  No. 11–cv–04838–MEJ, 2014 WL 2926210 (N.D. Cal. June 27, 2014).............................. 14

18
*Churchill Village, LLC v. Gen. Elec.*,
19
  361 F.3d 566 (9th Cir. 2004) ................................................................ 6, 7, 15

20
*Dennings v. Clearwire Corp.*,
21
  No. C10-1859 JLR, 2013 WL 1858797 (W.D. Wash. May 3, 2013), *aff'd*,
  2013 WL 1858797 (W.D. Wash. Sept. 9, 2013).................................................. 17

22
*Dura Pharm., Inc. v. Broudo*,
23
  544 U.S. 336 (2005).................................................................................... 10

24
*Dyer v. Wells Fargo Bank, N.A.*,
25
  303 F.R.D. 326 (N.D. Cal. 2014)............................................................... 12

26
*Garner v. State Farm Mut. Auto. Ins. Co.*,
  No. 08-cv-1365-CW, 2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) ................................. 8

27

28
*Gen. Tel. Co. of Sw. v. Falcon*,
  457 U.S. 147 (1982).................................................................................... 11

*In re Google Referrer Header Privacy Litig.*,
   87 F. Supp. 3d 1122 (N.D. Cal. 2015) .............................................................. 11

*Hanlon v. Chrylser Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ..................................................................... 7, 14

*In re Heritage Bond Litig.*,
   546 F.3d 667 (9th Cir. 2008) ........................................................................... 7

*Hildes v. Arthur Andersen LLP*,
   734 F.3d 854 (9th Cir. 2013) ......................................................................... 10

*J.I. Case Co. v. Borak*,
   377 U.S. 426 (1964) ...................................................................................... 15

*Larsen v. Trader Joe's Co.*,
   No. 11-cv-05188-WHO, 2014 WL 3404531 (N.D. Cal. July 11, 2014) ......................... 7, 14

*Linney v. Cellular Alaska P'ship*,
   151 F.3d 1234 (9th Cir. 1998) ....................................................................... 12

In re *Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000) ......................................................................... 12

*Nat'l Rural Telecomms Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004) .................................................................. 7, 14

*Nguyen v. Radient Pharm. Corp.*,
   No. 11-cv-00406, 2014 WL 1802293 (C.D. Cal. May 6, 2014) ................................. 17

*Officers for Justice v. Civil Serv. Comm'n of San Francisco*,
   688 F.2d 615 (9th Cir. 1982) ........................................................................... 7

*In re OmniVision Techs., Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2008) .............................................. 8, 12, 14, 15

*In re OmniVision Techs., Inc.*,
   No. 04-2297, 2007 WL 4293467 (N.D. Cal. Dec. 6, 2007) ................................. 17, 18

*In re Oracle Sec. Litig.*,
   No. 90-0931, 1994 WL 502054 (N.D. Cal. June 18, 1994) .................................... 18

*In re Pac. Enters. Sec. Litig.*,
   47 F.3d 373 (9th Cir. 1995) ............................................................................. 7

*In re PaineWebber Ltd. P'ships Litig.*,
   171 F.R.D. 104 (S.D.N.Y.), *aff'd*, 117 F.3d 721 (2d Cir. 1997) .............................. 17

*In re Portal Software, Inc. Sec. Litig.*,
   No. C-03-5138 VRW, 2007 WL 1991529 (N.D. Cal. June 30, 2007) .................................. 20

*Rieckborn v. Velti PLC*,
   No. 13-cv-03889-WHO, 2015 WL 468329 (N.D. Cal. Feb. 3, 2015) ............................ 14, 16

*Rodriguez v. W. Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) ........................................................................................ 11, 14

*Spann v. J.C. Penney Corp.*,
   314 F.R.D. 312 (C.D. Cal. 2016) ........................................................................................ 19

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007) ............................................................................................................. 15

*Torrisi v. Tucson Elec. Power Co.*,
   8 F.3d 1370 (9th Cir. 1993) .................................................................................................... 9

*In re WorldCom, Inc. Sec. Litig.*,
   No. 02 CIV 3288 (DLC), 2004 WL 2591402 (S.D.N.Y. Nov. 12, 2004) ............................ 18

STATUTES

Private Securities Litigation Reform Act of 1995 ............................................................ 2, 19, 20

15 U.S.C. § 77k(e) ...................................................................................................................... 18

RULES

Fed. R. Civ. P. 23(c)(2) ............................................................................................................... 19

Fed. R. Civ. P. 23(e) ...................................................................................................................... 6

Fed. R. Civ. P. 23(e)(1) ............................................................................................................... 19

Fed. R. Civ. P. 23(e)(2) ............................................................................................................... 11

OTHER AUTHORITIES

4 Alba Conte & Herbert Newberg, *Newberg on Class Actions* (4th ed. 2002) ............................ 6

Cornerstone Research, *Securities Class Action Settlements: 2015 Review and
   Analysis* (2016) .................................................................................................................... 12

I.     **INTRODUCTION**

Lead Plaintiffs respectfully request that this Court grant final approval of the proposed Settlement of this securities class action (the "<u>Action</u>") with the MBI Defendants.[1]   As discussed below and detailed in the Hecht Declaration submitted herewith, the Settlement creates a common fund in the amount of $12 million for the benefit of the Settlement Class.[2] The Settlement is the product of Lead Plaintiffs' extensive investigation of federal securities claims against the MBI Defendants; vigorous prosecution of the litigation on the Class's behalf, including researching, drafting and filing multiple voluminous class action Complaints; and extensive mediation and negotiations before a nationally renowned and experienced mediator, Jed D. Melnick, Esq., of JAMS.   The Settlement provides a considerable benefit to the Settlement Class by conferring a substantial, certain and immediate recovery while avoiding the risks and expense of continued litigation, including the substantial risk to recovery resulting from MBI's precarious financial situation.   Indeed, the recovery is approximately 14% of the Class's $86 million in potential damages, well in excess of comparable Court-approved class action settlements.   After a fulsome, Court-approved Notice plan, to date no putative Settlement Class Member has objected to the Settlement.   The other relevant facts and conditions have not changed since the Court preliminarily approved the Settlement in July.   Accordingly, Lead Plaintiffs respectfully request that the Court grant final approval of the Settlement and Plan of Allocation, and affirm its Certification of the Settlement Class.

