**LOWENSTEIN SANDLER LLP**
MICHAEL J. MCGAUGHEY (198617)
390 Lytton Avenue
Palo Alto, CA 94301
Telephone: 213-426-2170
Fax: 973-597-6233
mmcgaughey@lowenstein.com

*Counsel for Lead Plaintiffs Special Situations*
    *Fund III QP, L.P. and Special Situations*
    *Cayman Fund, L.P. and additional named*
    *Plaintiff David M. Fineman*

### UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SPECIAL SITUATIONS FUND III QP, L.P., SPECIAL SITUATIONS CAYMAN FUND, L.P, and DAVID M. FINEMAN, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br><br> vs. <br><br> MARRONE BIO INNOVATIONS, INC., PAMELA G. MARRONE, JAMES B. BOYD, DONALD J. GLIDEWELL, HECTOR ABSI, ELIN MILLER, RANJEET BHATIA, PAMELA CONTAG, TIM FOGARTY, LAWRENCE HOUGH, JOSEPH HUDSON, LES LYMAN, RICHARD ROMINGER, SHAUGN STANLEY, SEAN SCHICKEDANZ, and ERNST & YOUNG LLP, <br><br> Defendants. | Master No.: 2:14-cv-2571-MCE-KJN <br><br> Hon. Morrison C. England, Jr. <br><br> CONSOLIDATED CLASS ACTION <br><br> **DECLARATION OF STEVEN M. HECHT IN SUPPORT OF (A) LEAD PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION, AND (B) LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES** <br><br> Date:  Thursday, September 22, 2016 <br> Time:  2:00 p.m. <br> Place: 501 I Street, Courtroom 7 <br>         Sacramento, CA 95814 |

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................1

II.   INVESTIGATION AND PROSECUTION OF THE ACTION ...................................4

    A.    Background ................................................................................4

    B.    Preparation And Filing Of The Initial Complaint ...............................................5

    C.    The Appointment Of The Funds As Lead Plaintiffs And The Announcement Of The Financial Statement Review ...........................................6

    D.    The Preparation And Filing Of The First Amended Complaint .........................6

    E.    The Preparation And Filing Of The Second Amended Complaint ....................7

    F.    The Motion For Leave To Amend And The Preparation And Filing Of The Third Amended Complaint ..............................................................8

    G.    The Negotiation And Preliminary Approval Of The Settlement ......................11

III.   THE RISKS OF CONTINUED LITIGATION .............................................................13

    A.    Risks Of Obtaining A Greater Recovery, Or Any Recovery At All .................13

    B.    Risks Of Establishing Liability And Damages ..................................14

    C.    Other Risks ................................................................................16

IV.   LEAD PLAINTIFFS' COMPLIANCE WITH THE COURT'S PRELIMINARY APPROVAL ORDER REQUIRING ISSUANCE OF NOITCE ..................................16

V.    ALLOCATION OF THE SETTLEMENT PROCEEDS ............................................18

VI.   THE FEE AND LITIGATION EXPENSE APPLICATION ......................................22

    A.    The Fee Application ..............................................................................22

    B.    The Litigation Expense Application .....................................................26

VII.  CONCLUSION ................................................................................28

HECHT DECLARATION IN SUPPORT OF
MOTION FOR FINAL APPROVAL AND AN
AWARD OF ATTORNEYS' FEES AND EXPENSES
MASTER FILE NO. 2:14-cv-2571-MCE-KJN

-i-

## TABLE OF EXHIBITS TO DECLARATION

| EX. # | TITLE |
|-------|-------|
| A | Summary of Potential Estimated Damages Prepared by Lead Plaintiffs' Damages Expert |
| B | Declaration of Mediator Jed D. Melnick, Esq. in Support of Final Approval of Settlement with the MBI Defendants |
| C | Declaration of Jennifer M. Veitengruber Regarding Notice Dissemination and Publication |
| D | Declaration of Lawrence M. Rolnick in Support of Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses |

HECHT DECLARATION IN SUPPORT OF
MOTION FOR FINAL APPROVAL AND AN
AWARD OF ATTORNEYS' FEES AND EXPENSES
MASTER FILE NO. 2:14-cv-2571-MCE-KJN

-ii-

I, Steven M. Hecht, submit this declaration in support of the motion for final approval of the proposed Settlement and Plan of Allocation filed by Lead Plaintiffs Special Situations Fund III QP, L.P. ("Fund III") and Special Situations Cayman Fund, L.P. ("Cayman Fund") (collectively, "the Funds" or "Lead Plaintiffs"), and additional named Plaintiff David M. Fineman ("Fineman" and, with Lead Plaintiffs, "Plaintiffs"), and Lead Counsel's motion for an award of attorneys' fees and reimbursement of litigation expenses, and I hereby declare as follows[1]:

# I.   INTRODUCTION

1.   I am a partner in the law firm of Lowenstein Sandler LLP, counsel for Plaintiffs and the Court-approved Lead Counsel for the Class.  I have personal knowledge of the matters set forth herein based on my active supervision of and participation in the prosecution and settlement of the claims asserted in the Action.

2.   I respectfully submit this Declaration in support of Lead Plaintiffs' motion, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, for final approval of the proposed settlement (the "Settlement") that the Court preliminarily approved by its July 7, 2016 Order Preliminarily Approving Proposed Settlement with and Providing for Notice (the "Preliminary Approval Order") (ECF No. 87).  This Declaration sets forth how Lead Counsel and Lead Plaintiffs were able to achieve this highly favorable Settlement on behalf of the Settlement Class with Defendants Marrone Bio Innovations, Inc. ("MBI" or "the Company"), Pamela G. Marrone, James B. Boyd, Donald J. Glidewell, Hector Absi, Elin Miller, Tim Fogarty, Richard Rominger, Shaugn Stanley, Ranjeet Bhatia, Lawrence Hough, Joseph Hudson, Sean Schickendanz, Pamela Contag, and Les Lyman (collectively, the "Individual Defendants," with MBI, the "Settling Defendants," and with Plaintiffs, the "Settling Parties").   I also respectfully submit this Declaration in support of:  (i) Lead Plaintiffs' motion for approval of the proposed plan for allocating the proceeds of the Net Settlement Fund to eligible Settlement

---

[1] When not defined herein, capitalized terms are used as defined in the Stipulation and Agreement of Settlement dated June 16, 2016 (the "Stipulation") (ECF No. 80-1).

HECHT DECLARATION IN SUPPORT OF
MOTION FOR FINAL APPROVAL AND AN
AWARD OF ATTORNEYS' FEES AND EXPENSES
MASTER FILE NO. 2:14-cv-2571-MCE-KJN

1    Class Members (the "Plan of Allocation"); and (ii) Lead Counsel's motion for an award of

2    attorneys' fees in the amount of 25% of the Settlement Fund, and reimbursement of litigation

3    expenses in the amount of $436,879.91.[2]

4           3.    The proposed Settlement provides for the resolution of all claims against the

5    MBI Defendants in exchange for a cash payment of $12,000,000.[3]  As detailed herein, Lead

6    Plaintiffs and Lead Counsel respectfully submit that the Settlement represents a very favorable

7    result for the Settlement Class in light of the significant risks to recovery in the Action.  As

8    explained further below, the Settlement provides a considerable benefit to the Settlement Class

9    by conferring a substantial, certain and immediate recovery while avoiding the significant risks

10   and expense of continued litigation, including the risk that the Settlement Class could recover

11   substantially less than the Settlement Amount after years of additional litigation and delay, and

12   the substantial risk to recovery resulting from MBI's poor financial situation.

