MAYER BROWN LLP
ELIZABETH MANN (SBN 10654)
emann@mayerbrown.com
350 South Grand Avenue, 25th Floor
Los Angeles, California  90071-1503
Telephone:  (213) 229-9500
Facsimile:   (213) 625-0248

MAYER BROWN LLP
STANLEY J. PARZEN (admitted pro hac vice)
71 South Wacker Drive
Chicago, Illinois  60606-4637
Telephone: (312) 782-0600
Facsimile:  (312) 701-7711

Attorneys for Defendant
ERNST & YOUNG LLP

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SPECIAL SITUATIONS FUND III QP, L.P., SPECIAL SITUATIONS CAYMAN FUND, L.P., and DAVID M. FINEMAN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>vs.<br><br>MARRONE BIO INNOVATIONS, INC., PAMELA G. MARRONE, JAMES B. BOYD, DONALD J. GLIDEWELL, HECTOR ABSI, ELIN MILLER, RANJEET BHATIA, PAMELA CONTAG, TIM FOGARTY, LAWRENCE HOUGH, JOSEPH HUDSON, LES LYMAN, RICHARD ROMINGER, SHAUGN STANLEY, SEAN SCHICKEDANZ, and ERNST & YOUNG LLP,<br><br>Defendants. | Master File 2:14-cv-2571-MCE-KJN<br><br>CONSOLIDATED CLASS ACTION<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ERNST & YOUNG LLP'S MOTION TO RECONSIDER THE DENIAL OF ITS MOTION TO DISMISS OR IN THE ALTERNATIVE CERTIFY AN INTERLOCUTORY APPEAL**<br><br>Chief Judge<br>Morrison C. England, Jr.<br><br>Date:      November 30, 2017<br>Time:     2:00 p.m.<br>Dept:      501 I Street,<br>                Courtroom 7<br>                Sacramento, CA 95814 |

# INTRODUCTION

This case arises from Marrone Bio Innovations, Inc.'s ("MBI's") restatement of its financial statements after it uncovered a fraudulent scheme by MBI's former Chief Operating Officer and Head of Sales, Hector Absi, to inflate revenues by entering into a variety of secret "inventory protection" agreements with distributors. Absi has been indicted for securities fraud and other crimes and has been sued by the Securities Exchange Commission, which accused him of (among other things) hiding the inventory protection agreements he made with distributors from MBI's own accountants and from its outside auditor, Ernst & Young LLP ("EY"). Specifically, the SEC alleges that Absi (i) lied directly to EY during its year-end audit for 2013 by falsely representing that he was not aware of any side agreements with distributors and (ii) lied to MBI's controller, who prepared and sent confirmations to selected distributors in connection with EY's year-end audit, requesting those distributors to "verify specific terms of their sales transactions with MBI." SEC Compl. (Doc. No. 59-4) ¶¶ 45-46.

In this case, purchasers of MBI stock sued MBI, certain of its present or former officers and directors, and EY, claiming that all of the Defendants bore responsibility for losses they suffered when the truth emerged. MBI has settled on behalf of itself and the Individual Defendants, leaving EY as the sole remaining defendant. Plaintiffs do not contend that EY was aware of Absi's fraud, nor do they claim that EY acted recklessly. Instead, they have sued EY only under Section 11 of the Securities Act of 1933, on the theory that EY issued a materially false or misleading audit opinion with respect to MBI's 2013 financial statements, which was incorporated in the Registration Statement filed in connection with a secondary offering of MBI stock. EY moved to dismiss that claim in July 2016, arguing (among other things) that EY could not be liable under the standard announced in *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 135 S. Ct. 1318 (2015), because its audit report included only opinions and did not make any false statements of material fact or omit any material facts. Doc. No. 84.

