1  MAYER BROWN LLP
   ELIZABETH MANN (SBN 10654)
2  emann@mayerbrown.com
   350 South Grand Avenue, 25th Floor
3  Los Angeles, California  90071-1503
4  Telephone:  (213) 229-9500
   Facsimile:   (213) 625-0248
5
6  MAYER BROWN LLP
   STANLEY J. PARZEN (admitted pro hac vice)
7  71 South Wacker Drive
   Chicago, Illinois  60606-4637
8  Telephone: (312) 782-0600
   Facsimile:  (312) 701-7711
9
   Attorneys for Defendant
10 ERNST & YOUNG LLP

11

12                    **UNITED STATES DISTRICT COURT**

13                    **EASTERN DISTRICT OF CALIFORNIA**

14

| | |
|---|---|
| SPECIAL SITUATIONS FUND III QP, L.P., SPECIAL SITUATIONS CAYMAN FUND, L.P., and DAVID M. FINEMAN, Individually and on Behalf of All Others Similarly Situated, | Master File 2:14-cv-2571-MCE-KJN  CONSOLIDATED CLASS ACTION |
| Plaintiffs, | **REPLY MEMORANDUM IN SUPPORT OF ERNST & YOUNG LLP'S MOTION TO RECONSIDER THE DENIAL OF ITS MOTION TO DISMISS OR IN THE ALTERNATIVE CERTIFY AN INTERLOCUTORY APPEAL** |
| vs. | |
| MARRONE BIO INNOVATIONS, INC., PAMELA G. MARRONE, JAMES B. BOYD, DONALD J. GLIDEWELL, HECTOR ABSI, ELIN MILLER, RANJEET BHATIA, PAMELA CONTAG, TIM FOGARTY, LAWRENCE HOUGH, JOSEPH HUDSON, LES LYMAN, RICHARD ROMINGER, SHAUGN STANLEY, SEAN SCHICKEDANZ, and ERNST & YOUNG LLP, | Chief Judge Morrison C. England, Jr.  Date:  January 25, 2018 Time: 2:00 p.m. Place: 501 I Street, Courtroom 7          Sacramento, CA 95814 |
| Defendants. | |

# INTRODUCTION

Plaintiffs' Opposition is remarkable for what it fails to do. Nowhere do plaintiffs defend their claim that EY's audit was deficient because EY supposedly relied only on the fraudster's (Absi's) representations in forming its audit opinion—even though that allegation was the basis for the Court's denial of EY's Motion to Dismiss plaintiffs' *Omnicare* claims and is the main focus of EY's Motion to Reconsider. Rather than addressing EY's arguments showing why that allegation cannot now be credited, plaintiffs try to deflect the Court's attention. They argue that EY filed its alternative motion for certification too late, that *City of Dearborn Heights Act 345 Police & Fire Retirement System v. Align Technology, Inc.*, 856 F.3d 605 (9th Cir. 2017), did not alter the legal landscape, and that this Court denied EY's motion to dismiss on other grounds that are unaffected by its Motion to Reconsider. EY answers all of those arguments below. But the key point is that plaintiffs have effectively abandoned their allegation that EY relied solely on Absi—a dramatic shift that shows why EY's Motion to Reconsider should be granted.

# ARGUMENT

**I.     EY's Motion Is Timely.**

Shortly after this Court denied EY's motion to dismiss in March 2017, the parties began exploring the possibility of resolving plaintiffs' claims against EY. On May 4, 2017, the parties filed a Stipulation asking the Court to stay all discovery and all discovery obligations (including the filing of a Rule 26(f) discovery plan) for 90 days so they could "engage in a conference or series of conferences to discuss the factual underpinnings of this case and . . . explore the possibility of a resolution of the claims against EY in this action." Doc. No. 109 at 3. That stay was later continued by agreement to October 30, 2017. Doc. No. 112 at 3-4.

The Ninth Circuit's decision in *Align* was issued on May 5, 2017. Given that the parties had just begun a good faith attempt to resolve plaintiffs' claims, EY told plaintiffs that it would not be filing a motion to reconsider at that time. Instead, EY waited until it became clear that the parties' dialogue had run its course and that this case would have to be tried or disposed of by motion. Plaintiffs do not argue that EY waited too long to file its Motion to Reconsider. But they do contend that EY's alternative motion for certification pursuant to 28 U.S.C. § 1292(b) is

1  untimely. Pl. Opp. (Doc. No. 121) at 17-18. In fact, both motions are timely.