---

[1] All capitalized terms used herein that are not otherwise defined shall have the meanings ascribed to them in the Stipulation and Agreement of Settlement, dated June 16, 2016 (the "<u>Stipulation</u>").

[2] As certified by the Court in the July 7, 2016 Order Preliminarily Approving Proposed Settlement and Providing for Notice (the "<u>Preliminary Approval Order</u>") (ECF No. 87), the "Settlement Class" consists of all persons or entities who or which (i) purchased or otherwise acquired MBI securities directly in or traceable to the Company's August 1, 2013 initial public offering pursuant to MBI's Form S-1 Registration Statement, dated July 1, 2013, and its Prospectus, dated August 1, 2013, and were damaged thereby; (ii) purchased or otherwise acquired MBI securities directly in or traceable to the Company's secondary offering pursuant to MBI's Form S-1 Registration Statement, dated May 16, 2014, and its Prospectus dated June 5, 2014, and were damaged thereby; and (iii) purchased or otherwise acquired MBI securities on the open market between August 1, 2013 and November 10, 2015, inclusive, and were damaged thereby.   Defendants and certain related persons and entities are excluded from the definition of the Settlement Class.   Also excluded are any persons and entities that exclude themselves by submitting a request for exclusion that is accepted by the Court as valid.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR FINAL APPROVAL OF SETTLEMENT
MASTER FILE No. 2:14-cv-2571-MCE-KJN
-1-

## II.     FACTUAL AND PROCEDURAL BACKGROUND

This case concerns allegations of a systematic and pervasive revenue recognition and accounting fraud at Defendant MBI.  In a nutshell, Lead Plaintiffs allege that undisclosed sales terms, offered to induce MBI's customers to take delivery of more and more product, caused every financial statement issued by MBI during the Settlement Class Period to be false and misleading and not in compliance with generally accepted accounting principles ("GAAP").  The Hecht Declaration, filed alongside this memorandum, sets forth in detail the relevant factual and procedural background of the Action and the mediation and negotiations which led to the Settlement.  A summary of the Action is provided below.

### A.     The Litigation

On September 3, 2014, MBI, a developer and manufacturer of bio-based pesticides, announced that certain of its publicly filed financial statements were false when issued, could no longer be relied upon, and that the Company's Audit Committee was undertaking an investigation of revenue recognition issues.  (Hecht Decl. ¶ 12.)  Thereafter, five putative securities fraud class actions were filed in this District against MBI and certain of its directors and officers, including the Funds' initial complaint filed on November 3, 2014.  The Funds then filed one of several competing lead plaintiff motions pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA").  (*Id.* ¶ 15.)  On February 13, 2015, the Court granted the Funds' motion, consolidating all pending MBI-related securities class actions into this one, and appointing the Funds as Lead Plaintiffs and approving the Funds' selection of Lowenstein Sandler as Lead Counsel.  (*Id.*)

Pursuant to a series of so ordered stipulations (*e.g.*, ECF Nos. 33, 41), Lead Plaintiffs and the MBI Defendants agreed to defer the date upon which Lead Plaintiffs would file an operative, consolidated complaint until after the Company's Audit Committee announced the results of its Financial Statement Review.  (*See* Hecht Decl. ¶ 16.)  On September 2, 2015, however, and after further extensive factual investigation, legal research and drafting, Lead Plaintiffs and additional named Plaintiff David M. Fineman filed a First Amended Complaint, to preserve certain Securities Act claims from expiring under applicable statutes of limitations.

(*Id.* ¶ 17-18.)   The First Amended Complaint named, in additional to the MBI Defendants, MBI's independent auditor, Ernst & Young LLP ("EY"), as a Defendant.  (*Id.* ¶ 17.)  The strict liability Securities Act claim against EY is not being resolved by virtue of the Settlement, and if the Settlement is approved, EY will be the only Defendant remaining in the Action.

On November 10, 2015, MBI announced the results of the Audit Committee's Financial Statement Review, and amended and restated each of the financial statements the Company had previously filed publicly with the SEC.  (*Id.* ¶ 19.)  In light of this announcement, and pursuant to a so ordered Stipulation, Lead Plaintiffs filed and served their Second Amended Complaint on January 11, 2016.  (*Id.* ¶ 19.)  This pleading alleged the following causes of action against the MBI Defendants:   violations of Sections 11 and 15 of the Securities Act for false and misleading statements of fact in MBI's August 2013 Registration Statement, by which MBI initially sold shares to the public; violations of Sections 11 and 15 of the Securities Act against the MBI Defendants for false and misleading statements of fact in MBI's June 2014 Registration Statement, by which MBI sold additional shares directly to the public; and violations of Sections 10(b) and 20(a) of the Exchange Act for all MBI securities purchased or otherwise acquired on the open market between March 26, 2014 and November 10, 2015, inclusive. (Hecht Decl. ¶¶ 17, 19.)

In total, the Second Amended Complaint contained nearly 100 pages of detailed allegations reflecting the facts gleaned from, and legal theories behind, Lead Counsel's exhaustive investigation.  (*Id.* ¶ 21.)  The Second Amended Complaint incorporated nearly 200 new paragraphs of factual allegations, which described in great detail MBI's purported accounting fraud and the material misstatements in and omissions from MBI's financial statements.   These additional allegations were the product of Lead Plaintiffs' and Lead Counsel's ongoing review and analysis of publicly available sources, as well as meetings with and interviews of numerous witnesses, many of whom were former MBI employees with intimate knowledge of the Company, its products, and its accounting and revenue recognition practices.  (*Id.* ¶¶ 19-20.)  Statements from two confidential witnesses were included in the

Second Amended Complaint; those witnesses provided allegations concerning the efficacy of MBI's commercial products and the intimate details of MBI's revenue recognition and reporting fraud, allegedly orchestrated by MBI's former head of sales and Chief Operating Officer, Defendant Hector Absi ("Absi").  (*Id.* ¶ 20.)

One day after Plaintiffs filed the Second Amended Complaint, MBI entered into a consent decree with the SEC to settle the Commission's as-yet-filed lawsuit against the Company.  (Hecht Decl. ¶ 22.)  Shortly thereafter, the SEC filed suit against MBI and Absi for securities violations.  Meanwhile, the U.S. Attorney unsealed a sixteen-count indictment against Absi, charging him with, *inter alia*, securities fraud, which lead to Absi's arrest by the FBI.  The SEC's lawsuit against MBI was settled, pursuant to the Company's signed consent, for a $1.75 million civil fine.  (*See id.* ¶ 23.)