13          4.    The proposed Settlement is the result of extensive efforts by Lead Counsel,

14   which included, among other things detailed herein:   (i) conducting a wide-ranging

15   investigation of MBI and the misrepresentations and omissions made during the period from

16   August 1, 2013 to November 10, 2015, inclusive (the "Settlement Class Period" or "Class

17   Period"), principally concerning MBI's allegedly falsified product revenues; (ii) drafting an

18   initial complaint, filed with the Court on November 3, 2014 (ECF No. 1); (iii) drafting a

19   Consolidated Amended Complaint (the "First Amended Complaint"), filed with the Court on

20   September 1, 2015 (ECF No. 35); (iv) drafting a Second Consolidated Amended Complaint (the

21    

---

[2] In conjunction with this Declaration, Lead Plaintiffs and Lead Counsel, respectively, are also

22   submitting a Memorandum of Points and Authorities in Support of Lead Plaintiffs' Motion for
     Final Approval of Class Action Settlement and Plan of Allocation (the "Settlement

23   Memorandum") and the Memorandum of Points and Authorities in Support of Lead Counsel's
     Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses (the "Fee

24   Memorandum").

25   [3] The strict liability claim against Defendant Ernst & Young LLP ("EY" or the "Non-Settling

26   Defendant") under Section 11 of the Securities Act of 1933 is not being resolved in the
     Settlement.  Should the Court approve the Settlement, the only Defendant left in this case will

27   be EY.

28   HECHT DECLARATION IN SUPPORT OF
     MOTION FOR FINAL APPROVAL AND AN
     AWARD OF ATTORNEYS' FEES AND EXPENSES
     MASTER FILE NO. 2:14-cv-2571-MCE-KJN

"Second Amended Complaint"), filed with the Court on January 11, 2016 (ECF No. 44); (v) researching and drafting a Motion for Leave to Amend the Second Amended Complaint (the "Motion for Leave to Amend"), filed with the Court on March 15, 2016 (ECF No. 57); drafting a Third Consolidated Amended Complaint (the "Third Amended Complaint" or "Complaint"), filed with the Court on June 1, 2016 (ECF No. 76); (vi) consulting with economic and damages experts and consultants; (vii) preparing a detailed damages analysis; (xiii) researching and drafting detailed mediation submissions; and (ix) negotiating with the Settling Defendants on an arm's-length basis both directly and through a mediator to resolve the Action.

5.     Lead Plaintiffs and Lead Counsel believe that the Settlement is in the best interests of the Settlement Class.  Due to their efforts described in the foregoing paragraph, Lead Plaintiffs and Lead Counsel are well informed of the strengths and weaknesses of the claims and defenses in the Action, and they believe the Settlement represents a highly favorable outcome for the Settlement Class.

6.     As discussed in further detail below, the Plan of Allocation was developed with the assistance of Lead Plaintiffs' damages expert, and provides for the distribution of the Net Settlement Fund to Settlement Class Members who submit Claim Forms that are approved for payment by the Court on a *pro rata* basis based on their losses attributable to the Settling Defendants' alleged misrepresentations.

7.     With respect to the Fee and Expense Application, as discussed in the Fee Memorandum, the requested fee of 25% of the Settlement Fund for Lead Counsel is equivalent to the Ninth Circuit's benchmark for such awards in complex securities actions. Additionally, the requested fee results in a multiplier of 3.52 on Lead Counsel's lodestar, which is well within the range of multiples routinely awarded by courts in the Ninth Circuit and across the country.

8.     For all of the reasons set forth herein and in the accompanying memoranda, including the quality of the result obtained and the numerous significant risks to recovery more fully discussed below, Lead Counsel respectfully submit that the Settlement and the Plan of

HECHT DECLARATION IN SUPPORT OF
MOTION FOR FINAL APPROVAL AND AN
AWARD OF ATTORNEYS' FEES AND EXPENSES
MASTER FILE NO. 2:14-cv-2571-MCE-KJN

Allocation are fair, reasonable and adequate, and should be approved.  In addition, Lead Counsel also respectfully submit that their request for attorneys' fees and reimbursement of Litigation Expenses is fair and reasonable, and should be approved.

## II.   INVESTIGATION AND PROSECUTION OF THE ACTION

### A.   Background

9.     This case concerns an alleged systematic and pervasive revenue recognition and accounting fraud at Defendant MBI.  Lead Plaintiffs allege in the Complaint that the Settling Defendants fraudulently mislead MBI's investors into believing that MBI was a vibrant and rapidly growing bio-pesticide company whose revenues were steadily doubling on a year-over-year basis, when the truth was that the Company's ineffectual products could not support such precipitous and outsized growth.

10.     Lead Plaintiffs allege that undisclosed sales terms, offered to induce MBI's customers to take delivery of more and more product, caused every financial statement issued by MBI during the Settlement Class Period to be false and misleading.  Specifically, Lead Plaintiffs allege that MBI materially misstated revenue, gross profit and net loss in the Company's Forms 10-Q and Form 10-K for fiscal year 2013, as well as its Forms 10-Q for the first two quarters of 2014.  Lead Plaintiffs further allege that MBI and certain Individual Defendants made material misstatements regarding the Company's internal controls over financial reporting and internal control environment.  MBI's false and misleading unaudited financial statements for the first quarter of 2013 were incorporated into an August 2013 Registration Statement, pursuant to which the Company issued stock to the public in its August 1, 2013 initial public offering (the "IPO").  MBI's false and misleading audited financial statements for fiscal 2013 were incorporated into a June 2014 Registration Statement, pursuant to which the Company issued stock to the public in its June 6, 2014 secondary and follow-on offering of stock (the "Secondary Offering").

11.     The Complaint further alleges that due to these misrepresentations and omissions, the price of MBI common stock was artificially inflated, and declined when the truth

HECHT DECLARATION IN SUPPORT OF
MOTION FOR FINAL APPROVAL AND AN
AWARD OF ATTORNEYS' FEES AND EXPENSES
MASTER FILE NO. 2:14-cv-2571-MCE-KJN

was revealed through a series of five partial corrective disclosures that caused statistically significant stock price declines on August 7, 2014, September 3, 2014, November 17, 2014, May 18, 2015, and November 10, 2015, the last day of the Settlement Class Period.

### B.   Preparation And Filing Of The Initial Complaint

12.    This lawsuit was commenced on November 3, 2014, with Lead Plaintiffs filing of a securities class action complaint in the Eastern District of California (ECF No. 1).  This filing was precipitated by the Company's September 3, 2014 announcement that certain of its consolidated financial statements were false when issued, could no longer be relied upon (and in fact had been materially overstated), and that the audit committee of MBI's Board of Directors (the "Audit Committee") was undertaking an investigation of revenue recognition issues.  The filing was also preceded by a substantial analysis of the possible merits of the case, including substantial research concerning the underlying accounting issues at MBI.

13.    The initial complaint alleged claims for violations of Section 11 and 15 of the Securities Act on behalf of all persons who purchased MBI securities directly in or traceable to the Secondary Offering.  It also alleged claims for violations of Section 10(b) and Section 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") on behalf of all persons who purchased MBI securities on the open market between March 7, 2014 and September 2, 2014, inclusive.

14.    In preparation for filing this initial complaint, Lead Counsel conducted a robust factual investigation and legal analysis that included, among other things, review and analysis of:  (i) documents filed publicly by Defendant MBI with the U.S. Securities and Exchange Commission ("SEC"); (ii) MBI press releases and other public statements; (iii) transcripts of MBI investor conference calls; (iv) research reports by financial analysts concerning MBI; (v) publicly available materials concerning MBI's accounting practices; and (vi) information concerning the pricing and movement in MBI common stock and other securities.   Lead Counsel also conducted an in-depth analysis of applicable Ninth Circuit case law.

HECHT DECLARATION IN SUPPORT OF
MOTION FOR FINAL APPROVAL AND AN
AWARD OF ATTORNEYS' FEES AND EXPENSES
MASTER FILE NO. 2:14-cv-2571-MCE-KJN

-5-

### C. The Appointment Of The Funds As Lead Plaintiffs And The Announcement Of The Financial Statement Review

15. On November 4, 2014, the Funds filed a motion seeking to be appointed lead plaintiffs pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), and seeking appointment of Lowenstein Sandler LLP as Lead Counsel for the Class.  (ECF No. 4.) Competing motions were filed by the self-styled "Global Investors" (ECF No. 20 in Case No. 2:14-cv-2055-MCE-KJN) and "Marrone Investors Group" (ECF No. 23 in Case No. 2:14-cv-2055-MCE-KJN).  The Court thereafter granted the Funds' motion, consolidating all pending MBI-related securities class actions[4] and appointing the Funds as Lead Plaintiffs and approving the Funds' selection of Lowenstein Sandler as Lead Counsel.