The Court denied EY's motion on March 21, 2017. It concluded that EY's audit opinion would be false under *Omnicare* if EY had failed to conduct its audit in accordance with the standards of the Public Company Accounting Oversight Board ("PCAOB"). The Court found

that Plaintiffs had sufficiently alleged such a failure because they claimed that EY had verified sales figures *only* with Absi and did nothing to attempt to confirm those figures with distributors. The Court rejected EY's argument that this allegation was conclusory, citing Plaintiffs' introductory allegation that the Third Amended Complaint ("TAC") was based on sources including "interviews with former [MBI] employees and other individuals with relevant personal knowledge." Doc. 106 at 15.

On May 5, 2017, the Ninth Circuit issued its opinion in *City of Dearborn Heights Act 345 Police & Fire Retir. Sys. v. Align Tech., Inc.*, 856 F.3d 605 (9th Cir. 2017). *Align* represents the Ninth Circuit's first "close examination" of *Omnicare* and "the proper pleading standard for falsity of opinion statements." *Id.* at 614.[1] As demonstrated below, *Align* makes clear that under *Omnicare* Plaintiffs' unsubstantiated claim that EY relied solely on Absi's false assurances in auditing MBI's revenue cannot be credited. While *Align* does not speak to Plaintiffs' alternative theory that EY is liable because it "certified" MBI's year-end 2013 financial statements within the meaning of 15 U.S.C. § 77k(a). EY respectfully submits that reconsideration of all of Plaintiffs' theories is warranted, and requests that the Court grant EY's motion to dismiss. Alternatively, EY seeks certification for immediate appeal pursuant to 28 U.S.C. § 1292(b) of the dispositive legal issues raised by the Court's order denying EY's motion.

EY did not file this motion immediately after the release of the *Align* decision because the Court had stayed the matter for 90 days so that EY could try to persuade Plaintiffs to dismiss their claim against EY. Doc. No. 110. That stay was continued for an additional 60 days on August 31, 2017, to and including October 30, 2017. Doc. No. 112. It is now clear that the parties' dialogue has run its course and this case will have to be tried or disposed of by motion. Accordingly, pursuant to Local Rule 230(j), EY asks the Court to reconsider its order denying EY's motion to dismiss or, in the alternative, to certify that order for interlocutory appeal to the Ninth Circuit.

---

[1] *Align* presented a claim under Section 10(b) of the Securities Exchange Act. The Ninth Circuit noted that *Omnicare* "concerned Section 11 claims" but "conclude[d] that the Supreme Court's reasoning is equally applicable to Section 10(b) and Rule 10b-5 claims." 856 F.3d at 616.

**ARGUMENT**

A court has "inherent jurisdiction" to modify, alter or revoke a non-final order. *U.S. v. Martin*, 226 F.3d 1042, 1048-49 (9th Cir. 2000); Fed. R. Civ. P. 54(b). An "intervening change of controlling law" is one of the "major grounds that justify reconsideration." *Pyramid Lake Paiute Tribe of Indians v. Hodel*, 882 F.2d 364, 369 n.5 (9th Cir. 1989). As demonstrated below, the *Align* decision is dispositive of Plaintiffs' claim that EY's audit opinion was false and thus requires reconsideration of the Court's denial of EY's motion to dismiss.

## I. The Ninth Circuit's Decision In *Align* Requires Reconsideration.

Section 11 exposes certain parties, including auditors, to potential liability when a registration statement filed with the Securities and Exchange Commission "contain[s] an untrue statement of material fact" or "omit[s] to state a material fact . . . necessary to make the statements therein not misleading." 15 U.S.C. § 77k(a). In its opinion denying EY's motion to dismiss, the Court concluded that Plaintiffs had sufficiently pled that EY's audit opinion contained an embedded, untrue statement of material fact because it stated that EY had "conducted our audits in accordance with the standards of the [PCAOB]" when (according to Plaintiffs) it had not done so. The Court also concluded that EY's opinion omitted material facts because it failed to disclose the alleged departure from PCAOB audit standards.