2  Until *Align* was decided, EY had no basis to file a Motion to Reconsider. And until the Motion to Reconsider was filed, EY had no reason to suggest certification under section 1292(b). So long as plaintiffs' *Omnicare* theory remained in the case, the purely legal question of whether EY's opinion could be deemed a "certification" of MBI's 2013 financial statements was not suitable for an interlocutory appeal: even if EY won on appeal on that question, its victory would not have materially advanced the ultimate termination of the litigation. But if the Court grants EY's Motion to Reconsider and takes plaintiffs' *Omnicare* theory out of the case, the motion for certification makes perfect sense inasmuch as the case would be over if EY prevailed on appeal on a pure question of law as to which there is plainly substantial ground for difference of opinion.

**II.    The Court Should Dismiss Plaintiffs' *Omnicare* Claims.**

**A.    *Align* Represents An Intervening Change In Controlling Law.**

It is undisputed that an intervening change in controlling law is an appropriate basis for reconsidering an interlocutory ruling. Plaintiffs argue, however, that the only change the Ninth Circuit made in *Align* was to adopt the *Omnicare* standard for pleading falsity in a Section 10(b) case and overrule the standard it previously applied to the extent it was inconsistent with *Omnicare*. Plaintiffs contend that *Align* provides no new insights as to how *Omnicare* should be applied in a Section 11 case and thus creates no basis for reconsidering this Court's decision on EY's motion to dismiss. Pl. Opp. at 13. That reads *Align* far too narrowly.

As the Ninth Circuit noted, *Align* was the Court's first "close examination" of *Omnicare* and "the proper pleading standard for falsity of opinion statements." 856 F.3d at 614. For purposes of this case, what is important is not what that standard is, but rather *how* the Ninth Circuit applies it in deciding whether a plaintiff has met its burden of pleading that an opinion was false. It is that analysis that is an intervening change in the law, which provides this Court with clearer guidance on the precise issues raised by EY.

In denying EY's motion to dismiss, this Court felt compelled to credit plaintiffs' allegation that "'EY verified [Marrone Bio]'s sales with the Company's head salesperson as opposed to its handful of customers.'" Opinion (Doc. 106) at 15. The Court did so because

2

1    plaintiffs presented that allegation as a fact, which must be taken as true on a motion to dismiss.
2    But in *Align* the Ninth Circuit held that in cases like this courts must dig deeper to determine
3    whether what appears on the surface to be a factual allegation is in reality an unsupported
4    conclusion. There, the plaintiff alleged that the defendant's opinion that no goodwill impairment
5    needed to be recorded was materially misleading because it omitted a highly material fact—that
6    Align had "failed to conduct any goodwill impairment testing at year-end 2011." 856 F.3d at 618.
7    The Ninth Circuit explained that this allegation "is not a *fact*, but rather Plaintiff's *conclusion*
8    based on its belief that no set of reasonable assumptions could support Defendants' determination
9    in the fourth quarter of 2011 that the SCCS goodwill was unimpaired. We need go no further in
10   concluding that it cannot serve as an omission of fact that sufficiently pleads falsity." *Id*. at 619.
11   The same analysis applies here, where it is evident that plaintiffs' claim that EY did nothing to
12   confirm sales terms was not a *fact* but rather plaintiffs' *conclusion* based on their belief that EY
13   would have uncovered the fraud had it communicated with people other than Absi.

14         Contrary to plaintiffs' argument (at 15 n.7), *Align*'s guidance cannot be shrugged off on
15   the theory that *Align* was a Section 10(b) case and thus heightened pleading rules applied. As this
16   Court recognized, even in cases where Rule 8 applies, "[a] court is not required to accept as true a
17   'legal conclusion couched as a factual allegation.'" Opinion at 4 (quoting *Ashcroft v. Iqbal*, 556
18   U.S. 662, 678 (2009)). In *Align*, the Court did not say that the plaintiff failed to plead the critical
19   facts with particularity; instead, it treated the plaintiff's assertion that the defendant had not
20   conducted a goodwill impairment analysis as a legal conclusion couched as a factual allegation.
21   Accordingly, *Align*'s analysis is as binding in a Section 11 case as it is in a Section 10(b) case.