The SEC's complaint and Absi's indictment, along with other documents filed in connection with the government's investigation of the Company, revealed information that corroborated and expanded upon Lead Plaintiffs' already extensive fraud allegations.   In particular, those documents disclosed that the fraudulent scheme started as early as March 2013, far earlier than Lead Plaintiffs originally alleged and indeed months before MBI went public in August 2013.  (Hecht Decl. ¶¶ 24-25.)  In light of these newly uncovered facts, Lead Counsel drafted a proposed Third Amended Complaint, and drafted and filed papers in support of a motion for leave to amend pursuant to Federal Rule of Civil Procedure 15(a).  (*Id.* ¶ 27.) Defendant EY opposed (ECF No. 60), and after further briefing, the Court rejected EY's arguments and granted Lead Plaintiffs leave to file a Third Amended Complaint, which Lead Plaintiffs filed on June 1, 2016.  (Hecht Decl. ¶ 28.)

The Third Amended Complaint -- which totaled 117 pages and more than 475 paragraphs -- alleged the same Securities Act and Exchange Act causes of action as the Second Amended Complaint, but added scores of new allegations incorporated from the documents filed by the SEC and DOJ.  (*Id.* ¶¶ 29-30.)  Furthermore, the Third Amended Complaint lengthened the Section 10(b) class period so that it would begin on August 1, 2013, the day

MBI went public (*id.* ¶ 25), and alleged partial corrective disclosures of MBI's purported fraud on the following five days:  August 7, 2014, September 3, 2014, November 17, 2014, May 18, 2015, and November 10, 2015, the last day of the Settlement Class Period.  (*Id.* ¶ 29.)

### B.      The Mediation And Settlement

Due in part to the conduct outlined in the Third Amended Complaint, MBI is struggling financially.  Its auditor has issued a "going concern" opinion and, according to its annual report for 2015, the Company may run out of cash or violate certain debt covenants by the end of this year.  (Hecht Decl. ¶ 31.)

Driven in part by concerns over the Company's tenuous financial position, and in part by the strength of Lead Plaintiffs' claims, Lead Plaintiffs and the MBI Defendants began a dialogue concerning possible early resolution of the claims against the MBI Defendants. Accordingly, on April 4, 2016, counsel for the Settling Parties participated in an in-person mediation (the "Mediation") before Jed D. Melnick, Esq. (the "Mediator"), of JAMS.  (*Id.* ¶ 32.) In advance of that session, the parties prepared extensive confidential mediation statements and exhibits that addressed issues of liability, damages and collectability.  (*Id.*)  At the Mediation, Lead Counsel and counsel for the MBI Defendants made detailed presentations in joint and break-out sessions with the mediator, vigorously arguing the strengths of their respective cases. In connection with the Mediation, Lead Plaintiffs engaged a financial expert to advise on issues of loss causation and class-wide damages.  According to the expert's damages findings, total estimated potential class-wide damages in this case were $86 million.  (*Id.* ¶ 32 and Ex. A.)

As a result of the Mediation, the Settling Parties reached an agreement in principle on the material terms of the Settlement, including the cash payment of $12 million from the MBI Defendants' insurance carriers for the benefit of the Settlement Class.  (*Id.* ¶ 34.)  The $12 million cash payment represents substantially all of the Individual Defendants' available $15 million director's and officer's ("D&O") insurance policy, after accounting for attorneys' fees that have been and will be incurred by the MBI Defendants' counsel.  This recovery constitutes nearly all available cash proceeds, as the Company has little unrestricted cash with which it could fund any potential settlement.  According to the Mediator, a nationally renowned

authority in dispute resolution who has successfully mediated over 1,000 cases, including scores of complex securities actions, the negotiations preceding the Settlement were vigorous and arm's-length, and the Settlement is fair and reasonable.  (*See* Declaration of Jed D. Melnick, Esq. (attached as Exhibit B to the Hecht Declaration) at ¶¶ 8-9.)

Having reached an agreement in principle on the Settlement's material terms, the parties -- with continued oversight and guidance from the Mediator -- thereafter negotiated and executed their Stipulation of Settlement.  (Hecht Decl. ¶ 35.)  The Stipulation was submitted to the Court on June 16, 2016, in connection with Lead Plaintiffs' motion for preliminary approval.  (*Id.*; ECF No. 80-1.)  On June 24, 2016, Lead Plaintiffs filed a supplemental submission along with a revised Notice, which incorporated certain amendments proposed by EY regarding certain issues which were relevant to the continued litigation against EY.  (ECF No. 82.)  The revised Notice did not affect the material terms of the Settlement, and was filed with the MBI Defendants' consent.  On July 7, 2016, the Court preliminarily approved the Settlement, certified the Settlement Class, appointed Lead Plaintiffs as class representatives, appointed Lead Counsel as Class counsel, and directed that notice be provided to the Settlement Class.  (ECF No. 87.)  As described in Exhibit C to the Hecht Declaration, the Court-approved claims administrator Garden City Group, LLC ("GCG") has satisfied all of the requirements of the Preliminary Approval Order.  Pursuant to Paragraph 27 of the Order, Lead Plaintiffs now move for final approval of the Settlement.

III.    **THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE, AND SHOULD BE APPROVED**

The Ninth Circuit recognizes the "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned."  *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015); *see also Churchill Village, LLC v. Gen. Elec.*, 361 F.3d 566, 576 (9th Cir. 2004).  "[T]he law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation."  4 Alba Conte & Herbert Newberg, *Newberg on Class Actions* § 11.41 (4th ed. 2002).  Pursuant to Rule 23(e), a court should approve a class action settlement if it is fair, reasonable, and

adequate.  *In re Heritage Bond Litig.*, 546 F.3d 667, 674-75 (9th Cir. 2008).  Although courts have discretion in determining whether to approve a proposed settlement, they should not substitute their judgment for that of the parties who negotiated the proposed settlement.  *See In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995) ("Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation.").  In other words, "unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results."  *Larsen v. Trader Joe's Co*., No. 11-cv-05188-WHO, 2014 WL 3404531, at *4 (N.D. Cal. July 11, 2014).