16. On February 4, 2015, MBI announced that its Audit Committee investigation of certain revenue recognition issues was substantially complete, and that MBI's management was evaluating the necessity, nature and scope of any restatements to certain of its financial statements previously filed with the SEC (the "Financial Statement Review").  During the pendency of the Financial Statement Review, the Court so ordered a number of stipulations delaying Lead Plaintiffs' deadline to file a consolidated amended complaint until after the results of the Financial Statement Review were announced.  (See, e.g., ECF Nos. 33, 41.)

### D. The Preparation And Filing Of The First Amended Complaint

17. On September 2, 2015, however, Lead Plaintiffs filed a First Amended Complaint, to preserve certain claims from expiring under applicable statutes of limitations. (See ECF No. 35.)  In addition to Lead Plaintiffs, the First Amended Complaint included David M. Fineman as an additional named plaintiff.  The First Amended Complaint also alleged claims under Sections 11 and 15 of the Securities Act on behalf of all persons who purchased or

---

[4]   The five actions were:  (1) *Martinelli v. Marrone Bio Innovations, Inc.*, No. 2:14-cv-2055-MCE-KCN (filed Sept. 5, 2014); (2) *Sausman v. Marrone Bio Innovations, Inc.*, No. 2:14-cv-2072-MCE-KJN (filed Sept. 8, 2014); (3) *Chen v. Marrone Bio Innovations, Inc.*, No. 2:14-cv-2105-MCE-KJN (filed Sept. 11, 2014); (4) *Oldham v. Marrone Bio Innovations, Inc.*, No. 2:14-cv-2130-MCE-KJN (filed Sept. 15, 2014); and (5) *Special Situations Fund III QP, L.P. v. Marrone Bio Innovations, Inc.*, No. 14-cv-2571-MCE-KJN (filed Nov. 3, 2014).

HECHT DECLARATION IN SUPPORT OF
MOTION FOR FINAL APPROVAL AND AN
AWARD OF ATTORNEYS' FEES AND EXPENSES
MASTER FILE NO. 2:14-cv-2571-MCE-KJN

-6-

otherwise acquired MBI common stock directly in or traceable to the IPO, and a claim under Section 11 of the Securities Act against EY -- which audited MBI's 2013 financial statements and certified them as accurate under the Securities Act -- on behalf of all persons who purchased or otherwise acquired MBI common stock directly in or traceable to the Secondary Offering.

18.     Before filing the First Amended Complaint, Lead Counsel conducted further investigation and analysis of the potential claims that could be asserted on behalf of investors in MBI securities.  This investigation included, among other things, a detailed review and analysis of significant volumes of information related to MBI, including (i) MBI's SEC filings; (ii) transcripts of MBI's investor conference calls, press releases, and publicly available presentations; (iii) a significant volume of news and securities analyst reports regarding MBI; and (iv) the pricing and movement of MBI's common stock.  In addition to this expanded factual investigation, Lead Counsel further researched and analyzed the law applicable to the Class's asserted and potential claims and Defendants' potential defenses.

**E.     The Preparation And Filing Of The Second Amended Complaint**

19.     On November 10, 2015, MBI announced the results of the Financial Statement Review, amending and restating each of the Company's publicly filed financial statements.  In light of this announcement, and pursuant to a so ordered Stipulation, Lead Plaintiffs filed and served their Second Amended Complaint on January 11, 2016.  (ECF No. 44.)  This pleading alleged the same causes of action against the MBI Defendants and EY as contained in the First Amended Complaint, but added nearly 200 additional paragraphs of factual allegations that described in great detail MBI's purported accounting fraud and the material misstatements in and omissions from MBI's financial statements.  The Second Amended Complaint also enlarged the Class Period, to include all purchasers of MBI common stock from March 26, 2014 to November 10, 2015, inclusive.

HECHT DECLARATION IN SUPPORT OF
MOTION FOR FINAL APPROVAL AND AN
AWARD OF ATTORNEYS' FEES AND EXPENSES
MASTER FILE NO. 2:14-cv-2571-MCE-KJN

20.     The additional allegations were the product of Lead Counsel's ongoing, exhaustive investigation.  In addition to the sources described above, the Second Amended Complaint was the product of meetings with and interviews of numerous witnesses -- many of whom were former MBI employees with intimate knowledge of the Company and its accounting and revenue recognition practices -- including two confidential witnesses whose statements were included in the Second Amended Complaint.  Those witnesses provided allegations concerning the efficacy of MBI's commercial products and the intimate details of MBI's revenue recognition and reporting fraud, allegedly orchestrated by MBI's former head of sales and Chief Operating Officer, Defendant Hector Absi ("Absi").  Based on Lead Counsel's ongoing investigation, Lead Plaintiffs also determined, for purposes of the Class's claims under Section 10(b) of the Exchange Act, which disclosures to allege.  In addition, Lead Plaintiffs determined the disclosure events that revealed the true facts of the MBI Defendants' purported fraud, which removed the fraud-based inflation in the price of MBI's publicly traded common stock.

21.     In total, the Second Amended Complaint contained nearly 100 pages of detailed allegations reflecting the facts gleaned from, and legal theories behind, Lead Counsel's investigation.

**F.      The Motion For Leave To Amend And The Preparation And Filing Of The Third Amended Complaint**

22.     One day after Plaintiffs filed the Second Amended Complaint, MBI entered into a consent decree with the SEC to settle the Commission's as-yet-filed lawsuit against the Company.  Shortly thereafter, Plaintiffs and the MBI Defendants entered into a so ordered stipulation staying all proceedings in this lawsuit against the MBI Defendants pending the outcome of a private mediation session, as further described *infra*.

23.     On February 17, 2016, the SEC filed suit against MBI and Absi for securities violations.  Meanwhile, the U.S. Attorney unsealed a sixteen-count indictment against Absi (the "Absi Indictment"), charging him with, *inter alia*, securities fraud, which lead to Absi's arrest

HECHT DECLARATION IN SUPPORT OF
MOTION FOR FINAL APPROVAL AND AN
AWARD OF ATTORNEYS' FEES AND EXPENSES
MASTER FILE NO. 2:14-cv-2571-MCE-KJN

by the FBI.  The SEC's lawsuit against MBI was settled, pursuant to the Company's signed consent, for a $1.75 million civil fine.  Also on February 17, the SEC issued cease-and-desist orders against MBI's former CFO, Defendant Donald Glidewell, CPA, as well as a former MBI customer relations manager named Julieta Favela Barcenas, who reported directly to Absi.

24.    These documents, along with the SEC's complaints and the Absi Indictment, revealed information that corroborated and expanded upon Plaintiffs' already extensive fraud allegations in the Second Amended Complaint.  In particular, the documents disclosed that Absi's fraudulent scheme started as early as March 2013, far earlier than Lead Plaintiffs originally alleged and indeed months before MBI went public in August 2013.

25.    The revelations in these documents demonstrated to Lead Plaintiffs and Lead Counsel that further amendment of the operative complaint was necessary.  For one thing, it became clear that the Section 10(b) class period should start the day that MBI went public -- August 1, 2013 -- because the Company's fraud was underway well before its IPO.  This meant that MBI has been presenting fraudulent, false and misleading financial information to its investors since its first day trading in the public markets.

26.    Amendment was also necessary for Lead Plaintiffs to clarify the scope of their strict liability claim against EY under Section 11, which stemmed from the false and misleading financial statements incorporated into MBI's June 2014 Registration Statement.  Specifically, the new complaint would clarify that EY was liable for the false and misleading statements of fact concerning MBI's revenue, gross profits and net loss made in the Company's financial statements for the year ended 2013, which EY audited and certified as free from error and compliant with GAAP.

27.    Accordingly, Lead Plaintiffs drafted a proposed Third Amended Complaint, and researched and drafted papers in support of a motion for leave to amend the Second Amended Complaint, pursuant to Federal Rule of Civil Procedure 15(a) (the "Motion to Amend").  Lead Plaintiffs filed the Motion to Amend on March 15, 2016 (ECF No. 57).