In this motion, EY does not seek reconsideration of the Court's conclusion that its audit opinions *could* give rise to liability under Section 11 if EY had disregarded basic auditing standards.[2] Instead, EY seeks reconsideration of the Court's conclusion that Plaintiffs

---

[2] The Court should, however, reconsider its apparent conclusion that EY's statement that it conducted its audit in accordance with PCAOB is an "embedded statement of fact." Whether an audit was conducted in accordance with PCAOB auditing standards or Generally Accepted Auditing Standards ("GAAS") is itself an opinion, rather than a fact. *See, e.g.*, *Johnson v. CBD Energy Ltd.*, 2016 WL 3654657, at *10 (S.D. Tex. July 6, 2016) (statement that auditor "conducted the audit in accordance with PCAOB standards . . . appears to be opinion"); *Buttonwood Tree Value Partners, LP v. Sweeney*, 2012 WL 2086607, at *2 (C.D. Cal. June 7, 2012) (the "GAAS assertion" is a "matter[] of opinion"). Indeed, *Lehman Brothers*, which the Court cited extensively, squarely holds that "GAAS statements in EY's audit reports [are] statements of opinion." *In re Lehman Bros. Sec. & ERISA Litig.,* 131 F. Supp. 3d 241, 250 n.44 (S.D.N.Y. 2015); *see also In re Lehman Bros. Sec. & ERISA Litig.*, 799 F. Supp. 2d 258, 300-01 (S.D.N.Y. 2011) ("more is necessary to make out a claim that the statement of opinion was false than a quarrel with whether these standards have been satisfied").

sufficiently alleged that EY had conducted a deficient audit because it supposedly relied only on the representations Absi made to it and made no effort to independently verify the absence of side agreements. The TAC provides no factual basis for these allegations. The TAC does not claim, for example, that any former employee or other source Plaintiffs' counsel interviewed indicated that EY had failed to conduct any audit procedures beyond obtaining a representation from Absi. Nor does the SEC complaint provide any support for such a conclusion. In fact, contrary to Plaintiffs' argument (Doc. 88 at 7 n.5), the SEC complaint shows that EY did communicate with distributors as part of its audit process. The complaint affirmatively alleges that, in connection with EY's audit, MBI's controller sent confirmations to distributors asking them to verify to EY that the terms and conditions of their purchases from MBI were accurately described in the confirmations. Doc. No. 59-4, ¶ 45. To be sure, the SEC alleged that Absi lied to the controller, which would have led to inaccuracies in the terms and conditions set forth in the confirmations. But if the terms and conditions were not accurately set forth in the confirmation, the auditor would reasonably expect the distributors to say so. Indeed, that is the whole point of a confirmation.

Plaintiffs previously argued that it is a "fair inference" from the SEC complaint that EY "could not have contacted the distributors during its 2013 audit and stayed ignorant of the scheme." Doc. No. 88 at 7 n.5. But this is just a variant of the assertion that the audit must have been utterly deficient because EY did not discover the fraud. *Align* makes clear that this type of pleading is wholly conclusory and therefore cannot provide the support necessary to plead falsity.

In *Align*, the Ninth Circuit affirmed the dismissal of a Section 10(b) claim against a dental equipment company ("Align") arising out of statements they made related to the goodwill valuation of a wholly owned subsidiary ("Cadent") that Align acquired in 2010. From November 2012-April 2013, Align announced a series of goodwill impairment charges, in which it wrote down in stages the $135 million it had recorded as goodwill following the Cadent acquisition in April 2011. The plaintiffs alleged that Align must have known much earlier that Cadent was not worth what Align had paid for it and thus deceived investors by not writing down the goodwill

earlier. The Ninth Circuit concluded that Align's statements concerning goodwill valuations were opinions and applied *Omnicare* in analyzing whether those opinions were false.

As the Court explained, under *Omnicare* there are three ways in which a plaintiff can plead that an opinion is false. 856 F.3d at 615-16. The first (which Plaintiffs did not invoke here) is to allege both that the speaker did not honestly believe the opinion expressed and that the belief is objectively untrue. The second is to identify a statement of fact contained within the opinion—what this Court called an "embedded" fact—and allege that it is false. The third way is to allege an omission of facts going to the basis for the opinion that renders the opinion materially misleading. *Id.* The Ninth Circuit emphasized that to meet their pleading obligation under an omissions theory, plaintiffs must plead "the exact assumptions" the defendants used in formulating the opinion at issue, in order to show that the omitted facts undermined the reliability of the opinion. *Id.* at 618.