22         *Align*'s analysis of the standard for pleading an omissions claim under *Omnicare* also
23   provides useful new guidance by explaining that an omissions claim cannot proceed unless the
24   plaintiff has pleaded the "exact assumptions" on which the defendant's opinion was based, in
25   order to show how and why the omitted information undermined that opinion. 856 F.3d at 618.
26   Citing *In re Leapfrog Enterprise Inc. Secs. Litig.*, 2017 WL 4877451 (N.D. Cal. Aug. 10, 2017),
27   at *1, plaintiffs contend that *Align* did not adopt a "blanket rule" that the exact assumptions must
28   always be pleaded. But plaintiffs ignore *Leapfrog*'s explanation that the plaintiffs there did not

have to plead the assumptions underlying the challenged decision not to declare an asset impaired in the third quarter because the defendant itself gave only *one* reason for declaring that asset impaired in the fourth quarter—a stock drop, which had occurred in the third quarter. Thus, by its own logic, the defendant should have taken the write-down earlier. By contrast, *Leapfrog* acknowledged that *Align* requires plaintiffs to allege the assumptions underlying opinions that were based on *multiple* factors that do not all lead to the same conclusion. *Id.* As demonstrated below, *Leapfrog* supports EY's analysis because, as plaintiffs have now admitted, there was not just one reason for EY's opinion (its reliance on Absi's representations); instead, as in *Align*, there were multiple reasons for EY's opinion (including confirmations from distributors) that do not all point in the same direction.

### B. Plaintiffs No Longer Defend Their Allegations That EY Relied Solely On Absi's Representations And Did Not Communicate With Distributors.

There is no doubt that the pivotal allegation in the Third Amended Complaint ("TAC") is that EY relied solely on Absi to verify the terms of MBI's sales to distributors and had no communications from those distributors, as it should have under PCAOB auditing standards.[1] In its Motion to Dismiss, EY argued that these assertions were "wholly untrue" and wholly unsupported. Doc. No. 89 at 7. As EY pointed out, nothing in the SEC complaint against Absi suggested that EY had failed to obtain confirmations from distributors. (In fact, the SEC complaint affirmatively alleged that MBI's controller had prepared confirmations in connection with EY's audit and accused Absi of misleading the controller about the information set forth in those confirmations. SEC Compl. ¶¶ 44-45). The Court rejected this argument, stating that the TAC was "based on not just the SEC [complaint], but several other sources, including 'interviews

---

[1] The TAC is jam-packed with variations on this theme, alleging that "E&Y only audited the sales terms between MBII and its distributors by only talking to Company [sic]" and that "E&Y tested [MBI's] precipitous growth by merely asking Absi (i) to confirm the sales terms between the Company and its distributors, and (ii) certify that no sales terms or conditions existed outside of MBII's written agreements and purchase orders." TAC (Doc. No. 76) ¶ 182. The TAC also alleged that EY "made no effort to independently verify Absi's explanation by contacting the customers itself, as audit procedures requires" (¶ 183); that EY "did not contact MBII's customers directly to inquire as to how the Company was able to book so much revenue [in 2013 Q4]' (¶ 189); and that EY did not "scrutinize sales terms between the Company and its distributors by talking directly to those distributors, and not accepting Absi's *ipse dixit*" (¶ 195).

with former [Marrone Bio] employees and other individuals with relevant personal knowledge.'" Opinion at 15. The Court accordingly construed EY's opposition "as merely contend[ing] that Plaintiffs' allegations are false" and rejected it because "it is inappropriate to address the truth or falsity of Plaintiffs' allegations at this stage of the litigation." *Id.* at 15-16.