## A.   The Settlement Satisfies The Ninth Circuit's *Churchill* Factors

To determine whether a proposed settlement meets the standard for final approval, courts in the Ninth Circuit look to the following factors:  (1) the strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant[3]; and (8) the reaction of the class members to the proposed settlement.  *See Churchill*, 361 F.3d at 575 (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).  "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case."  *Officers for Justice v. Civil Serv. Comm'n of San Francisco*, 688 F.2d 615, 625 (9th Cir.

---

[3] There is no government actor participating in this litigation.  In such situations, courts find that this consideration is inapplicable.  *Nat'l Telecomms Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004).  The relevant governmental officials were notified of the settlement pursuant to the notice provision of the Class Action Fairness Act ("CAFA").  "Although CAFA does not create an affirmative duty for either state or federal officials to take any action in response to a class action settlement, [it] presumes that, once put on notice, state or federal officials will raise any concerns that they may have during the normal course of the class action settlement procedures."  *See Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 258 (N.D. Cal. 2015).  Lead Counsel is not aware of any state or federal official who has raised an objection or concern regarding the Settlement.  Thus, even if considered, this factor weighs in favor of settlement.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR FINAL APPROVAL OF SETTLEMENT
MASTER FILE No. 2:14-cv-2571-MCE-KJN
-7-

1982).  An analysis of these factors reinforces the Court's preliminary fairness determination and demonstrates that the Settlement should be approved.

> ### 1.   The Strength of Plaintiffs' Case Weighed Against the Risk, Expense, Complexity, and Likely Duration of Further Litigation

Although Lead Plaintiffs and Lead Counsel believe that the Securities Act and Exchange Act claims asserted against the MBI Defendants in the Action are meritorious, continued litigation against those Defendants poses significant risks that make any recovery uncertain.  A court must consider "the risk of continued litigation balanced against the certainty and immediacy of recovery from the Settlement."  *In re OmniVision Techs., Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2008).  Indeed, in the present context the Court "may presume that through negotiation, the Parties, counsel, and mediator arrived at a reasonable range of settlement by considering Plaintiff's likelihood of recovery."  *Garner v. State Farm Mut. Auto. Ins. Co.*, No. 08-cv-1365-CW, 2010 WL 1687832, at *9 (N.D. Cal. Apr. 22, 2010).

Most pressing here are the very real risks to recovering a judgment or settlement later in litigation that is larger than the Settlement Amount, or indeed for any meaningful amount at all, in light of MBI's poor financial condition and limited D&O liability insurance.  In the Company's Annual Report, filed on Form 10-K with the SEC on March 30, 2016, its auditor issued a "going concern" opinion, meaning that there is substantial doubt about MBI's ability to comply with its debt covenants and otherwise continue as going concern.  (Hecht Decl. ¶¶ 38-40.)  The Company's current market capitalization is approximately $34 million, and its stock may well be delisted from the NASDAQ Global Market.  (*See id.* ¶ 39.)

Accordingly, the only significant source for a cash recovery was the Company's limited D&O insurance coverage, which is a wasting asset that was already being depleted by defense costs in this and other related litigation.  Indeed, had the Action proceeded into discovery, this insurance would have been substantially exhausted by the summary judgment stage, let alone trial (or possible appeal).  Instead of risking the loss of available insurance (the only realistic asset available to the Settlement Class), Lead Plaintiffs achieved an immediate and substantial

recovery for the Settlement Class in the form of the $12 million Settlement -- effectively all of the available insurance proceeds -- without the considerable risk, expense and delay of continued litigation.  This is stellar result.  *See, e.g.*, *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993) (finding that defendant's precarious financial position was factor that "predominate[d]" to render settlement reasonable, where failure to settle might have caused bankruptcy).

In addition to this nearly dispositive ability-to-pay issue, there were substantial challenges to the merits of Lead Plaintiffs' case, which made any recovery -- let alone one greater than $12 million -- uncertain.  If the case against the MBI Defendants had not settled, the MBI Defendants would have vigorously contested issues of liability, loss causation and damages.  Lead Plaintiffs would have no guarantee of success on any or all of these issues at any stage of the litigation, up to and including trial.

As set forth in detail in the Hecht Declaration, the MBI Defendants would have challenged numerous factual and legal issues throughout the course of litigation.  For instance, scienter is an element of Lead Plaintiffs' claim under Section 10(b) of the Exchange Act.  Even if Lead Plaintiffs were able to prove that Absi committed intentional fraud, the MBI Defendants would have likely argued that Absi's fraud could not be imputed to the Company itself.  The MBI Defendants would have also likely argued that to the extent Absi committed fraud, he only did so for his benefit, and not the Company's.  Failing to prove scienter as to some or all Defendants would have dramatically reduced the Settlement Class's potential recovery. Moreover, the MBI Defendants would also have argued that certain accounting mistatements, like the false statements in the quarterly financials that serve as the basis for the IPO Securities Act claim and as part of the Exchange Act claim, were not material.  If this argument was successful, the MBI Defendants would not have been liable for those false statements.

The MBI Defendants would have also likely argued that Lead Plaintiffs would be unable to carry their burden under Section 10(b) of proving loss causation and, relatedly, that the MBI Defendants could carry their burden of proving their "negative causation" affirmative defense to

the Securities Act claims.[4]  The MBI Defendants would have argued that non-fraud factors --

like environmental conditions affecting the agricultural market, or Absi's resignation and

poaching of MBI's sales force -- were the true cause of the decline in MBI's stock price in

2014, and not the misstatements and fraud alleged in the Third Amended Complaint.  Moreover,

a jury would have to decide this issue based on expert testimony, and when a case "turns on

winning a so-called 'battle of experts,' victory is by no means assured."  *In re Bear Stearns*

*Cos., Inc. Sec., Derivative, & ERISA Litig.*, 909 F. Supp. 2d 259, 267 (S.D.N.Y. 2012); *see also*

*In re Cendant Corp. Litig.*, 264 F.3d 201, 239 (3d Cir. 2001) ("[E]stablishing damages at trial

would lead to a 'battle of experts' . . . with no guarantee whom the jury would believe.").