HECHT DECLARATION IN SUPPORT OF
MOTION FOR FINAL APPROVAL AND AN
AWARD OF ATTORNEYS' FEES AND EXPENSES
MASTER FILE NO. 2:14-cv-2571-MCE-KJN

-9-

28.     Defendant EY opposed the motion (ECF No. 60), arguing that Lead Plaintiffs' proposed amendment was being made in bad faith.  In addition, EY argued that the Court should condition Lead Plaintiffs' amendment on Lead Plaintiffs posting a bond to cover EY's anticipated costs and fees in defending against Lead Plaintiffs' strict liability Section 11 claim. After further briefing (ECF No. 63), the Court rejected EY's arguments and granted Lead Plaintiffs leave to file their proposed Third Amended Complaint.  (ECF No. 74.)

29.     Lead Plaintiffs filed the Third Amended Complaint on June 1, 2016 (ECF No. 76), which incorporated certain relevant facts from the SEC Complaint and Absi Indictment and alleged the following causes of action:  (1) violations of Sections 11 and 15 of the Securities Act against the MBI Defendants for false and misleading statements of fact in MBI's August 2013 Registration Statement, by which MBII initially sold shares to the public; (2) violations of Sections 11 and 15 of the Securities Act against the MBI Defendants for false and misleading statements of fact in MBI's June 2014 Registration Statement, by which MBI sold further shares directly to the public; (3) violations of Section 11 of the Securities Act against EY for false and misleading statements of fact and false and misleading statements of opinion in the June 2014 Registration Statement, and EY's certification of MBI's false and misleading 2013 financial statements; and (4) violations of Sections 10(b) and 20(a) of the Exchange Act for all MBI securities purchased or otherwise acquired between August 1, 2013 and November 10, 2015.  Furthermore, the Third Amended Complaint alleged that the fraud-based price inflation in MBI's common stock was revealed through a series of five partial corrective disclosures which caused statistically significant declines on August 7, 2014, September 3, 2014, November 17, 2014, May 18, 2015, and November 10, 2015, the last day of the Settlement Class Period.

30.     The Third Amended Complaint, which built and expanded upon the already voluminous allegations in the Second Amended Complaint, totaled 117 pages and more than 475 paragraphs.

HECHT DECLARATION IN SUPPORT OF
MOTION FOR FINAL APPROVAL AND AN
AWARD OF ATTORNEYS' FEES AND EXPENSES
MASTER FILE NO. 2:14-cv-2571-MCE-KJN

-10-

### G. The Negotiation And Preliminary Approval Of The Settlement

31.     Due in part to the conduct outlined in the Third Amended Complaint, MBI is struggling financially.  In the Company's Annual Report, filed on Form 10-K with the SEC on March 30, 2016, its auditor issued a "going concern" opinion, meaning that there is substantial doubt about MBI's ability to comply with its debt covenants and otherwise continue as a going concern.  The Company's quarterly report for the second quarter of 2016, filed on Form 10-Q with the SEC on August 15, 2016, repeats these warnings.  Driven in part by concerns over the Company's tenuous financial position, and in part by the strength of Lead Plaintiffs' claims, Plaintiffs and the Settling Defendants began a dialogue concerning possible early partial resolution of the Action.  Absent this early resolution, it is unlikely that Lead Plaintiffs and Lead Counsel would have been able to achieve any recovery for the Class whatsoever, if indeed MBI became insolvent and needed to seek protection under the bankruptcy laws.

32.     Accordingly, on April 4, 2016, counsel for the Settling Parties participated in an in-person mediation (the "Mediation") before Jed D. Melnick, Esq. (the "Mediator") of JAMS. In advance of that session, the parties prepared extensive confidential mediation statements and exhibits that addressed issues of liability, damages and collectability.  At the Mediation, Lead Counsel and counsel for the MBI Defendants made detailed presentations in joint and break-out sessions with the mediator, vigorously arguing the strengths of their respective cases and responding to each other's arguments.

33.     In connection with this effort, Lead Plaintiffs engaged a financial expert to advise on issues of loss causation and class-wide damages.  These damages findings are summarized in **Exhibit A** to this Declaration.  As this Exhibit demonstrates, estimated potential class-wide damages in this case were approximately $86 million, meaning that the proposed Settlement is equivalent to approximately 14% of total damages; even after subtracting Lead Plaintiffs' requested attorneys' fees and reimbursement of expenses, the net Settlement Fund is still equivalent to approximately 10% of estimated damages.

HECHT DECLARATION IN SUPPORT OF
MOTION FOR FINAL APPROVAL AND AN
AWARD OF ATTORNEYS' FEES AND EXPENSES
MASTER FILE NO. 2:14-cv-2571-MCE-KJN

34.     At the conclusion of the April 4, 2016 Mediation, and following further arm's-length negotiations under the supervision of the Mediator, the Settling Parties reached an agreement in principle to settle the Action for, *inter alia*, Plaintiffs' agreement to release all claims asserted against the Settling Defendants in the Action in return for a cash payment of $12 million, to be paid exclusively by the Settling Defendants' insurance carriers for the benefit of the Settlement Class.   The $12 million cash payment represents substantially all of the Individual Defendants' available $15 million director's and officer's liability insurance policy, after accounting for attorneys' fees that have been and will be incurred by the MBI Defendants' counsel.  This recovery constitutes nearly all available cash proceeds, as the Company has little unrestricted cash with which it could fund a potential settlement, as described *infra* at ¶¶ 38-41.

35.     Following further arm's-length negotiations, including additional settlement discussions under the supervision of the Mediator, the Settling Parties executed the Stipulation on June 16, 2016, which along with the exhibits thereto sets forth the final and binding agreement to settle the Action.   The Stipulation was submitted to the Court for preliminary approval on the same day.  (ECF No. 80-1.)   On June 24, 2016, Lead Plaintiffs filed a supplemental submission along with a revised Notice, which incorporated certain amendments proposed by EY regarding certain issues which were relevant to the continued litigation against EY.  (ECF No. 82.)  The revised Notice did not affect the material terms of the Settlement, and was filed with the MBI Defendants' consent.  On July 7, 2016, the Court preliminarily approved the Settlement, certified the Settlement Class, appointed Lead Plaintiffs as Class representatives and appointed Lead Counsel as Class counsel.  (ECF No. 87.)   The Court also directed that notice be provided promptly to the Settlement Class.

36.     The Mediator, Jed Melnick, has submitted a declaration in support of the Settlement, which is attached as **Exhibit B** hereto.  He explains that the settlement was only achieved after robust, arm's-length negotiations, and that it is his belief that the Settlement is a well-reasoned and sound resolution of the complicated and uncertain legal claims asserted

HECHT DECLARATION IN SUPPORT OF
MOTION FOR FINAL APPROVAL AND AN
AWARD OF ATTORNEYS' FEES AND EXPENSES
MASTER FILE NO. 2:14-cv-2571-MCE-KJN

-12-

against the MBI Defendants.  (*See* Exhibit B at ¶¶ 2, 9.)  The Mediator -- who has mediated over one thousand disputes, including complex securities class actions -- further explains that, from his perspective, the Settlement is reasonable, arm's length, and consistent with the risks and potential rewards of the claims asserted by Lead Plaintiffs.

## III.   THE RISKS OF CONTINUED LITIGATION

37.     The Settlement provides an immediate and certain benefit to the Settlement Class in the form of a $12 million cash payment and represents a very significant recovery, particularly after considering the real chance that if the Action dragged on, and MBI's financial situation worsened and its available insurance reserves were depleted, the Settlement Class could have recovered much less or nothing at all.  Moreover, as explained below, the MBI Defendants had defenses with respect to liability, loss causation and damages in this case. Accordingly, there was a significant risk that, after years of protracted litigation, Lead Plaintiffs and the Settlement Class could achieve no recovery at all, or a lesser recovery than the instant Settlement.