Applying these standards, the Ninth Circuit held that the plaintiffs in *Align* had failed to plead falsity. One of the opinions plaintiffs challenged was a statement that appeared in Align's 2011 10-K that "based on the goodwill impairment analysis results during the fourth quarter of 2011, we determined that no impairment needed to be recorded as the fair value of our reporting units were significantly in excess of the carrying value." 856 F.3d at 611. The plaintiffs alleged that this statement was false because it omitted a highly material fact—that Align had "failed to conduct any goodwill impairment testing at year-end 2011." *Id.* at 618. The Ninth Circuit concluded that this allegation was a legal conclusion masquerading as a factual assertion and therefore should not be credited in ruling on a motion to dismiss. As the Court explained, "Plaintiff's allegation that Defendants failed to conduct any goodwill impairment testing at the end of 2011 is not a *fact*, but rather Plaintiff's *conclusion* based on its belief that no set of reasonable assumptions could support Defendants' determination in the fourth quarter of 2011 that the SCCS goodwill was unimpaired. We need go no further in concluding that it cannot serve as an omission of fact that sufficiently pleads falsity." *Id.* at 619.

The same analysis applies here. Plaintiffs' allegation that EY did nothing other than obtain a representation from Absi is not a *fact*. Instead, it is simply Plaintiffs' *conclusion*, based

on nothing more than their belief that EY could not have done more because, if it had, it would have discovered the fraud. *See* TAC ¶ 194 ("[a] PCAOB-compliant audit would have uncovered" the various deficiencies later revealed in MBI's restatement). That Plaintiffs alleged generally that they had interviewed former MBI employees and other unidentified sources does not alter that conclusion. Such allegations are irrelevant unless the complaint describes both what the sources said and how they gained the information attributed to them. *Align* proves the point. There, the plaintiff interviewed former employees who told them that Cadent had fraudulently inflated its revenues before it was acquired by Align. 856 F.3d at 617. But "none of these witnesses subsequently participated in Align's accounting or goodwill analysis" and thus the Ninth Circuit found those allegations insufficient to support the plaintiff's claims about Align's supposedly deficient goodwill valuations. 856 F.3d at 617. So too in this case, Plaintiffs cited confidential witnesses to support *some* of their assertions, but did *not* allege that those witnesses knew anything about EY's audit, much less told Plaintiffs' counsel about what EY did or did not do. *See, e.g.*, TAC ¶¶ 287-94, 319-27. Absent allegations that Plaintiffs' sources were involved in the audit and told Plaintiffs' counsel that EY had relied only on Absi, the mere fact that Plaintiffs' counsel consulted with unidentified sources about *something* is plainly not enough under *Align* to save the conclusory allegations in the TAC. 856 F.3d at 619.

There is nothing unfair about this result. *If* Plaintiffs had a factual basis for believing that EY did not attempt to verify sales terms beyond Absi's representations, they would have said so in one of their three complaints or even in their opposition to the motion to dismiss. To permit Plaintiffs to avoid dismissal by treating their conclusions as facts is directly contrary to *Align*.

The same analysis applies to Plaintiffs' other allegations of purported deficiencies in EY's audit. Plaintiffs allege that EY improperly failed to scrutinize a suspicious spike in revenue in winter when there were fewer crops to benefit from Marrone Bio's products and "that EY failed to take into account Marrone Bio's internal control environment." Doc No. 106 at 18. But this is, once again, simply a claim that EY's audit procedures must have been inadequate because it failed to discover the fraud. As *Align* demonstrates, that kind of conclusory assertion is not enough to support the claim that an audit opinion was false. 856 F.3d at 619.