The principal argument made in EY's Motion to Reconsider is that the Court should revisit this conclusion in light of the analysis in *Align*. Remarkably, plaintiffs' 20-page Opposition does not squarely address this argument. Plaintiffs acknowledge on two occasions (at 2-3, 14) the TAC's assertion that EY relied solely on Absi and continue to argue (at 15-16) that the Court cannot decide whether that allegation is true on a motion to dismiss. But plaintiffs pointedly do *not* repeat the TAC's assertion that EY obtained no confirmations from MBI's distributors. On the contrary, plaintiffs now apparently *concede* that confirmations were sent. They try to put the best face on their concession by claiming that the confirmations were somehow tainted. Thus, plaintiffs say that EY was negligent because it "relied on Absi to verify the sales terms between MBII and its distributors despite MBII's corporate controller also using Absi to send terms and conditions confirmations to the Company's distributors." Pl. Opp. at 5. If that is plaintiff's theory now, it should be disregarded because it is not alleged in the TAC, nor was it ever raised in the briefing on EY's Motion to Dismiss.

Furthermore, plaintiffs' new theory makes no sense. Plaintiffs do not allege that EY knew that Absi was dishonest or knew what role he played in crafting the confirmation letters. Nor do they cite any PCAOB guidance suggesting that it is somehow improper for a sales director to outline contract terms and conditions in representation letters to the outside auditor and to supply the same information for the confirmations that are sent to customers. In that situation, the auditor is not relying solely on the sales director's say-so. Instead, it is relying on the *customers*: if the company's description of the terms and conditions is not accurate, the auditor has a right to expect the customers to say so.

Plaintiffs also try to persuade the Court that their allegation that EY relied solely on Absi was not critical to the outcome of the motion to dismiss. But the Court's opinion makes clear that this was the *entire basis* for the Court's decision to sustain plaintiffs' *Omnicare* claims. Thus, the

5

only allegation the Court cited in support of the claim that EY had violated PCAOB standards was plaintiffs' assertion that "'EY verified [Marrone Bio]'s sales with the Company's head salesperson as opposed to its handful of customers.'" Opinion at 15. After rejecting EY's argument that this assertion should not be credited, the Court stated that for purposes of ruling on EY's motion to dismiss, "the Court assumed that EY did in fact only rely on Absi's representations in forming its audit opinion." *Id.* at 16. It then noted that "[a]ccordingly, the relevant question is whether doing so violated PCAOB standards." *Id.* Not surprisingly, the Court found that it did, noting that "Plaintiffs allege that EY failed to adequately gain an understanding of Marrone Bio's sales contracts because EY only relied on Absi to confirm the terms of Marrone Bio's contracts." *Id.* at 17-18. *See also id.* at 18 ("Plaintiffs have alleged sufficient facts to state a claim that EY did not conduct its audit in accordance with PCAOB standards and that EY did not examine evidence aside from seeking confirmation from Absi").

Plaintiffs' Opposition makes it abundantly clear that they have abandoned the primary factual allegation that supported their *Omnicare* claim and that the Court relied on in denying EY's motion to dismiss that claim. Regardless of how the Court may read *Align*, that is a change in circumstances sufficient to warrant dismissal of plaintiffs' *Omnicare* claim.

### C. Plaintiffs' "Other" Allegations Cannot Save Their *Omnicare* Claims.

Plaintiffs also argue that the other allegations set forth in the TAC are sufficient, standing alone, to support their *Omnicare* claims. That argument too should be rejected.

Plaintiffs point first to their utterly conclusory assertion in the TAC that EY's audit was "poorly planned and executed" and that EY failed to gain an understanding of the Company's contracts and processes. Pl. Opp. at 5. But, as the Court's Opinion makes clear (at 16-17), the primary support for that conclusion is plaintiffs' now-abandoned claim that EY relied only on Absi and had no communications with MBI's distributors. Thus, this allegation adds nothing to the analysis.

The only other allegations plaintiffs cite are their claims that EY failed, in some unknown way, to take into account MBI's allegedly weak internal control environment in planning its audit, and that it failed to investigate a purportedly suspicious spike in MBI's revenue in winter.

1    Opp. at 5. The Court did not find these allegations sufficient to sustain an *Omnicare* claim,
2    however, nor should it do so now.