> Had any of the MBI Defendants' arguments been accepted in whole or part, it would

have eliminated or significantly reduced any potential recovery for the Settlement Class.

Further, Lead Plaintiffs would have had to prevail at several stages, including class certification,

summary judgment, trial and, even if Lead Plaintiffs were successful at every step of the way,

again on the appeals that were likely to follow.  The Settlement eliminates these litigation risks

and guarantees a substantial and immediate cash recovery of $12 million for the Settlement

Class, as opposed to the risk of potentially no recovery after further litigation, trial and appeal.

*Booth v. Strategic Realty Trust, Inc.*, No. 13-cv-04921-JST, 2015 WL 6002919, at *5 (N.D. Cal.

Oct. 15, 2015) ("This factor supports final approval of the settlement because if the parties did

not settle, Plaintiffs would have to proceed through class certification, summary judgment, and

trial.").  Barring a settlement now, this case will likely be litigated over the course of many

years, with no guarantee that the end result will be any better than a $12 million cash recovery.

Indeed, the result will likely be much worse, as the only realistically available source of

recovery -- D&O insurance -- is depleted.  In these circumstances, an immediate $12 million

recovery is eminently "reasonable."

---

[4] Loss causation is an element of a plaintiff's Section 10(b) claim, *see Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 345–46 (2005).  Under Section 11, however, the burden falls on the defendant to disprove (or "negate") loss causation.  *See Hildes v. Arthur Andersen LLP*, 734 F.3d 854, 861 (9th Cir. 2013).

### 2. The Risk of Maintaining Class Action Status Throughout the Lawsuit

This factor weighs heavily in favor of approving the Settlement as well. Lead Plaintiffs have defined, and the Court has certified, a Settlement Class that runs from August 1, 2013 to November 10, 2015, a period of time which spans two public offerings of stock and five alleged partial corrective disclosures. Were Lead Plaintiffs to seek certification of this class in the course of litigation, there is little doubt that the MBI Defendants would have challenged both the length of the proposed class period and the corrective disclosures included therein, imperiling the Class's potential damages. Moreover, even if the Court ultimately certified a class, that decision would not have been set in stone and could have been revisited, amended or reversed as new facts emerged or the law changed. *See In re Google Referrer Header Privacy Litig.*, 87 F. Supp. 3d 1122, 1131–32 (N.D. Cal. 2015) ("Although a class can be certified for settlement purposes, the notion that a district court could decertify a class at any time is an inescapable and weighty risk that weighs in favor of a settlement."); *see also Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982) (class certification orders are "inherently tentative").

### 3. The Amount Offered in Settlement

The $12 million cash settlement is an excellent recovery for the Settlement Class. The general standard by which courts are guided when deciding whether to grant final approval of a settlement is whether the proposed settlement falls within the range of what could be found "fair, adequate, and reasonable." Fed. R. Civ. P. 23(e)(2). Courts do not assess the fairness, adequacy and reasonableness of the amount offered to settle a case by applying any one "particular formula." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009). Rather, the analysis is "nothing more than an amalgam of delicate balancing, gross approximations, and rough justice." *Id.* (internal quotations omitted).

There is little doubt that an immediate $12 million cash payment to the Settlement Class is "fair, adequate, and reasonable." This Settlement Fund represents an average, per-share gross recovery of approximately 14% of estimated, "best case" damages. (Hecht Decl. ¶ 33.) After deducting Lead Plaintiffs' requested attorneys' fees and reimbursing the litigation expenses

incurred by Lead Counsel, the net Settlement Fund is still approximately 10% of estimated potential damages.  (*See id.*)  This Settlement is well within the percentage range of the recoveries approved in the Ninth Circuit.  *See, e.g.*, *OmniVision*, 559 F. Supp. 2d at 1042 (approving as adequate a gross recovery of 9% of possible damages, noting that such recovery was higher than the median percentage of recoveries in shareholder class action settlements). Indeed, in Cornerstone Research's most recent analysis of securities class action settlements, the nationally recognized consultancy found that the median recovery in securities actions, like this one, with both Section 11 and Section 10(b) claims is 3.2% of "estimated" damages.  *See* Cornerstone Research, *Securities Class Action Settlements: 2015 Review and Analysis* 13 (2016).

The instant settlement is more than four times greater than that median amount. Moreover, as explained above, it is the Settlement Class's best (perhaps last) chance at any substantial monetary recovery.  And, if the Court or a jury had credited one or more of the MBI Defendants' arguments concerning liability or damages during the course of litigation, the Settlement Class's recoverable damages would have been markedly reduced.  Accordingly, the $12 million cash payment offered in the settlement favors approval.

### 4.     Extent of Discovery

This factor does not focus on "discovery" per se, but instead is concerned with whether "the parties have sufficient information to make an informed decision about settlement." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998).  The Settling Parties resolved the Claims against the MBI Defendants before any formal discovery or significant motion practice took place.  "However, in the context of class action settlements, formal discovery is not a necessary ticket to the bargaining table." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (internal quotations and alterations omitted).  The key inquiry is instead whether the parties had sufficient information to make an informed decision about settlement, *see Dyer v. Wells Fargo Bank, N.A.*, 303 F.R.D. 326, 332 (N.D. Cal. 2014), even where, as here, the parties decide to settle relatively early in litigation.  *Mego*, 213 F.3d at 459.

1    There is little doubt that Lead Plaintiffs and Lead Counsel had sufficient information to

2    evaluate the strengths and weaknesses of an early resolution, and reasonably determined that

3    such a resolution was in the best interests of the Settlement Class.  As detailed in the Hecht

4    Declaration, Lead Counsel (on behalf of Lead Plaintiffs) conducted an extensive, years-long

5    investigation into the relevant facts and governing law.  *See Bellinghausen*, 306 F.R.D. at 257

6    ("[T]he court's focus is on whether the parties carefully investigated the claims before reaching

7    a resolution . . . ." (internal quotations omitted)).   Lead Counsel drafted and filed four class

8    actions complaints, each with greater volume and complexity than the last; developed

9    allegations from percipient witnesses; successfully moved for leave to amend; and worked

10   extensively with a damages expert to evaluate potential damages and the strengths and

11   weaknesses of Lead Plaintiffs' loss causation case.  (Hecht Decl. ¶¶ 17, 19, 28-29, 33.)  The

12   Action was only resolved after the parties engaged in mediation with Jed D. Melnick, a

13   nationally renowned mediator who oversaw the Mediation and the Parties' ultimate agreement

14   to settle the claims against the MBI Defendants for $12 million.  Prior to mediation, "the parties

15   prepared and exchanged detailed mediation statements and voluminous case-related materials

16   addressing the facts, law applicable to the case, [and an] analysis of potential damages . . . ."