### A.     Risks Of Obtaining A Greater Recovery, Or Any Recovery At All

38.     Perhaps most pressing, there were very real risks to recovering a judgment larger than the Settlement Amount, or in any meaningful amount at all, in light of MBI's poor financial condition and limited directors' and officers' liability insurance.  Indeed, if the MBI Defendants' applicable insurance coverage were depleted (by, among other things, the defense costs associated with this and other litigations) and MBI's financial condition further deteriorated, it would have likely reduced or eliminated the possibility of an equivalent recovery, or any recovery at all, for the Settlement Class regardless of the merits of the claims asserted in the Action.  This was particularly true if the case proceeded into intensive phases of discovery, where litigation defense costs would have substantially accelerated and depleted available insurance assets much more quickly. In other words, MBI's available insurance

HECHT DECLARATION IN SUPPORT OF
MOTION FOR FINAL APPROVAL AND AN
AWARD OF ATTORNEYS' FEES AND EXPENSES
MASTER FILE NO. 2:14-cv-2571-MCE-KJN

-13-

1    proceeds were the only realistic asset from which Lead Plaintiffs could recover on behalf of the

2    Settlement Class, and Lead Plaintiffs acted quickly to maximize the Class's recovery from it.

3        39.    MBI was never a particularly liquid or well-capitalized company, and over the

4    course of the litigation, MBI's stock price, financial condition and liquidity deteriorated further,

5    due in large part to the fraudulent activities alleged in the Complaint.  For example, after the

6    Secondary Offering in June 2014, MBI's stock price hovered around $11 per share and the

7    Company's market capitalization was approximately $270 million.  On June 16, 2016, when the

8    parties executed the Stipulation, MBI's stock price was $0.78 per share and its market

9    capitalization was $19 million, or only $7 million more than the Settlement amount.  MBI is

10   currently at risk for being delisted from NASDAQ because its stock price and market

11   capitalization are too low.

12       40.    Moreover, MBI's auditor has issued a "going concern" opinion regarding the

13   Company, meaning that there is doubt that the Company can meet its debt covenants and other

14   obligations.    At the end of the second quarter of 2016 (the most recent quarterly report

15   available), MBI had cash and cash equivalents of $21.2 million, and an accumulated deficit of

16   $219.5 million.  Furthermore, over the course of 2015, MBI suffered net losses of more than

17   $43 million.  Those losses appear to have abated somewhat, but only slightly.

18       41.    MBI's poor financial condition was, and remains, a very substantial risk had the

19   litigation continued and progressed.    The Company's ability to pay a larger settlement or

20   judgment, or to indemnify the Individual Defendants for their own liability, was and remains

21   severely constrained and in significant doubt.

22       **B.    Risks Of Establishing Liability And Damages**

23       42.    Lead Plaintiffs and Lead Counsel believe that the claims asserted against the

24   MBI Defendants are meritorious and would be borne out if litigated to summary judgement or

25   trial.  Lead Plaintiffs and Lead Counsel acknowledge, however, that there would be substantial

26   hurdles to establishing liability and damages.

27

28   HECHT DECLARATION IN SUPPORT OF
     MOTION FOR FINAL APPROVAL AND AN
     AWARD OF ATTORNEYS' FEES AND EXPENSES
     MASTER FILE NO. 2:14-cv-2571-MCE-KJN

43.     For instance, as to the scienter element of Lead Plaintiffs' Section 10(b) claim, the MBI Defendants were likely to argue that even if Lead Plaintiffs could prove that Absi -- the chief alleged fraudster -- acted with intent, that intent could not be imputed to the Company itself.  Furthermore, MBI was likely to argue that Lead Plaintiffs would not be able to prove that Absi's scheme was intended to benefit MBI, rather than only Absi himself, further hampering Lead Plaintiffs' attempts to prove all of the MBI Defendants' intent.  The MBI Defendants were also likely to argue that certain accounting misrepresentations, like the false statements in the quarterly financials that serve as the basis for the IPO Securities Act claims, and which were the basis of Lead Plaintiffs' Securities Act and Exchange Act claims, were not material.  It is far from clear that such an argument would have been rejected either at summary judgment or at trial.

44.     Regarding Lead Plaintiffs' Securities Act claims, the MBI Defendants would have likely argued that Section 11's traceability requirement would have substantially limited recovery.  The MBI Defendants would have contended that persons who did not purchase stock directly in the IPO or Secondary Offerings (*i.e.*, secondary market purchasers) would be unable to demonstrate that it was "plausible" that their purchases were traceable to either one offering or the other, which could have precluded recovery under the Ninth Circuit's decision in *In re Century Aluminum Co. Securities Litigation*, 729 F.3d 1104, 1106-07 (9th Cir. 2013).

45.     The MBI Defendants would have also likely argued that Lead Plaintiffs could not have carried their burden of proving loss causation under Section 10(b), and, relatedly, that the MBI Defendants would have been able to carry their negative causation defense on Lead Plaintiffs' Securities Act claims.  For instance, the MBI Defendants would have argued that numerous non-fraud factors negatively affected MBI's stock price in 2014.  The MBI Defendants were likely to contend that it was non-fraud causes, as opposed to revelations regarding the Company's revenue recognition and accounting scheme, which caused MBI's stock price to decline on some or all of Lead Plaintiffs' alleged partial disclosure dates.  If this

HECHT DECLARATION IN SUPPORT OF
MOTION FOR FINAL APPROVAL AND AN
AWARD OF ATTORNEYS' FEES AND EXPENSES
MASTER FILE NO. 2:14-cv-2571-MCE-KJN

-15-

argument was successful at trial or before, it would have harmed Lead Plaintiffs' case for Section 10(b) liability and substantially decreased the damages recoverable by the Class under the Securities Act and Exchange Act.

46.     In short, if the Court, or a jury, accepted any of these arguments, it would have undermined Lead Plaintiffs' chances to succeed on the merits of their claims, or substantially decreased the size of any recovery even if Lead Plaintiffs were able to demonstrate liability.

**C.     Other Risks**

47.     In addition to the risks discussed above, Lead Plaintiffs faced other significant risks including that:  (i) discovery might not have supported some or all of Lead Plaintiffs' allegations; (ii) some or all of Lead Plaintiffs' experts, including experts on accounting, causation and damages, would have opinions that were excluded by the Court or not accepted by the jury; and (iii) the substantial risks of costs and delay if settlement were not achieved now. Finally, even if Lead Plaintiffs had succeeded in certifying a class or classes, overcame dispositive motions, proved all elements of their case at trial and obtained a jury verdict, the MBI Defendants likely would have appealed.  An appeal would not only have renewed all the risks faced by Lead Plaintiffs, as the MBI Defendants would have re-asserted many of their arguments summarized above, but also would have led to additional delay.

48.     For all these reasons, Lead Plaintiffs and Lead Counsel respectfully submit that the Settlement is fair, reasonable and adequate, and that it is in the best interests of the Settlement Class to accept the immediate and substantial benefit conferred by the Settlement, instead of incurring the significant risk that the Settlement Class might recover a lesser amount, or nothing at all, after protracted and arduous litigation.

**IV.     LEAD PLAINTIFFS' COMPLIANCE WITH THE COURT'S PRELIMINARY APPROVAL ORDER REQUIRING ISSUANCE OF NOITCE**

49.     The Court's Preliminary Approval Order directed that the Notice of (I) Pendency of Class Action and Certification of Settlement Class; (II) Proposed Settlement; (III) Settlement Fairness Hearing; and (IV) Motion for an Award of Attorneys' Fees and Reimbursement of

HECHT DECLARATION IN SUPPORT OF
MOTION FOR FINAL APPROVAL AND AN
AWARD OF ATTORNEYS' FEES AND EXPENSES
MASTER FILE NO. 2:14-cv-2571-MCE-KJN

-16-

Litigation Expenses (the "Notice") and Proof of Claim and Release Form ("Claim Form") be disseminated to the Settlement Class.  The Preliminary Approval Order also set a September 8, 2016 deadline for Settlement Class Members to submit objections to the Settlement, the Plan of Allocation, and the Fee and Expense Application, or to request exclusion from the Settlement Class, and set a final approval hearing date of September 22, 2016.