1    These allegations also fail because, for the reasons outlined above, the Court cannot credit Plaintiffs' assertion that Absi's representations constituted the sole basis for EY's opinion. In *Align*, the Ninth Circuit rejected the plaintiff's argument that Align's goodwill valuations were misleading because Align failed to disclose Cadent's pre-acquisition inflation of its revenues. The Court noted that the plaintiff had failed to allege the "exact assumptions" on which Align based its valuation and thus there was no reason to believe that Align was relying on Cadent's fraudulent pre-acquisition revenues in valuing goodwill. 856 F.3d at 618. So too, here, once Plaintiffs' claim that EY was relying solely on Absi's representations is rejected (as it must be), there is no allegation left as to what the basis for EY's opinion was and thus no reason to assume that the supposedly omitted facts would undermine the reliability of EY's opinion.

## II.     The Court Should Also Reconsider Plaintiffs' "Certification" Theory

Plaintiffs argued that even if EY's audit report did not contain any misstatements or omissions, EY could still be liable under Section 11 because it "certified" financial statements that were later found to have been materially misleading. As EY argued in its Motion to Dismiss, its audit report did not purport to "certify" anything—it stated that the "financial statements are the responsibility of the *Company's management*" and that EY's "responsibility is to express *an opinion* on these financial statements based on our audits." Doc. No. 85-4 at 4 (emphasis added). The Court rejected this argument, finding that EY's audit report had a "certification effect" because it was "made part of a registration statement." Doc. No. 106 at 10. EY urges the Court to reconsider that ruling.

The Court's certification ruling was based principally on case law from district courts in the Second Circuit concluding that an audit report is a "certification" of the client company's financial statements. Doc. No. 106 at 9-11. Most of these decisions do not address EY's specific arguments against this theory of liability. Only a few even attempt to reconcile certification liability with *Omnicare*. *See Johnson v. CBD Energy Ltd.*, 2016 WL 3654657, at *11 (S.D. Tex. July 6, 2016) (noting that several "certification" decisions pre-date *Omnicare*). Furthermore, these decisions cannot be considered good law even in the Second Circuit after *Querub v. Moore Stevens H.K.*, 649 F. App'x 55 (2d Cir. 2016), which rejected Section 11 claims despite the fact

that the plaintiffs relied on a certification theory and the parties fully briefed that theory on appeal.

This Court distinguished *Querub* by observing that, while the parties in that case addressed "certification" in their briefs, the opinion itself did not expressly mention the issue. Doc. No. 106 at 12-13. It is true that "unstated assumptions on *non-litigated* issues are not precedential holdings binding future decisions." *Sorenson v. Mink*, 239 F.3d 1140, 1149 & n.3 (9th Cir. 2001) (emphasis added). But issues squarely presented in the briefs are a different matter. That is why in *Sorenson* the Ninth Circuit felt compelled to "examine[] the briefs" in prior cases to determine whether they "raised the issue that we decide today" before concluding that there was no precedent to guide its decision. *Id.* That is also why the court in *Johnson* concluded that the holding in *Querub* "directly contradicts" the notion that auditors certify financial statements within the meaning of Section 11. 2016 WL 3654657, at *11.

The Court also reasoned that because a different provision of the securities laws requires registration statements to include a certified balance sheet and profit and loss statement and because the only report in MBI's registration statement belonged to EY, EY's audit report *must* have been a "certification" of those materials for purposes of Section 11(a). Doc. No. 106 at 11 (citing 15 U.S.C. § 77aa(25)-(26)). Otherwise, the Court reasoned, the SEC "has improperly declared effective *every* public offering filed since" the PCAOB's "professional standards came into effect." *Id*. This reasoning is contrary to the plain language of the statute in two respects.