3        First, these allegations should not be credited under *Align* for the same reasons outlined
4    above: they are mere conclusions masquerading as facts. Plaintiffs had no sources on which to
5    base such claims. The SEC complaint against Absi mentions the confirmations that were sent to
6    distributors but otherwise says nothing about EY's audit. As noted above, in denying EY's
7    motion to dismiss, the Court interpreted the TAC as claiming that plaintiffs' allegations about
8    EY's audit were supported by pre-filing conversations plaintiffs' counsel had with former MBI
9    employees or other knowledgeable individuals. Opinion at 15. But plaintiffs pointedly ignore that
10   conclusion, which EY challenged in its Motion to Reconsider, thus implicitly admitting that their
11   allegations were not supported by any such pre-filing investigation. Instead, it is clear that, as in
12   *Align*, plaintiffs' allegations are based solely on their belief that EY must have failed to conduct a
13   proper audit because it failed to discover the fraud. *Align* makes clear that this type of reverse-
14   engineering cannot be used to support an *Omnicare* claim.

15       Second, plaintiffs' vague and conclusory allegations are not enough to plead falsity under
16   *Omnicare*. These allegations do not show that EY made a false statement when it said that it
17   conducted its audits in accordance with PCAOB standards.[2] Nor do they support an omissions
18   theory. Given that plaintiffs now acknowledge that EY had confirmations from distributors, they
19   would have to explain how EY's alleged knowledge of unidentified internal control issues and a
20   purported spike in sales supposedly altered the audit procedures EY was required to undertake
21   under PCAOB standards. Similarly, if EY had confirmations from distributors, plaintiffs could
22   not plead a material omission based on a failure to disclose supposed weak controls or a spike in

23

---

24   [2] Particularly in this context, the Court should reconsider its apparent position that EY was
25   making a statement of fact, rather than expressing an opinion, when it said it conducted its audit
     in accordance with PCAOB standards. Contrary to plaintiffs' argument (at 16-17), *Align* helps EY
26   on this point—not plaintiffs—because it held that the defendant's assertions that its financials
     complied with GAAP were opinions, since they depended on valuations that were not matters of
27   objective fact. 856 F.3d at 613. Here, too, whether EY should have done more to "investigate" a
     spike in sales or altered its audit procedures in some unidentified way to take MBI's internal
28   control weaknesses into account is not a question of objective fact, but rather a matter of opinion.

1   sales without explaining how those factors supposedly undermined EY's conclusion, based on the
2   confirmations it received, that the company's products were sold under the terms and conditions
3   set forth in those confirmations. In other words, as in *Align*, plaintiffs would have to plead the
4   "exact assumptions" underlying EY's audit opinion in order to properly plead an omissions claim
5   based on a failure to disclose MBI's supposed internal control issues and the spike in its sales.

**III.     The Court Should Reconsider Its Ruling That EY Can Be Liable For Having "Certified" MBI's 2013 Financial Statements.**

Plaintiffs urge the Court not to reconsider its ruling on their certification theory because EY does not point to any intervening change in controlling law that would require the Court to do so. But the Court has discretion to reconsider that interlocutory ruling and should do so, particularly if the Court dismisses plaintiffs' *Omnicare* claims, leaving EY's purported certification of MBI's financial statements as the only basis for liability.

EY's statutory argument is simple. Section 11 expressly allows auditors who consent to be named as experts in a registration statement to circumscribe the scope of their potential liability. Section 11 allows plaintiffs to sue any expert who "has with his consent been named as having prepared or certified" for material misstatements or omissions in [1] "any part of the registration statement" or [2] "any report or valuation which is used in connection with the registration statement" but [3] *only* "with respect to the statement *in such registration statement, report, or valuation*, which purports to have been prepared or certified by him." 15 U.S.C. § 77k(a)(4) (emphasis added). In this case, EY's consent stated that "[w]e consent to the reference to our firm under the caption "Experts" and to the use of our [audit] report dated March 25, 2014" in the Registration Statement. EY did *not* consent to being named as having prepared or certified MBI's financial statements or any other part of MBI's registration statement. Nor did its audit report purport to certify MBI's financial statements. Instead, that report clearly stated that the "financial statements are the responsibility of the *Company's* management" and explained that EY's "responsibility is to express an *opinion* on these financial statements based on our audits." 6/6/14 Form 424B4 at F-2 (emphasis added). Furthermore, nowhere does the Registration Statement say that EY either "prepared or certified" its financial statements. Because EY did not "prepare or

8

certify" MBI's financial statements and did not *consent to be named* as having "prepared or certified" any financial statements, it cannot be held liable "with respect to" any misstatements contained in MBI's financial statements. Although Plaintiffs deride this syllogism as "hyper-textual" (Pl. Opp. at 10), it flows directly from the plain text of the statute.