17   (Melnick Decl. ¶¶ 5, 8.)   The Mediation supplemented Lead Plaintiffs' and Lead Counsel's

18   already thorough knowledge of the facts underlying the claims against the MBI Defendants, and

19   crystalized for Lead Plaintiffs that it was not worth it to put the Settlement Class's substantial

20   and immediate settlement on the line to chase a potentially larger judgment after years of

21   uncertain litigation.   MBI's inability to fund any settlement or judgment independent of

22   (dwindling) insurance proceeds and poor financial condition throw this conclusion into stark

23   relief.  Because Lead Plaintiffs and Lead Counsel were well informed of the risks to liability,

24   damages and recoverability inherent in further litigation against the MBI Defendants when they

25   decided to settle, they this factor favors approval.

26          **5.      The Experience and Views of Counsel**

27          "The Ninth Circuit recognizes that 'parties represented by competent counsel are better

28   positioned than courts to produce a settlement that fairly reflects each party's expected outcome

1   in litigation.'" *Rieckborn v. Velti PLC*, No. 13-cv-03889-WHO, 2015 WL 468329, at *6 (N.D.

2   Cal. Feb. 3, 2015) (quoting *Rodriguez*, 563 F.3d at 967). "A district court is entitled to give

3   consideration to the opinion of competent counsel that the settlement is fair, reasonable, and

4   adequate." *Ching v. Siemens Indus., Inc.*, No. 11–cv–04838–MEJ, 2014 WL 2926210, at *5

5   (N.D. Cal. June 27, 2014) (internal quotations omitted); *see also Larsen*, 2014 WL 3404531, at

6   *5 ("The opinions of counsel should be given considerable weight both because of counsel's

7   familiarity with this litigation and previous experience with cases."); *Nat'l Rural Telecomms.*,

8   221 F.R.D. at 528 (according "great weight" to the recommendation of counsel "closely

9   acquainted with the facts of the underlying litigation").

10          Here, Lead Plaintiffs are represented by counsel with extensive experience litigating

11   complex securities actions; the Settlement was the result of robust, arm's-length negotiations;

12   and the parties, on the advice of experienced counsel, understood the strengths and weaknesses

13   of the claims and defenses, and the risks to any potential recovery, before agreeing to the

14   Settlement's material terms.  (Hecht Decl. ¶¶ 31-36; *see also* biographies of members of Lead

15   Counsel, attached Exhibit 1 to the Rolnick Declaration, which is attached as Exhibit D to the

16   Hecht Declaration.)   Because the Settlement was reached with the involvement and on the

17   advice of fully informed, seasoned securities counsel, it "should be given a presumption of

18   reasonableness." *OmniVision*, 559 F. Supp. 2d at 1043 (quotations omitted).

19                **6.    The Reaction of the Settlement Class to the Proposed
                          Settlement**

20

21          "[T]he absence of a large number of objections to a proposed class action settlement

22   raises a strong presumption that the terms of a proposed class settlement action are favorable

23   . . . ." *Larsen*, 2014 WL 3404531, at *5 (quoting *Nat'l Rural Telecomms*, 221 F.R.D. at 529).

24   "A court may appropriately infer that a class action settlement is fair, adequate, and reasonable

25   when few class members object to it." *Id.* (internal quotation marks omitted); *see also Hanlon*,

26   150 F.3d at 1027 ("[T]he fact that the overwhelming majority of the class . . . stayed in the class

27   presents at least some objective positive commentary as to [the settlement's] fairness.").

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR FINAL APPROVAL OF SETTLEMENT
MASTER FILE No. 2:14-cv-2571-MCE-KJN
                                    -14-

In accordance with the Preliminary Approval Order (ECF No. 87), the Court-approved Claims Administrator, GCG, began mailing copies of the Notice and Claim Form to potential Settlement Class members and their nominees on July 19, 2016.  (*See* GCG Decl. (attached to the Hecht Decl. as Ex. C) ¶ 6.)  As of August 23, 2016, GCG had disseminated a total of 12,501 Notices to potential members of the Settlement Class and nominees.  (*Id*. ¶¶ 6-7.)  In addition, the Summary Notice was published in *The Wall Street Journal* and transmitted over *PR Newswire* on July 21, 2016, and the Notice and related settlement documents are available on the website specifically created for the Settlement.  (*Id*. ¶¶ 8-10.)

The Notice contains, among other things, a description of the Action and the Settlement, and information about shareholders' right to:  (i) participate in the Settlement by submitting a Claim Form, (ii) object to the Settlement, the Plan of Allocation, or the motion for attorneys' fees and expenses, or (iii) exclude themselves from the Settlement Class.  Thus far, no objections or requests for exclusion have been received.  (Hecht Decl. ¶ 62; GCG Decl. ¶ 12.) Accordingly, the Settlement Class's reaction to date also supports approving the Settlement. *See OmniVision*, 559 F. Supp. 2d at 1043 (approving settlement in part because "[a]fter receiving notice . . . , the Class in this suit has been nearly silent").

## 7.   The Settlement Serves the Public Interest

In addition to satisfying the *Churchill* factors, the Settlement advances the public interest.  The Supreme Court emphasizes that private securities actions like this one are an "an essential supplement to criminal prosecutions and civil enforcement actions" brought by the SEC.  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007); *accord Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) (private securities actions provide "'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action'" (quoting *J.I. Case Co. v. Borak*, 377 U.S. 426, 432 (1964))).  The Settlement furthers that policy by creating a substantial and (perhaps more important) immediate recovery for a large, nationwide Settlement Class of MBI stockholders. Furthermore, the Settlement advances judicial efficiency and streamlines this lawsuit by resolving all of the claims in the Action except the strict liability claim pending against EY.