50.     In accordance with the Preliminary Approval Order, Lead Counsel instructed the Garden City Group, LLC ("GCG"), the Court-approved claims administrator, to begin disseminating copies of the Notice and the Claim Form by mail and to publish the Summary Notice.  The Notice contains, among other things: (i) a description of the Action and the Settlement; (ii) the terms of the proposed Plan of Allocation; (iii) an explanation of Settlement Class Members' right to participate in the Settlement; and (iv) an explanation of Settlement Class Members' rights to object to the Settlement, the Plan of Allocation, and the Fee and Expense Application, or exclude themselves from the Settlement Class.  The Notice also informs Settlement Class Members of Lead Counsel's intent to apply for an award of attorneys' fees in an amount not to exceed 25% of the Settlement Fund, and for reimbursement of Litigation Expenses in an amount not to exceed $450,000. To disseminate the Notice, GCG obtained information from MBI and from banks, brokers and other nominees regarding the names and addresses of potential Settlement Class Members.  (*See* Declaration of Jennifer M. Veitengruber Regarding Notice Dissemination and Publication ("GCG Declaration"), attached hereto as **Exhibit C**, at ¶¶ 5, 7.)

51.     On July 19, 2016, GCG disseminated 2,123 copies of the Notice and Claim Form (together, the "Notice Packet") to potential Settlement Class Members and their nominees by First-Class Mail.  (*See* GCG Decl. at ¶ 6.)  As of August 23, 2016, GCG has disseminated a total of 12,501 Notice Packets. (*Id.* ¶¶ 6-8)

HECHT DECLARATION IN SUPPORT OF
MOTION FOR FINAL APPROVAL AND AN
AWARD OF ATTORNEYS' FEES AND EXPENSES
MASTER FILE NO. 2:14-cv-2571-MCE-KJN

-17-

52.     On July 21, 2016, in accordance with the Preliminary Approval Order, GCG caused the Summary Notice to be published in *The Wall Street Journal* and to be transmitted over the *PR Newswire*.  (*See* GCG Decl. ¶ 8.)

53.     Lead Counsel also caused GCG to establish a dedicated Settlement website, www.MBISecuritiesLitigationSettlement.com, to provide potential Settlement Class Members with information concerning the Action and the Settlement and access to downloadable copies of the Notice, Claim Form, Stipulation, Preliminary Approval Order and Complaint.  (*See* GCG Decl. ¶ 10.)  The website went live on July 14, 2016.

54.     As noted above, the deadline for Settlement Class Members to file objections to the Settlement, the Plan of Allocation, and the Fee and Expense Application, or to request exclusion from the Settlement Class, is September 8, 2016.  To date, no objections to the Settlement or Lead Counsel's application for attorneys' fees and expenses have been received or requests for exclusion have been received.  (*See* GCG Decl. ¶¶ 11-12.)  Lead Counsel will file reply papers on or before September 15, 2016, after the deadline for submitting requests for exclusion and objections has passed, which will address any requests for exclusion and/or any objections that may be received.

## V.     ALLOCATION OF THE SETTLEMENT PROCEEDS

55.     In accordance with the Court's Preliminary Approval Order and as explained in the Notice, each Settlement Class Member who wishes to participate in the distribution of the Settlement must submit a valid Claim Form with all required information postmarked by no later than October 2, 2016.  The net proceeds of the Settlement (and any appreciation in capital of the Net Settlement Fund) will be distributed among Settlement Class Members according to a plan of allocation approved by the Court.

56.     Lead Counsel developed the proposed Plan of Allocation in consultation with Lead Plaintiffs' damages expert.  Lead Counsel believes that the Plan of Allocation provides a

HECHT DECLARATION IN SUPPORT OF
MOTION FOR FINAL APPROVAL AND AN
AWARD OF ATTORNEYS' FEES AND EXPENSES
MASTER FILE NO. 2:14-cv-2571-MCE-KJN

1    fair and reasonable method to equitably allocate the Net Settlement Fund among Settlement

2    Class Members who suffered losses as a result of the conduct alleged in the Complaint.

3          57.    Lead Plaintiffs' proposed Plan of Allocation is set forth at ¶¶ 56-71 of the

4    Notice.  (*See* Notice (GCG Decl. Ex. A) at ¶¶ 56-71.)  As described in the Notice, calculations

5    under the Plan of Allocation are not intended to be estimates of, or indicative of, the amounts

6    that Settlement Class Members might have been able to recover at trial or estimates of the

7    amounts that will be paid to Authorized Claimants under the Settlement.   Instead, the

8    calculations under the plan are only a method to weigh the claims of Settlement Class Members

9    against one another for the purpose of making an equitable allocation of the Net Settlement

10   Fund.  (*Id.* at ¶ 56.)

11         58.    The Plan of Allocation recognizes that claims were asserted in the Action under

12   both the Securities Act and the Exchange Act, and that not all Settling Defendants were alleged

13   to have violated both acts.  Moreover, there are material differences imposed by law on who can

14   recover under each theory, and the showings necessary to recover under the two Acts are

15   materially different.  For instance, it is unnecessary to prove a defendant's scienter to recover

16   under the Securities Act.   The Plan of Allocation recognizes these considerations and the

17   requirements imposed by law as to who is eligible to recover under the different theories

18   asserted in the Action.   To that end, under the Plan of Allocation the net proceeds of the

19   Settlement will be divided into three separate funds as follows:

20

21

22

23

24

25

26

27

28   HECHT DECLARATION IN SUPPORT OF
MOTION FOR FINAL APPROVAL AND AN
AWARD OF ATTORNEYS' FEES AND EXPENSES
MASTER FILE NO. 2:14-cv-2571-MCE-KJN

-19-

**"Fund #1:  The IPO Fund"** – Fund #1, which totals $153,667, applies to claims asserted under the Securities Act with respect to the IPO.[5]  As a result, all Settlement Class Members, to the extent they have Recognized Loss Amounts under the Plan of Allocation with respect to the IPO Securities Act Claims, will be eligible to receive a *pro rata* distribution from Settlement Fund #1 subject to their satisfying the other conditions for receiving a distribution.

**"Fund #2:  The Secondary Fund"** – Fund #2, which totals $3,869,616, applies to claims asserted under the Securities Act with respect to the Secondary Offering.  As a result, all Settlement Class Members, to the extent they have Recognized Loss Amounts under the Plan of Allocation with respect to the Secondary Securities Act Claims, will be eligible to receive a *pro rata* distribution from Settlement Fund #2 subject to their satisfying the other conditions for receiving a distribution.

**"Fund #3:  The Exchange Act Fund"** – Fund #3, which totals $7,976,717, applies to claims asserted under the Exchange Act with respect to purchases of MBI common stock during the Section 10(b) Class Period.  As a result, all Settlement Class Members, to the extent they have Recognized Loss Amounts under the Plan of Allocation with respect to the Exchange Act Claims, will be eligible to receive a *pro rata* distribution from Settlement Fund #3 subject to their satisfying the other conditions for receiving a distribution.

59.     Lead Plaintiffs and Lead Counsel, in connection with their damages expert, allocated a specific percentage of the overall Settlement Fund to each discrete sub-fund based on, *inter alia*, the total number of damaged MBI shares entitled to recover under each theory; the likelihood that negative causation or other loss causation issues could reduce recovery; the statutory measure of damages under the Securities Act, 15 U.S.C. § 77k(e); and the amount of artificial inflation removed from MBI's common stock over the course of the Settlement Class period.  For instance, the percentage allocable to the IPO Fund is reduced in large part because of (i) the passage of time between the IPO (August 1, 2013) and the first alleged corrective

_____

[5] In this paragraph, the amounts of the Settlement allocated to the respective funds are listed as the gross settlement amounts before the deduction of any attorneys' fees and expenses awarded. Attorneys' fees approved by the Court and approved litigation expenses will be deducted from each of the funds before distribution to Authorized Claimants.  Approved expenses and costs will be deducted from the respective Settlement funds proportionally based on the relative size of the approved funds.