First, Section 11 makes liable every accountant "[1] named as having prepared or certified any part of the registration statement, or [2] as having prepared or certified any report or valuation which is used in connection with the registration statement," and then only "[3] with respect to the statement in such registration statement, report, or valuation, which purports to have been prepared or certified by him." 15 U.S.C. § 77k(a)(4). If EY's consent to serve as an accounting expert and be named as having prepared or certified its report (clause 2) had the "effect" of consenting to be named as having prepared or certified the registration statement (clause 1), the statute's clear distinction between preparation or certification of *reports* and preparation or certification of *registration statements* would be meaningless. The Court's

holding—that "an audit report" has a "certification effect" when "made part of a registration statement"—violates what the Supreme Court has called "one of the most basic interpretive canons": the principle "[a] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous." *Corley v. United States*, 556 U.S. 303, 314 (2009).

Put a different way, if an auditor's report containing opinions is a certification of the registration statement, the inclusion of the word "report" in the statute serves no purpose; the same act ostensibly falls within both prongs of the statute. Limiting the statute to a situation where there is a genuine certification, not an opinion, thus prevents a portion of Section 11 from being rendered useless.

Second, the requirement that a registration statement contain a certified balance sheet and profit and loss statement comes from Schedule A of the 1933 Act, which is incorporated into the statute by 15 U.S.C. § 77g. That section provides not only that a registration statement shall contain the information specified in Schedule A, but *also* that "[i]f any accountant . . . is named as having prepared or certified any part of the registration statement, or is named as having prepared or certified a report or valuation for use in connection with the registration statement, the written consent of such person shall be filed with the registration statement." *Id*. § 77g(a)(1). EY consented only to be named as having prepared its audit report. EY did not consent to, and the registration statement did not contain, EY's consent to be named as having prepared or certified any part of the registration statement. It is inconsistent to deem EY to have "certified" MBI's financial statements because such certification is ostensibly required by Schedule A and § 77g when, under that interpretation, the registration statement did not comport with § 77g's express requirement for auditor consent.

As explained in EY's motion to dismiss, PCAOB standards prohibit EY from certifying a company's financial statements. *See* Doc. No. 84-1 at 12-13. The Court concluded that EY could not rely on those standards to defeat Plaintiffs' certification argument because the PCAOB lacks "authority to override federal statutes through the promulgation of accounting standards." Doc. No. 106 at 11. But EY never claimed that PCAOB standards trumped the text of the statute.

Rather, EY said that "the standards do not 'interpret' the statute" but instead demonstrate that "EY could not, and therefore did not," certify the financial statements within the meaning of Section 11. Doc. No. 89 at 5. Indeed, the Sarbanes-Oxley Act provides that the SEC, which must approve all PCAOB rules and standards, shall do so only if the Commission "finds that the rule is *consistent with the requirements of . . . the securities laws*, or is necessary and appropriate in the public interest or for the protection of investors." 15 U.S.C. § 7217(b)(3) (emphasis added); *see also* Order Approving Proposed Technical Amendments to Interim Standards Rules, 69 Fed. Reg. 24199, 24200 (Apr. 28, 2004) ("the Commission finds that the proposed technical amendments to the Board's interim standards rules are consistent with the requirements of . . . the securities laws"); *cf.* 15 U.S.C. § 77g(a)(1) (authorizing the SEC to provide that any piece of information set forth in Schedule A "need not be included" if it finds that the requirement is not applicable and the remaining requirements are "fully adequate for the protection of investors").[3]

Pursuant to SEC-approved standards, EY could not—and did not—"certify" MBI's financial statements. Instead, it issued an opinion *about* those statements, governed by the *Omnicare* standard discussed above. Thus, under the plain text of Section 11, EY cannot be liable for misstatements contained in the financial statements.

### III.  Alternatively, The Court Should Certify An Interlocutory Appeal Under 28 U.S.C. § 1292.

If the Court does not reconsider its ruling, EY respectfully urges it to certify its order denying EY's motion to dismiss for interlocutory appeal. A district court may certify a non-final order for interlocutory appeal if it finds that the order "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).