Plaintiffs have no answer to this other than to insist that, contrary to its plain language, EY's audit report somehow "certified" MBI's financial statements. In support of that conclusion, plaintiffs point to the fact that EY consented to the "incorporation by reference" of its audit report in a registration statement that also incorporated by reference MBI's allegedly false and misleading financial statements. Pl. Opp. at 10. But that makes no sense. The "incorporation by reference" of EY's report is the "use["] of that report "in connection with the registration statement"—*not* the certification of any part of the registration statement. To hold otherwise would mean that the "report" portion of Section 11(a)(4) would be wholly unnecessary.

In an attempt to fend off this conclusion, plaintiffs argue (at 11) that Section 11's reference to "[r]eports" "cannot be superfluous" because this part of the statute is meant to sweep in *other* experts who file "standalone" reports used in connection with registration statements. But the example plaintiffs offer is indistinguishable from EY's situation: there, the registration statement referred to an engineering firm's reserve reports, which were incorporated into the registration statement by being attached as exhibits thereto and which opined on reserve estimates provided by the company in its registration statement. *Id.* at 11 n.5. Under plaintiffs' analysis, the engineering firm would be viewed as having certified the company's reserve estimates (just as they say EY certified MBI's financial statements), thus making Section 11's "report" language superfluous. In fact, however, under Section 11's plain language, the engineering firm and EY could only be sued for alleged misstatements in their own reports and *not* for alleged misstatements in any *other* part of the Registration Statement that they neither prepared nor certified.

**III.     Alternatively, The Court Should Certify An Interlocutory Appeal Under 28 U.S.C. § 1292.**

For the reasons outlined above, EY's alternative request for an interlocutory appeal under

section 1292(b) is timely. An interlocutory appeal would be especially appropriate if the Court dismisses plaintiffs' *Omnicare* claims, leaving certification as the only potential basis for liability. ***First***, there can be no dispute that this is a pure question of law, which would require no in-depth analysis of the record. *E.g.*, *Pinal Creek Grp. v. Newmont Min. Corp.*, 118 F.3d 1298, 1300 (9th Cir. 1997) (granting petition for interlocutory review of denial of defendants' motion to dismiss, which was based on "[t]he district court's interpretation of a statute"). ***Second***, there is substantial ground for difference of opinion on this issue because "reasonable jurists might disagree" on the "issue's resolution." *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011). Indeed, as this Court recognized—and as plaintiffs do not dispute—reasonable jurists *have* disagreed. Opinion at 13 & n.6. *See also Couch v. Telescope Inc.*, 611 F.3d 629, 634 (9th Cir. 2010) (cited by plaintiffs at Pl. Opp. at 19) ("identification of a sufficient number of conflicting and contradictory opinions would provide a substantial ground for disagreement").

***Finally***, an immediate appeal would materially advance the termination of this litigation and would have the added benefit of offering much-needed guidance on an issue that arises in every Section 11 case involving allegedly false or misleading financial statements. Contrary to the impression plaintiffs try to create, *Reese* and *Pinal Creek* show that the Ninth Circuit accepts interlocutory appeals from rulings on motions to dismiss. That complaints may be amended should not be a deterrent to certification when the issue (as here) is a question of statutory interpretation and where plaintiffs have already amended their complaint three times.

## CONCLUSION

For the foregoing reasons and the reasons set forth in EY's Motion to Reconsider, EY urges the Court to reconsider its March 21, 2017 Order or to certify that Order for interlocutory appeal.

Dated:  January 18, 2018                                  Respectfully submitted,

/s/ Elizabeth Mann
Elizabeth Mann
Mayer Brown LLP
Attorneys for Defendant
ERNST & YOUNG LLP