In sum, all relevant factors -- including the risk, expense and delay inherent in further litigation, the MBI Defendants' real and pressing ability to pay concerns, and Lead Plaintiffs' and Lead Counsel's robust understanding of the case's strengths and weakness -- support the finding that the Settlement is fair, reasonable and adequate, and should be approved.

### B.      The Settlement Does Not Present Any Indicia Of Collusion

"Because this settlement was reached prior to certification of the class, [the Court] must examine the settlement for evidence of collusion with a higher level of scrutiny." *Velti*, 2015 WL 468329, at *8.   Signs of collusion include:  (1) counsel receiving "a disproportionate distribution of the settlement fund"; (2) the parties negotiating "a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds"; and (3) the parties arranging "for fees not awarded to revert to defendants rather than be added to the class fund." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011).  None of these factors is even hinted at here.

*First*, the Settlement provides for a cash payment of $12 million, which represents approximately 14% of total estimated damages.  Lead Counsel seeks an award of $3,000,000 in fees, or 25% of the settlement fund, the "benchmark" for a reasonable fee.  *Id.* at 942.   In addition, Lead Plaintiffs request reimbursement of approximately $436,000 in expenses (which includes $170,000 in settlement administration costs).   Subtracting these amounts from the settlement fund, the Settlement Class will be left with more than double what Lead Counsel will receive.   There is no windfall to Lead Counsel that might indicate collusion.[5]  *Second*, the Settling Parties have not negotiated a "clear sailing provision."   *Third*, the Settlement Agreement provides that unclaimed funds will be redistributed to participating class members until the balance remaining in the Settlement Fund is *de minimis*.  (ECF No. 80-1 at ¶ 7.6.)  The Settlement does not provide that any unclaimed funds will revert to MBI or the other Settling Defendants, or to MBI's insurance providers, but rather that *de minimis* unclaimed funds will be

---

[5]  Indeed, even after deducting for fees and reimbursed costs, the approximately $8.56 million Net Settlement Fund (plus interest) represents approximately 10% of the Settlement Class's estimated damages, well above the average net recovery in similar, court-approved securities settlements.

1  contributed to a non-sectarian, non-profit organization to be recommend by Lead Counsel and

2  approved by the Court.  (Exhibit A to GCG Decl. at ¶ 81.)  Further, the Settlement is the product

3  of arm's-length negotiations by experienced counsel aided by a nationally renowned mediator.

4  This negatives any suggestion of collusion.  *Dennings v. Clearwire Corp.*, No. C10-1859 JLR,

5  2013 WL 1858797, at *8 (W.D. Wash. May 3, 2013) (no collusion where settlement was the

6  product of arm's length mediation led by "respected mediator"), *aff'd*, 2013 WL 1858797 (W.D.

7  Wash. Sept. 9, 2013); *Bellinghausen*, 306 F.R.D. at 259 (no collusion where class members

8  were offered a fair and adequate benefit and dispute was resolved using experienced neutral).

9  **IV.    THE PLAN OF ALLOCATION SHOULD BE APPROVED**

10  "Approval of a plan of allocation of settlement proceeds . . . is governed by the same

11  standards of review applicable to approval of the settlement as a whole:  the plan must be fair,

12  reasonable and adequate[.]"  *In re OmniVision Techs., Inc.*, No. 04-2297, 2007 WL 4293467, at

13  *7 (N.D. Cal. Dec. 6, 2007) (quotations and marks omitted).  A plan of allocation need not be

14  tailored such that it fits each potential class member with "mathematical precision."  *In re*

15  *PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 133 (S.D.N.Y.), *aff'd*, 117 F.3d 721 (2d Cir.

16  1997).  Rather, courts "recognize that an allocation formula need only have a reasonable,

17  rational basis, particularly if recommended by experienced and competent counsel."  *Nguyen v.*

18  *Radient Pharm. Corp.*, No. 11-cv-00406, 2014 WL 1802293, at *5 (C.D. Cal. May 6, 2014).

19  Lead Plaintiffs' proposed Plan of Allocation, set forth in detail in the Notice

20  disseminated to potential Settlement Class members (*see* GCG Decl. Ex. A) and at ¶¶ 55-61 of

21  the Hecht Declaration, is a fair and reasonable method to distribute the proceeds of the

22  Settlement ratably to all Settlement Class members.  Lead Counsel developed the Plan of

23  Allocation with the assistance of their damages expert.  (Hecht Decl. ¶ 56.)  It provides for

24  equitable distribution of the Settlement's net proceeds to those Settlement Class members who

25  submit valid Claim Forms approved by the Court for payment.  The $12 million Settlement

26  Fund is divided into three funds based upon (i) the type of MBI common stock -- IPO,

27  Secondary Offering, or open market -- that was the subject of the claims asserted in the Action,

28  and (ii) whether those claims were asserted pursuant to either the Securities Act (the IPO and

Secondary Offering Section 11 claims) or the Exchange Act (the Section 10(b) claim). Working with their damages expert, Lead Plaintiffs and Lead Counsel allocated a specific percentage of the overall Settlement Fund to each discrete sub-fund based on, *inter alia*, the total number of damaged MBI shares entitled to recover under each theory; the likelihood that negative causation or other loss causation issues could reduce recovery; the statutory measure of damages under the Securities Act, 15 U.S.C. § 77k(e); and the amount of artificial inflation removed from MBI's common stock over the course of the Settlement Class period.  Class Members who submit valid claims are eligible to receive their *pro rata* share from one or more of the three funds based upon the timing of their purchases, sales and calculated amount of claims.  (Hecht Decl. ¶¶ 57-61.)

Naturally, as is typical, some Settlement Class members may recover greater amounts from the Settlement than others.  But this is a fair and reasonable result, and there exists no rule that a settlement must benefit all Settlement Class members equally to be approved.  Indeed, "[i]t is reasonable to allocate the settlement funds to class members based on the extent of their injuries or the strength of their claims on the merits."  *OmniVision*, 2007 WL 4293467, at *7 (quotations and marks omitted); *see also In re Oracle Sec. Litig.*, No. 90-0931, 1994 WL 502054, at *1 (N.D. Cal. June 18, 1994) ("A plan of allocation that reimburses class members based on the extent of their injuries is generally reasonable.").  Here, the separate settlement funds and plan to allocate those funds to Settlement Class members are based predominantly upon the timing of Class Member's purchases and sales and the differences between a Securities Act and Exchange Act claim -- the former is strict liability and is governed by a statutory measure of damages, while the latter requires proof of intent and compensates damages equal to the fraud-based inflation that is removed from a stock's price through corrective disclosures. This is a perfectly reasonable and commonly used way to divvy up the proceeds of the Settlement. *See In re WorldCom, Inc. Sec. Litig.*, No. 02 CIV 3288 (DLC), 2004 WL 2591402, at *7, *23 (S.D.N.Y. Nov. 12, 2004) (approving plan that distinguished between Securities and Exchange Act claims, and differentiated on the basis of the timing of purchases).