HECHT DECLARATION IN SUPPORT OF
MOTION FOR FINAL APPROVAL AND AN
AWARD OF ATTORNEYS' FEES AND EXPENSES
MASTER FILE NO. 2:14-cv-2571-MCE-KJN

disclosure (August 7, 2014), and (ii) the volatility in the market for MBI common stock following the IPO, issues which appreciably decrease the numbered of shares traceable to the IPO that could have been damaged by the conduct alleged in the Third Amended Complaint.

60. Under the Plan of Allocation, an Exchange Act Recognized Loss Amount will be calculated for each purchase or other acquisition of MBI common stock during the Settlement Class Period that is listed in a Claim Form and for which adequate documentation is provided. Generally, the Exchange Act Recognized Loss Amount will be the difference between the artificial inflation for that security on the date of purchase and the artificial inflation on the date of sale, or the difference between the actual purchase price and sales price of the security, whichever is less. (*See* Notice (GCG Decl. Ex. A) at ¶ 71.). In addition, for purchases during the Settlement Class Period of MBI common stock as to which Securities Act claims were asserted -- *i.e.*, shares of MBI common stock purchased directly in or traceable to the IPO or Secondary Offering -- a Securities Act Recognized Loss Amount will be calculated. (*See id.* Ex. A at ¶¶ 63, 67.) This Amount generally tracks the formula provided by Section 11(e) of the Securities Act. A purchase of MBI common stock may result in a Recognized Loss under multiple Funds. Eligibility for and participation in one Fund does not preclude in any way participation in another Fund for which a purchase is eligible.

61. In sum, the Plan of Allocation is designed to fairly and rationally allocate the proceeds of the Settlements among Settlement Class Members based on the claims asserted against the Settling Defendants in the Action and the losses Settlement Class Members suffered on transactions in MBI common stock that were attributable to the conduct alleged in the Third Amended Complaint. Lead Counsel respectfully submits that the Plan of Allocation is fair and reasonable and should be approved by the Court.

62. As noted above, as of August 23, 2016, 12,501 copies of the Notice, which contains the proposed Plan of Allocation and advises members of the Settlement Classes of their right to object to the Plan, have been sent to potential Settlement Class Members and/or their

HECHT DECLARATION IN SUPPORT OF
MOTION FOR FINAL APPROVAL AND AN
AWARD OF ATTORNEYS' FEES AND EXPENSES
MASTER FILE NO. 2:14-cv-2571-MCE-KJN

nominees.  (*See* GCG Decl. at ¶¶ 5-7.)  To date, no objections to the Plan of Allocation have been received.

## VI.    THE FEE AND LITIGATION EXPENSE APPLICATION

63.    In addition to seeking final approval of the Settlement and Plan of Allocation, Lead Counsel are applying to the Court for an award of attorneys' fees of 25% of the Settlement Fund, or $3,000,000 (the "Fee Application").  Lead Plaintiffs also request reimbursement of expenses that Lead Counsel incurred in connection with the prosecution of the Action from the Settlement Fund in the amount of $436,879.91.  The legal authorities supporting the requested fee and expenses are discussed in Lead Counsel's Fee Memorandum.  The primary factual bases for the requested fee and expenses are summarized below.

### A.    The Fee Application

64.    For Lead Counsel's efforts on behalf of the Settlement Class, Lead Plaintiffs are applying for a fee award to be paid from the Settlement Fund on a percentage basis.  As discussed in the accompanying Fee Memorandum, the percentage method is the appropriate method of fee recovery because it aligns the lawyers' interest in being paid a fair fee with the Settlement Class's interest in achieving the maximum recovery in the shortest amount of time necessary under the circumstances.  The percentage method is recognized as appropriate by the Ninth Circuit for cases of this nature.

65.    Based on the quality of the result achieved, the extent and quality of the work performed, the significant risks of the litigation, and the fully contingent nature of the representation, Lead Counsel respectfully submits that the requested fee award is reasonable and should be approved.  As discussed in the Fee Memorandum, a 25% fee award is fair and reasonable for attorneys' fees in common-fund securities cases like this, matches the benchmark percentage awarded in securities class actions in the Ninth Circuit, and is comfortably within the range of percentages awarded in this Circuit and elsewhere.

HECHT DECLARATION IN SUPPORT OF
MOTION FOR FINAL APPROVAL AND AN
AWARD OF ATTORNEYS' FEES AND EXPENSES
MASTER FILE NO. 2:14-cv-2571-MCE-KJN

-22-

1

(a)      **The Work and Experience of Counsel**

2       66.     The Court-approved Lead Counsel is Lowenstein Sandler LLP.  Attached hereto

3   as **Exhibit D** is a declaration in support of an award of attorneys' fees and reimbursement of

4   Litigation Expenses.  Included within this supporting declaration is a schedule summarizing the

5   hours and lodestar of each attorney at Lowenstein Sandler assigned to this Action from the

6   inception of the matter through and including August 18, 2016, a summary of Litigation

7   Expenses by category, and a firm resume.

8       67.     The lodestar amount for each attorney or paraprofessional was determined by

9   multiplying the number of hours worked by each timekeeper by his or her historical (meaning

10  then-present) hourly rate.  Personnel who billed less than five hours to the Action were excluded

11  from the lodestar calculation, as will be the time incurred administering the settlement if it is

12  approved.

13      68.     As set forth in Exhibit D, Lead Counsel collectively expended a total of 1,398.80

14  hours in the investigation, prosecution and settlement of the Action from its inception through

15  and including August 18, 2016, for a total lodestar of $853,221.50.  The requested fee of 25% of

16  the Settlement Fund represents $3,000,000, and therefore represents a multiplier of 3.52 of

17  Plaintiff's Counsel's lodestar.   As discussed in further detail in the Fee Memorandum, the

18  requested multiplier is well within the range of fee multipliers typically awarded in comparable

19  securities class actions and in other class actions involving significant contingency-fee risk, in

20  the Ninth Circuit and elsewhere.

21      69.     Throughout this case, Lead Counsel devoted substantial time to the prosecution

22  of the Action.  I, along with other partners at my firm, maintained control of and monitored the

23  work performed on this case.  Attorneys and paraprofessionals at my firm undertook particular

24  tasks appropriate for their levels of expertise, skill and experience.  Throughout the prosecution

25  of this Action, work assignments were allocated among the attorneys at my firm in a manner

26  that ensured efficiency and avoided unnecessary duplication of effort.

27

28  HECHT DECLARATION IN SUPPORT OF
MOTION FOR FINAL APPROVAL AND AN
AWARD OF ATTORNEYS' FEES AND EXPENSES
MASTER FILE NO. 2:14-cv-2571-MCE-KJN

70.     As demonstrated by Lead Counsel's firm resume (attached to Exhibit 1 to Rolnick Declaration, which Declaration is attached hereto as Exhibit D), Lowenstein Sandler is among the most experienced and skilled law firms in the securities-litigation field, with a long and successful track record representing investors in complex securities fraud actions. Moreover, the substantial recovery achieved for the Settlement Class here reflects the superior quality of Lead Counsel's representation.

**(b)       Standing and Caliber of the MBI Defendants' Counsel**

71.     The quality of the work performed by Lead Counsel in attaining the Settlement should also be evaluated in light of the quality of the opposition.  Here, the MBI Defendants were represented by Morrison & Foerster LLP, one of the most prestigious and experienced securities defense firms in the country, which vigorously defended the Action.  Lead Counsel were nonetheless able to persuade the MBI Defendants to settle the case on terms that are highly favorable to the Settlement Class.

**(c)       The Risks of Litigation and the Need to Ensure the Availability of Counsel in High-Risk Securities Class Actions**

72.     This prosecution was undertaken by Lead Counsel entirely on a contingent-fee basis.  The risks assumed by Lead Counsel in bringing these claims to a successful conclusion are described above, *see supra* ¶¶ 38-48.  Those risks are also relevant to an award of attorneys' fees.