Based on the arguments advanced here and in EY's motion to dismiss, we submit that there is at least substantial ground for difference of opinion on the questions of whether the TAC

---

[3] In addition, the PCAOB is "a Government-created, Government-appointed entity, with expansive powers to govern an entire industry." *Free Enter. Fund v. PCAOB*, 561 U.S. 477, 485 (2010). "Every accounting firm …that participates in auditing public companies under the security laws *must* register with the Board… and comply with its rules and oversight." *Id.* (emphasis added). The PCAOB is *required* to promulgate the very standards that the Court found irrelevant in accepting Plaintiffs' certification theory. 15 U.S.C. § 7213.

11
MEMORANDUM IN SUPPORT OF ERNST & YOUNG LLP'S  MOTION TO RECONSIDER OR IN THE ALTERNATIVE CERTIFY AN INTERLOCUTORY APPEAL

meets *Omnicare's* requirements for alleging that an opinion is false and whether EY's audit opinion subjects it to strict liability for MBI's financial statements under a certification theory. As to the second question, *Querub*, though not binding on this court, squarely rejected the line of authority on which Plaintiffs' and this Court now rely. And, as the Court itself noted, a fellow judge in the Southern District of Texas "has adopted EY's view of *Querub*." Doc. No. 106 at 13 n.6 (citing *Johnson*); *see also Dutton v. Harris Stratex Networks, Inc.*, 270 F.R.D. 171, 177-78 (D. Del. 2010) (holding that plaintiff's certification argument—based "on the fact that [EY] audited [the company's] financial statements, and those statements needed to be restated"—was "insufficient to state a Section 11 claim"). "A substantial ground for difference of opinion exists where reasonable jurists might disagree on an issue's resolution." *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011). Thus, this Court's explicit "disagree[ment]" with *Johnson* proves the point. Doc. No. 106 at 13. The fact that two district courts have come to opposite conclusions about Plaintiffs' certification theory shows that a § 1292(b) certification is appropriate.

An interlocutory appeal also would materially advance the ultimate termination of the litigation. There can be no doubt that the matters that EY raises for appeal are controlling questions of law—if EY is correct, this case is over. Regardless, "neither § 1292(b)'s literal text nor controlling precedent requires that the interlocutory appeal have a final, dispositive effect on the litigation, only that it 'may materially advance' the litigation." *Reese*, 643 F.3d at 688. At a minimum, a determinative Ninth Circuit ruling on whether Plaintiffs properly pleaded falsity and certification and any other aspects of the Court's order will materially clarify the legal and factual issues that remain for discovery and, ultimately, for trial.[4]

---

[4] "[W]hen a district court order is certified for appeal pursuant to 28 U.S.C. § 1292(b) . . . , the *entire* order is certified for appeal." *Cent. Delta Water Agency v. U.S.*, 306 F.3d 938, 952 n.10 (9th Cir. 2002). Accordingly, interlocutory appeal would afford the Ninth Circuit the opportunity to consider other important legal issues addressed in the Court's opinion, such as the contours of the tracing requirement set forth in *Century Aluminum*. *See* Doc. No. 106 at 7 (noting the Court's disagreement with *Thomas v. Magnachip Semiconductor Corp.*, 167 F. Supp. 3d 1029 (N.D. Cal. 2016), over the best way to read *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1106 (9th Cir. 2013)).

## CONCLUSION

*Align* compels the conclusion that Plaintiffs failed to meet its burden under *Omnicare* of pleading that EY's audit opinion was false. And the weight of authority and a close analysis of the governing statutes shows that prima facie liability does not attach under Section 11 whenever an auditor "audit[s] . . . financial statements" in a registration statement and "those statements need[] to be restated" (*Dutton*, 270 F.R.D. at 178). At a minimum, these are legal questions subject to genuine dispute. EY therefore asks the Court to reconsider whether EY can be held liable under an omissions, embedded-facts, or certification theory, or to certify its order for interlocutory appeal.

Dated:  November 2, 2017                                 Respectfully submitted,

/s/      Elizabeth Mann
Elizabeth Mann
Mayer Brown LLP
Attorneys for Defendant
ERNST & YOUNG LLP