1    Lead Plaintiffs and Lead Counsel believe that the proposed Plan of Allocation provides

2    a fair and reasonable method to equitably allocate the Net Settlement Fund among Settlement

3    Class Members who suffered losses as result of the conduct alleged in the Action.  Moreover, as

4    of August 23, 2016, 12,501 copies of the Notice, which contains the Plan of Allocation and

5    advises Settlement Class Members of their right to object to it, have been sent to potential

6    Settlement Class Members and their nominees.  (*See* GCG Decl. ¶¶ 6-8.)  To date, no objections

7    to the proposed Plan of Allocation have been received.  (*Id.* ¶ 12.)

8    **V.     THE COURT-APPROVED NOTICE TO THE CLASS WAS THE BEST
           NOTICE PRACTICABLE UNDER THE CIRCUMSTANCES**

9
     Lead Plaintiffs' Court-approved Notice plan to potential members of the Settlement

10   Class satisfies Rule 23(c)(2), which requires only "the best notice that is practicable under the

11   circumstances, including individual notice to all members who can be identified through

12   reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  The Notice also satisfies Rule 23(e)(1), which

13   requires that notice of a settlement be "reasonable," meaning that "[t]he notice should provide

14   sufficient information to allow class members to decide whether they should accept the benefits

15   of the settlement, opt out and pursue their own remedies, or object to its terms."  *Spann v. J.C.*

16   *Penney Corp.*, 314 F.R.D. 312, 330 (C.D. Cal. 2016).

17   The Notice contains the information required by Rule 23(c)(2)(B) and the PSLRA, 15

18   U.S.C. § 78u-4(a)(7), including:  (i) an explanation of the nature of the Action and the claims

19   asserted; (ii) the definition of the Settlement Class; (iii) a description of the basic terms of the

20   Settlement, including the amount of the consideration and the releases to be given; (iv) the Plan

21   of Allocation; (v) an explanation of the reasons why the parties are proposing the Settlement;

22   (vi) a statement indicating the attorneys' fees and expenses that will be sought; (vii) a

23   description of Settlement Class Members' right to request exclusion from the Settlement Class

24   or to object to the Settlement, the Plan of Allocation, or the requested attorneys' fees or

25   expenses; and (viii) notice of the binding effect of a judgment on Settlement Class Members.

26   (*See* Notice (Ex. A to the GCG Decl.).)  The Notice also explains how to submit a Claim Form

27   in order to be potentially eligible to receive a distribution from the Net Settlement Fund.

28

1    In accordance with the Preliminary Approval Order, as of August 23, 2016, GCG has

2 mailed 12,501 copies of the Notice Packet by First-Class Mail to potential Settlement Class

3 Members and nominees.  (*See* GCG Decl. ¶¶ 6-7.)  GCG also caused the Summary Notice to be

4 published on July 21, 2016.  (*Id.* ¶ 8.)  In addition, GCG established on or about July 14, 2016 a

5 website dedicated to the Settlement to provide potential Settlement Class Members with

6 information about the Settlement and the applicable deadlines, as well as access to copies of the

7 Notice (including the Plan of Allocation), Claim Form, Stipulation, Preliminary Approval Order

8 and Third Amended Complaint.  (*Id.* ¶ 10.)  This combination of individual mail to all members

9 of the Settlement Class who could be identified with reasonable effort, supplemented by notice

10 in appropriate, widely-circulated publications, and set forth on a dedicated website, was "the

11 best notice . . . practicable under the circumstances" and satisfies the requirements of due

12 process, Rule 23, and the PSLRA.  *See In re Portal Software, Inc. Sec. Litig.*, No. C-03-5138

13 VRW, 2007 WL 1991529, at *7 (N.D. Cal. June 30, 2007) (confirming that similar notice plan

14 was the "best notice practicable under the circumstances").

15 **VI.    CERTIFICATION OF THE SETTLEMENT CLASS REMAINS**
   **WARRANTED**

16
17    The Court's July 7, 2016 Preliminary Approval Order certified the Settlement Class for

18 Settlement purposes only, pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil

Procedure.  (ECF No. 87.)  Nothing has changed to alter the propriety of certification for

19 Settlement purposes and, for all the reasons stated in Lead Plaintiffs' Preliminary Approval

20 Brief (ECF No. 81), Lead Plaintiffs respectfully request that the Court affirm its determinations

21 in the Preliminary Approval Order certifying the Settlement Class.

22 **VII.   CONCLUSION**

23    For all the foregoing reasons, Lead Plaintiffs respectfully request that the Court grant

24 their motion, approve the Settlement with the MBI Defendants, and enter the proposed Final

25 Judgment.

26 Dated: August 25, 2016                    Respectfully Submitted,

27                                           */s/ Michael J. McGaughey*

28                                           MICHAEL J. McGAUGHEY

**LOWENSTEIN SANDLER LLP**
390 Lytton Avenue
Palo Alto, CA 94301
Telephone: 213-426-2170
Fax: 973-597-6233
E-mail: mmcgaughey@lowenstein.com

*Counsel for Lead Plaintiffs Special*
*Situations Fund III QP, L.P. and Special*
*Situations Cayman Fund, L.P. and*
*Additional Named Plaintiff David M.*
*Fineman, and Lead Counsel for the Class*

Appearance *pro hac vice*:
LAWRENCE M. ROLNICK
STEVEN M. HECHT
THOMAS E. REDBURN, JR.
**LOWENSTEIN SANDLER LLP**
1251 Avenue of the Americas
New York, NY 10020

          - and -

65 Livingston Avenue
Roseland, NJ 07068
Telephone: 646-414-6902
Fax: 973-597-2381
E-mail: lrolnick@lowenstein.com