73.     From the outset, Lead Counsel understood that they were undertaking a complex, expensive and lengthy litigation with no guarantee of ever being compensated for the substantial investment of time and money the Action would require.  Lead Counsel was obligated to ensure that sufficient resources were dedicated to the prosecution of the Action, and that funds were available to compensate staff and to cover the considerable litigation costs that a complex securities action requires.  Because cases such as this one normally take many years to conclude, the financial burden on contingent-fee counsel is far greater than on a firm that is paid on an ongoing basis.  Indeed, Lead Counsel have received no compensation during the course of

HECHT DECLARATION IN SUPPORT OF
MOTION FOR FINAL APPROVAL AND AN
AWARD OF ATTORNEYS' FEES AND EXPENSES
MASTER FILE NO. 2:14-cv-2571-MCE-KJN

the Action and have collectively incurred $436,879.91 in expenses in prosecuting the Action for the benefit of the Settlement Class.

74. Lead Counsel know from experience that the commencement of a class action does not guarantee a settlement. To the contrary, it takes hard work and diligence by skilled counsel to develop the facts and theories that are needed to sustain a complaint or win at trial, or to induce sophisticated defendants to engage in serious settlement negotiations at meaningful levels.

75. Lead Counsel also bore the risk that no recovery would be achieved. As discussed above, from the outset, this case presented multiple risks and uncertainties that could have prevented any recovery whatsoever. Despite vigorous efforts by competent counsel, success in contingent-fee litigation like this Action is never assured.

76. Furthermore, courts consistently recognize that it is in the public interest to have experienced and able counsel privately enforce the securities laws and regulations pertaining to the duties of officers and directors of public companies. As recognized by Congress through the passage of the PSLRA, vigorous private enforcement of the federal securities laws can only occur if private investors, particularly institutional investors, take an active role in protecting the interests of shareholders. If this important public policy is to be carried out, fees should adequately compensate plaintiffs' counsel, taking into account the risks undertaken in prosecuting a securities class action.

77. Lead Counsel's extensive and persistent efforts in the face of substantial risks and uncertainties outlined above resulted in a significant recovery for the benefit of the Settlement Class. In these circumstances, and in consideration of the hard work and the excellent result achieved, the requested fee is reasonable and should be approved.

HECHT DECLARATION IN SUPPORT OF
MOTION FOR FINAL APPROVAL AND AN
AWARD OF ATTORNEYS' FEES AND EXPENSES
MASTER FILE NO. 2:14-cv-2571-MCE-KJN

**(d)      The Reaction of the Settlement Class to the Fee Application**

78.      As noted above, as of August 23, 2016, a total of 12,501 Notice Packets have been mailed to potential Settlement Class Members and their nominees advising them that Lead Counsel would apply for an award of attorneys' fees in an amount not to exceed 25% of the Settlement Fund.  (*See* GCG Decl. ¶¶ 5-7.)  In addition, the Court-approved Summary Notice has been published in *The Wall Street Journal* and transmitted over the *PR Newswire*. (*Id.* ¶ 8.) To date, no objection to the attorneys' fees set forth in the Notice has been received.  Should any objections be received, they will be addressed in Lead Counsel's reply papers to be filed on or before September 15, 2016, after the deadline for submitting objections has passed.

79.      In sum, Lead Counsel accepted this case on a contingency basis, committed significant resources to it, and prosecuted it without any compensation or guarantee of success. Based on the favorable result obtained, the quality of the work performed, the risks of the Action, and the contingent nature of the representation, Lead Counsel respectfully submit that a fee award of 25%, resulting in a lodestar multiplier of 3.52, is fair and reasonable, and is supported by the fee awards courts have granted in other comparable cases.

**B.      The Litigation Expense Application**

80.      Lead Counsel also seek reimbursement from the Settlement Fund of $436,879.91 in expenses that were reasonably and necessarily incurred by Lead Counsel in connection with commencing, litigating, and settling the claims asserted in the Action.

81.      From the beginning of the case, Lead Counsel was aware that they might not recover any of their expenses, and, even in the event of a recovery, would not recover any of their out-of-pocket expenditures until the Action was successfully resolved.  Lead Counsel also understood that, even assuming that the case was ultimately successful, reimbursement for expenses would not compensate it for the lost use of the funds advanced to prosecute the Action.  Accordingly, Lead Counsel was motivated to and did take appropriate steps to avoid

HECHT DECLARATION IN SUPPORT OF
MOTION FOR FINAL APPROVAL AND AN
AWARD OF ATTORNEYS' FEES AND EXPENSES
MASTER FILE NO. 2:14-cv-2571-MCE-KJN

-26-

incurring unnecessary expenses and to minimize costs without compromising the vigorous and efficient prosecution of the case.

82.    Lead Counsel maintained strict control over the expenses in this Action.  As set forth in the Rolnick Declaration (Exhibit D hereto), Lead Counsel has incurred a total of $436,879.91 in litigation expenses in connection with the prosecution of the Action.   The expenses are summarized in Exhibit 2 to the Rolnick Declaration, which identifies each category of expense, *e.g*., expert, investigatory and mediation fees, and other necessary expenses, and the amount incurred for each category.  These expense items are billed separately by Lead Counsel and are not duplicated in Lead Counsel's billing rates.

83.    Of the total amount of expenses, more than $245,000, or approximately 56%, was expended for the retention of experts and other consultants whose assistance was necessary for the effective and efficient prosecution of this Action.   As noted above, Lead Counsel consulted an expert in the fields of loss causation and damages during its investigation and the preparation of the complaints, and consulted further with the damages expert during the settlement negotiations with the Defendants, and in connection with the development of the proposed Plan of Allocation.  In addition, more than $49,000 was incurred for the retention of a private investigator to assist in Lead Counsel's robust, year-long investigation into MBI and the purported accounting and revenue recognition fraud at the Company.  Finally, Lead Counsel incurred more than $54,000 in costs and fee to retain an insurance coverage expert to advise on, and assist with, the Mediation with the MBI Defendant's counsel and counsel for their insurance carriers.

84.    Another major component of Lead Counsel's expenses, which totals $170,000, or approximately 38%, was expended for the retention of GCG, the Court-approved claims administrator.  This expense was necessary for the timely and effective dissemination of Notice to putative Settlement Class Members, as well as post-Settlement administration of disbursements from the Net Settlement Fund if the Court approves the Settlement.

HECHT DECLARATION IN SUPPORT OF
MOTION FOR FINAL APPROVAL AND AN
AWARD OF ATTORNEYS' FEES AND EXPENSES
MASTER FILE NO. 2:14-cv-2571-MCE-KJN

85.     Another large component of the expenses, $8,146.60, was for mediation fees charged by Mr. Melnick and JAMS.

86.     The other expenses for which Lead Counsel seeks reimbursement are the types of expenses that are necessarily incurred in litigation and routinely charged to clients billed by the hour.  These expenses include, among others, court fees, copying costs and travel costs.

87.     The Notice informed potential Settlement Class Members that Lead Counsel would be seeking reimbursement of expenses in an amount not to exceed $450,000. The total amount requested, $436,879.91, is below the $450,000 that Settlement Class Members were advised could be sought.  To date, no objection has been raised as to the maximum amount of expenses disclosed in the Notice.  Lead Counsel will address any timely objections to the reimbursement request in Lead Counsel's September 15, 2016 reply papers.

88.     The expenses incurred and advanced by Lead Counsel were reasonable and necessary to represent the Settlement Class and achieve the Settlement.  Accordingly, Lead Counsel respectfully submit that the Litigation Expenses should be reimbursed in full from the Settlement Fund.

**VII.   <u>CONCLUSION</u>**

89.     For the reasons set forth above, Lead Plaintiffs and Lead Counsel respectfully submit that the Settlement and the Plan of Allocation should be approved as fair, reasonable and adequate.  Lead Counsel further submit that the requested fee in the amount of 25% of the Settlement Fund should be approved as fair and reasonable, and the request for reimbursement of total Litigation Expenses in the amount of $436,879.91 should also be approved.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

DATED: August 25, 2016                    /s/ *Steven M. Hecht*
                                          Steven M. Hecht

HECHT DECLARATION IN SUPPORT OF
MOTION FOR FINAL APPROVAL AND AN
AWARD OF ATTORNEYS' FEES AND EXPENSES
MASTER FILE NO. 2:14-cv-2571-MCE-KJN

-28-